AO 241
(Rev. 01/15)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: Northern |
|---|---|

| Name (under which you were convicted): <br> David R. Posey | Docket or Case No.: <br> 3:15CV452 <br> MCR. CAS |
|---|---|

| Place of Confinement : <br> Blackwater Correctional Facility, Milton, Florida | Prisoner No.: <br> 218253 |
|---|---|

| Petitioner (include the name under which you were convicted) <br> David Russell Posey | v. | Respondent (authorized person having custody of petitioner) <br> Scott Middlebrooks |
|---|---|---|

| The Attorney General of the State of: |
|---|

**PETITION**

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    First Judicial Circuit Court of the State of Florida , in and for Okaloosa County, Florida

    _____

    _____

    (b) Criminal docket or case number (if you know):   06-CF-2901

2.  (a) Date of the judgment of conviction (if you know):   05/08/2008

    (b) Date of sentencing:   06/09/2008

3.  Length of sentence:   Cumulative Life in Prison

4.  In this case, were you convicted on more than one count or of more than one crime?   ☐ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    | I. Kidnapping with Assault or Terrorize | Life in prison |
    |---|---|
    | II. Burglary of an Occupied Conveyance | 15 years prison |
    | III. Aggrevated Assault with a Weapon | 5 years in prions |

6.  (a) What was your plea? (Check one)

    ☑ (1)   Not guilty       ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty           ☐ (4)   Insanity plea

AO 241
(Rev. 01/15)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

The Defendant plead not guilty on all counts

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury     ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☑ Yes     ☐ No

8.  Did you appeal from the judgment of conviction?

☑ Yes     ☐ No

9.  If you did appeal, answer the following:

(a) Name of court:    First District Court of Appeals

(b) Docket or case number (if you know):    1D08-3116

(c) Result:    Per Curiam Affirmed

(d) Date of result (if you know):    02/19/2010

(e) Citation to the case (if you know):    unknown

(f) Grounds raised:

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court:    n/a

(2) Docket or case number (if you know):

(3) Result:    n/a

(4) Date of result (if you know):

(5) Citation to the case (if you know):         n/a

(6) Grounds raised:         n/a

(h) Did you file a petition for certiorari in the United States Supreme Court?         ☐ Yes    ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):         n/a

(2) Result:         n/a

(3) Date of result (if you know):

(4) Citation to the case (if you know):         n/a

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?         ☑ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:        First Judicial Circuit for Okaloosa County, Florida

(2) Docket or case number (if you know):        06-CF-2901

(3) Date of filing (if you know):        03/08/2010

(4) Nature of the proceeding:        Motion for Modification and Reduction of Sentence

(5) Grounds raised:    To modify the sentence

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result:    Denied

(8) Date of result (if you know):        03/12/2010

## GROUND ONE

The state committed fraud upon the court by providing a sworn charging document that stated that the State was relying on sworn testimony from material witnesses in this case when in fact it did not.

## GROUND TWO

Trial counsel was ineffective for not attending an adversarial competency examination of the Petitioner which was a critical stage of the proceeding even after being requested to do so by Petitioner to either be present to protect this Petitioner s legal interest or with leave of the court to videotape the competency evaluation to preserve the matters that transpired at the evaluation.

## GROUND THREE

The court erred by not moving sua sponte for a competency hearing after the presiding judge expressed concerns that the dEFENDANT was possibly not SANE.

## GROUND FOUR

The court ERRED by proceeding against THE Petitioner they knew or should have known had a subnormal iq and did not understand the proceedings again him.

## GROUND FIVE

The state wrongfully charged the Petitioner under the kidnapping statute, §787.01(1)(a) Florida Statutes when Petitioner should have been charged under false imprisonment statute §787.02, Florida statutes.

## GROUND SIX

Trial counsel was ineffective for failing to call a crime scene reconstruction expert after being requested to do so by petitioner.

## GROUND SEVEN

Counsel provided constitutionally deficient performance by opening the door for the state to argue the domestic violence injunction after counsel had severed the injunction out of the concerns that it would be prejudicial towards the PETITIONER at trial.

## GROUND EIGHT

Counsel's performance was constitutionally deficient were counsel abandoned the Petitioners insanity defense.

**Posey vs. Middlebrooks**, Federal Writ of Habeas Corpus, 28 U.S.C. §2254
*Attachment A-5 Question C*

## GROUND NINE

Counsel provided constitutionally deficient performance by not motioning the court for a jury view of the alleged crime scene where there was substantial testimony that because of the layout of the alleged crime scene it would have been virtually impossible for the two arresting officers to have been eyewitnesses to the alleged crime.

## GROUND TEN

Counsel was constitutionally deficient by not investigating radio transmission history report.

## GROUND ELEVEN

Counsel provided ineffective assistance of counsel for failing to object to a sleeping juror.

## GROUND ELEVEN

The state withheld exculpatory evidence where the chain of custody records would have revealed that this evidence had been tampered with and as such this act by the state did deprive the Petitioner of a viable defense which would have resulted in a different outcome at trial.

## GROUND TWELVE

The state trial judge prejudice the petitioner by twice making a comment as a related to the mask exhibit.

## GROUND FOURTEEN

The court committed fundamental error by not aiding the jury in their quest for the answers to jury questions.

## GROUND FIFTEEN

The court erred where the court permitted circumstances that created nothing more than a strong suspicion that defendant may have committed a crime were not sufficient to support a conviction to stand.

## GROUND SIXTEEN

Trial court failed to obtain personal jurisdiction over the Defendant

## GROUND SEVENTEEN

Cumulative error

**Posey vs. Middlebrooks,** Federal Writ of Habeas Corpus, 28 U.S.C. §2254
*Attachment A-5 Question C*

AO 241
(Rev. 01/15)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:   First Judicial Circuit in and for Okaloosa County, Florida

    (2) Docket or case number (if you know):   06-CF-2901

    (3) Date of filing (if you know):   05/12/2010

    (4) Nature of the proceeding:   Motion to Correct Illegal Sentence

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes    ☒ No

    (7) Result:   Denied

    (8) Date of result (if you know):   05/12/2010

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:   First Judicial Circuit in and for Okaloosa County, Florida

    (2) Docket or case number (if you know):   06-CF-2901

    (3) Date of filing (if you know):   04/10/2010

    (4) Nature of the proceeding:   Motion for Post Conviction Relief, Rule 3.850

    (5) Grounds raised:

    See Attachement A-5

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☑ Yes    ☐ No

(7) Result:   Denied

(8) Date of result (if you know):    02/26/2014

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:      ☐ Yes    ☑ No

(2) Second petition:   ☐ Yes    ☑ No

(3) Third petition:     ☑ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

No opinion given

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** The State committed fraud upon the court by providing a sworn charging document that stated the State was relying on a sworn testimony from material witnesses in this case when in fact it did not.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Ground One pages 1 through 3

(b) If you did not exhaust your state remedies on Ground One, explain why:   Grounds were exhausted

AO 241
(Rev. 01/15)

(c)   **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:   n/a

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Motion for Post Conviction Relief, Rule 3.850

Name and location of the court where the motion or petition was filed:

First Judicial Circuit in and for Okaloosa County, Florida

Docket or case number (if you know):   06-CF-2901

Date of the court's decision:   02/26/2014

Result (attach a copy of the court's opinion or order, if available):

See Attachment B and C

(3) Did you receive a hearing on your motion or petition?   ☑ Yes   ☐ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

First District Court of Appeals, Tallahassee, Florida

Docket or case number (if you know):   1D14-1156

Date of the court's decision:   02/03/2015

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

n/a

AO 241
(Rev. 01/15)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:   n/a

**GROUND TWO:**   Trial Counsel was ineffective for not attending an adversarial competency

examination of the Petitioner which was a critical stage of the proceeding even after being requested to do so...

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Pages 4 through 9

(b) If you did not exhaust your state remedies on Ground Two, explain why:   n/a

(c)   **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☑ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:   this is a post conviction issue

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   Motion for Post Conviction Relief

Name and location of the court where the motion or petition was filed:

First Judicial Circuit in and for Okaloosa County, Florida

Docket or case number (if you know):   06-CF-2901

Date of the court's decision:   02/26/2014

AO 241
(Rev. 01/15)

Page 9

Result (attach a copy of the court's opinion or order, if available):

See Attachement B and C

(3) Did you receive a hearing on your motion or petition?  ☑ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

First District Court of Appeals, Tallahassee, Florida

Docket or case number (if you know):  1D14-1156

Date of the court's decision:  02/03/2015

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

n/a

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two :  Appealed the denial

**GROUND THREE:**    The court erred by tht moving sue sponte for a competency hearing after the presiding

Judge expressed concerns that the Defendant was possibly not sane.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Pages 9 thourgc10

(b) If you did not exhaust your state remedies on Ground Three, explain why:  n/a

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐  Yes    ☑  No

(2) If you did not raise this issue in your direct appeal, explain why:  This was a post collateral motion

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑  Yes    ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Motion for Post Conviction Relief, Rule 3.850

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):  06-CF-2901

Date of the court's decision:    02/26/2014

Result (attach a copy of the court's opinion or order, if available):

First Judicial Circuit in and for Okaloosa County, Florida

(3) Did you receive a hearing on your motion or petition?    ☑  Yes    ☐  No
(4) Did you appeal from the denial of your motion or petition?    ☑  Yes    ☐  No
(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑  Yes    ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

First District Court of Appeals, Tallahassee, Florida

Docket or case number (if you know):  1D14-1156

Date of the court's decision:    02/03/2015

Result (attach a copy of the court's opinion or order, if available):

n/a

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

n/a

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

n/a

**GROUND FOUR:**  The court erred by proceeding agaits the Petitioner they knew or should have known the

Petitioner had a subnormal IQ and did not understand the proceedings against him.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See pages 10 through 12

(b) If you did not exhaust your state remedies on Ground Four, explain why:

n/a

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐  Yes      ☑  No

(2) If you did not raise this issue in your direct appeal, explain why:

This is a issue that must be raised on post collaterial motions.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑  Yes      ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Motion for Post Conviction Relief, Rule 3.850

AO 241
(Rev. 01/15)

Name and location of the court where the motion or petition was filed:

First Judicial Circuit in and for Okaloosa County, Florida

Docket or case number (if you know):    06-CF-2901

Date of the court's decision:    02/26/2014

Result (attach a copy of the court's opinion or order, if available):

See Attachment B and C

(3) Did you receive a hearing on your motion or petition?            ☑ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?        ☑ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

First District Court of Appeals

Docket or case number (if you know):    1D14-1156

Date of the court's decision:    02/03/2015

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

n/a

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

n/a

AO 241
(Rev. 01/15)                                                                      Page 13

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court
having jurisdiction?    ☑ Yes        ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not
presenting them:  n/a _____

_____

_____

_____

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which
ground or grounds have not been presented, and state your reasons for not presenting them:

no _____

_____

_____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction
that you challenge in this petition?        ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues
raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy
of any court opinion or order, if available.   n/a _____

_____

_____

_____

_____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for
the judgment you are challenging?        ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues
raised.   n/a _____

_____

_____

_____

_____

AO 241
(Rev. 01/15)

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:  Timthoy Holley, Attorney at Law

(b) At arraignment and plea:  Timthoy Holley, Attoney at Law

(c) At trial:  Timthoy Holley, Attorney at Law

(d) At sentencing:  Timthoy Holley, Attorney at Law

(e) On appeal:  Gail E. Anderson, Attorney at Law

(f) In any post-conviction proceeding:  Bernard F. Daley, Attorney at Law

(g) On appeal from any ruling against you in a post-conviction proceeding:

Bernard F. Daley, Attorney at Law

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  ☐ Yes  ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

n/a

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  ☐ Yes  ☐ No

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

This is a timely petition

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 01/15)

(2)     The time during which a properly filed application for State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation
under this subsection.

Therefore, petitioner asks that the Court grant the following relief:    Vacate the sentence and judgment in this case

and in the alternative hold and evidentiary hearing in this case.,

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on    10/14/2015    (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

## GROUND ONE

**THE STATE COMMITTED FRAUD UPON THE COURT BY PROVIDING A SWORN CHARGING DOCUMENT THAT STATED THAT THE STATE WAS RELYING ON SWORN TESTIMONY FROM MATERIAL WITNESSES IN THIS CASE WHEN IN FACT IT DID NOT.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND ONE

The Petitioner was initially charged by information that on or about November 27, 2006, then again by amended information on or about May 7, 2008, pursuant to four alleged material witness's statements which were purportedly based on the events that allegedly took place on or about November 6, 2006.

In support of information provided by two law enforcement officers and two alleged victims who stated they had information as it related to the events that took place on November 6, 2006.

A sworn probable cause affidavit was provided to the state attorney Donna Maw and Amanda Gordon of the Shalimar office for the State Attorney for the First Judicial Circuit. This sworn probable cause affidavit provided of the alleged events that occurred on or about November 6, 2006.

Donna Maw filed an information without following the rules outlined in the Florida Rules of Criminal Procedure, Rule 3.140, which discusses the duties of the state attorney when filing such an information. Moreover, the Florida Constitution specifically outlines in detail the duties and procedures in which the state attorney *must* follow, "there is a secret meeting held and it is transcribed by the court reporter, it is the basis of the charging information." See Article 1, Section 15A, of the Florida Constitution. It is the Petitioner's position that Donna Maw and Amanda Gordon chose not to follow these procedures.

1

The alleged material witnesses gave *un*-sworn statements which the state relied on for the foundation of its charging information, completely ignoring the Florida Rules of Court and the provisions set-fourth and the Florida Constitution and Section 92.525 Florida Statutes. This well-established rule states that all affidavits and/or statements must be under the PENALTY OF PERJURY, ***this was not done*** in Posey's case.

The prosecutors in this case provided to the court sworn information alleging that material witnesses had given sworn testimony under Section 92.525 Florida Statutes which was ***not*** true, thus the prosecuting authority committed ***fraud*** upon the state trial court, in violation of Posey's Fifth and Fourteenth Amendment Rights.

Petitioner contends that ***had*** the alleged victims been sworn under the penalties of perjury, as Section 92.525 dictates, the statements would have been different. Because had the witnesses known that they would have been subjected to perjury charges for giving false and/or misleading testimony, which would be considered perjured statements and they would have been subjected to prosecution for such.

Posey argues that the judgment and sentence is void and that the court lacked subject matter jurisdiction to prosecute the Petitioner in this case, based on the fact that there was ***NO*** sworn material witnesses in this case. To clarify, while there were witnesses in this case, none of these witnesses gave sworn statements.

Also, Posey avers that had the witnesses been sworn under the penalties of perjury, the witness statements would have been different and they would have supported the Petitioner's reasonable hypothesis of innocence and what transpired that evening on the scene and the outcome of the trial would have been different. As it stands, when counsel failed to bring this fact to the court's attention and the court in and of itself failed to even

2

inquire as to why sworn statements were *not* given, this clearly violated Posey's Fifth and Fourteenth Amendment Rights of the United States Constitution and Due Process of Law.

The fraud upon this court is *inexcusable*, moreover a violation of the accused's Constitutional Rights to Due Process of Law by the knowing use of ***perjured*** and ***unsworn*** testimony by a witness was a blatant constitutional violation.

That Petitioner has presented, verifiable evidence that four (4) material witnesses perjured their testimony about what was said by Posey and this is clearly shown that the filing of a fraudulent and false charging document by the state was just another part of the state prosecutors well-planned scheme to convict the Petitioner by any means.

In conclusion, the facts of this case are there are **NO** sworn statements made by any of the alleged material witnesses in this case, it is fact the prosecutor knew or should have known this fact simply by fully reading or investigating the documents which show that there was no sworn oath given by any of the four witnesses that day.  Thus, allowing false, misleading, untruthful, and perjured testimony from material witnesses to be given to the state court in its charging document and supporting documents to support the charges. Therefore any statements by the material witnesses in this case is tainted, and cannot be used against this Petitioner.

## GROUND TWO

**TRIAL COUNSEL WAS INEFFECTIVE FOR NOT ATTENDING AN ADVERSARIAL COMPETENCY EXAMINATION OF THE PETITIONER WHICH WAS A CRITICAL STAGE OF THE PROCEEDING EVEN AFTER BEING REQUESTED TO DO SO BY PETITIONER TO EITHER BE PRESENT TO PROTECT THIS PETITIONER 'S LEGAL INTEREST OR WITH LEAVE OF THE COURT TO VIDEOTAPE THE COMPETENCY EVALUATION TO PRESERVE THE MATTERS THAT TRANSPIRED AT THE EVALUATION.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND TWO

A psychological evaluation was ordered by the Honorable Judge Remington for Posey on the 28th day of August 2007 and a hearing was held to that effect.

Defense counsel noted to the court, that Mr. Posey had returned from Florida State Hospital and that Mr. Posey had been off of his medications because the Okaloosa County Department of Corrections would not administer Posey the medications prescribed by chief neurologist at the Florida State Hospital.

On December 27, 2007 defense counsel stated that Posey's case was being passed because, "we need a competency evaluation". The court must conduct a competency evaluation before we can do anything ADVERSARIAL on the record.

On February 18th, 2008, Dr. Gilgun filed a report finding Posey competent to stand trial and that he was sane at the time of the offense. At the competency hearing that was held on February 26th, 2008 almost 6 months after Posey had returned from Florida State Hospital, which Dr. Gilgun testified that Posey was in fact competent to stand trial.

First, after returning from Florida State Hospital, Posey was deprived of his psychotropic medication, Xanax. The county jail took the position *that he did not need* the prescribed medication. Furthermore, the county jail they do not have this medication on its standard itinerary for distribution to inmates, because of the possibility that it would be passed around or sold to other inmates. In addition this determination was enforced by Dr. Szmurlo at the jail. Even after specific instructions and recommendations by Dr. Renfro of the Florida State Hospital forensic unit "2Y", and **NOT** to discontinue Posey's medication, because if it was discontinued it is possible that Posey would relapse.

Posey had been diagnosed with "organic brain syndrome, posttraumatic stress disorder, severe panic attacks, which was at this time he was in **SEVERE** distress". Moreover, counsel for the Petitioner was well **AWARE** of Posey "vulnerable state of mind". Posey requested for his counsel at that time to be present at the competency evaluation, or to at least videotape the session in order to "protect his (Posey) rights" and to ensure that Posey was represented by counsel at every adversarial critical stage of the proceeding while he is in such a "vulnerable state of mind." When counsel was asked to be present at the evaluation, counsel simply replied "oh I don't know that doctor stuff *and refused.*"

At this time counsel was not functioning as counsel guaranteed under the Sixth Amendment Rights of the United States Constitution, there is a reasonable probability that had it not been for counsel's deficient performance the results of the examination and the proceedings would have been different. A reasonable probability is one sufficient to undermine the confidence of the outcome of any adversarial proceedings and its outcome.

Counsel at this time knew or should have known that *his* client was vulnerable and counsel knew that his presence was mandatory at that evaluation.

It is well-known that a doctor selected by the state to examine a Petitioner is not a disinterested impartial medical or mental health expert and indifferent to the conflict of interest of the parties. The possible "adversary" status of the examining doctor is a compelling reason why Posey's attorney should have attended, or at least videotape Posey's mental health examination, his attendance or at a bare minimum a videotaped this would have guaranteed that the examiner does not inappropriately interrogate the Petitioner in order to seek damaging information on behalf of the prosecution.

A Petitioner's statements are protected by the law in this type of examination, but what is not protected is what procedures were or were not employed and if the order of the court was adhered to as well as the condition of his client, the preparedness of the examiner as far as the past mental health history or if the examiner exceeds the scope of the examination.

Dr. Gilgun introduced himself to Posey and the next thing Dr. Gilgun questioned Posey about was his past medical history. At this time Posey had been hospitalized as an inpatient several times and had been on Social Security disability for many years, so there was an abundance of medical records available to competently evaluate Posey.

When the Petitioner encountered Dr. Gilgun he had been hospitalized several times for mental health issues, he had been on Social Security disability for many years concerning his mental health issues, so there was an abundance of medical and psychological records available to Dr. Gilgun in order for him to evaluate Posey. Furthermore it is evident to the Petitioner that Dr. Gilgun did not inquire or review any of Posey's past mental health

history prior to their initial contact. This is evident because Dr. Gilgun asked Posey if he had ever been hospitalized for mental health reasons.

Posey knew that he had been hospitalized but did not know the specific dates, times, and reason. Therefore he asked Dr. Gilgun if he could return to his dorm and retrieve his logs, in which he uses to help himself remember things.

It was well known by defense counsel that he (Posey) maintained logs to help him remember things. Dr. Gilgun was forceful, coercive, rude, and at times commented to Posey that the state was his bread-and-butter not the Petitioner.

What is more disturbing to Posey, is that Dr. Gilgun told Posey that his attorney said it was okay for him (Posey) to sign a release from the county jail to release all of his medical and mental health record including his medication records, which Posey later found to be untrue.

At the February 26, 2008 hearing Dr. Gilgun testified at the competency hearing that Posey was able to report to him his past health information by re-collection, which was a misrepresentation of what occurred when in reality Posey reported by way of his memory logs.

All the misrepresented facts by the doctor were very prejudicial to Posey in the competency hearing and rose to the level of a manifest injustice which violated Posey's constitutional right to Due Process of Law.

Posey contends that if defense counsel would have been present or at least a video recording of the competency evaluation, if these procedures had been employed the outcome of the competency evaluation would have been different. Moreover, Posey's

attorney was allowed to attend the competency evaluation under Rule 3.216 of the Florida Rules of Court, however, trial counsel refused.

In light of Mr. Posey's mental condition at the time of the evaluation and the fact that the doctor was appointed by the state, the fact that this was an adversarial critical stage of the proceeding Mr. Posey was entitled under the Sixth and Fourteenth Amendment of the United States Constitution to have his attorney present. By counsel not being present and refusing not to be at the competency evaluation, this was considered deficient performance by trial counsel. This error so serious as to deprive the Petitioner of a fair trial, a trial which results can be deemed reliable.

Counsel's function is to represent the Petitioner at every stage in the criminal proceeding, hence counsel owes his client a duty of loyalty, a duty to be free from conflicts of nature and by not attending the examination or at the very least arranging for a video recording of examination, counsel's duty fell *well* below the expected performance of a competent attorney.

Counsel's duty is not to interfere with the examination, but counsel's duty is limited only to protecting the legal interests of his client, and any part from the examination counsel has little or no role but a role observation

When proceeding on the Florida Rules of Criminal Procedure, Rule 3.212(c)(6) to determine whether Posey's previously found incompetent status, has been restored to competent, the trial court is required to hold a hearing. Posey defense counsel knew he was still incompetent by law and common sense should have told counsel that Posey was not competent and counsel had a duty to protect his client and his vulnerable state at the examination.

8

In light most favorable to the state, the video recording and defense counsel should have arranged or for counsel to be present would have preserved the examination procedures for future proceeding, ensuring the court fair and just determination of his competency as competency cannot be determined retroactive.

It is Posey's position, that he has presented a facially sufficient claim of ineffective assistance of counsel which has rose to a level of a Sixth and Fourteenth Amendment Constitutional violation.

## GROUND THREE

**THE COURT ERRED BY NOT MOVING SUA SPONTE FOR A COMPETENCY HEARING AFTER THE PRESIDING JUDGE EXPRESSED CONCERNS THAT THE DEFENDANT WAS POSSIBLY NOT SANE.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND THREE

On May 6, 2008, while the jury was in recess the presiding judge said:

> **THE COURT**: I think it would be prudent in this case to call a psychologist or psychiatrist to put on evidence that the gentleman is sane.

At this time it was mandatory that the court conduct a sue sponte competency examination. Every person who is accused of a criminal offense must be competent to stand trial and face the charges levied against him or her. The Due Process clause of the Fifth and Fourteenth Amendment of the United States Constitution mandates this and nothing to the contrary. Florida courts have also held that a failure to abide by this precept results in the deprivation of the Petitioner's rights to a fair trial, one which the results can be relied upon as being reliable.

When competency is at question, the court must at that time suspend all proceedings and initiate a competency proceeding to determine whether or not the defendant is competent to stand trial. In this case, the court *failed* to do so and errored by ***not*** conducting a sue sponte competency hearing to determine whether or not the Petitioner was **incompetent** to stand trial. The court must vacate the judgment and sentence rendered based on a violation of the Petitioner's constitutional rights on the Sixth and Fourteenth Amendment.

## GROUND FOUR

**THE COURT ERRED BY PROCEEDING AGAINST THE PETITIONER THEY KNEW OR SHOULD HAVE KNOWN HAD A SUBNORMAL IQ AND DID NOT UNDERSTAND THE PROCEEDINGS AGAIN HIM.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND FOUR

The court had an infinite amount of mental health and medical evidence that reasonably supported that Petitioner had a subnormal IQ between the ranges of 64 to 70. Moreover the court acknowledged this and ordered Baptist Health Care Developmental Disabilities Department to interview Posey at the Okaloosa County Detention Facility. The caseworkers were Larry Thompson and Jackie Lartlin, of 1221 W. Lakeview Ave., Pensacola, Florida 32501, conducted the evaluation.

The Petitioner was extensively interviewed and he was eventually accepted into the care of Baptist Health Care and was promised that their assistance would be offered in the court setting because the Petitioner's inability to fully comprehend the proceedings against him and appreciate the charges levied against him. Petitioner's history was ***unrefuted***, it is fact that he has a brain injury in which he suffered in 1998 from a severe automobile

accident. The accident was no fault of Petitioner's and left the Petitioner 100 percent disabled according to the Social Security Administration and Disability Board of the Directors of Social Security.

A short period of time had passed when Baptist Health Care released Petitioner from their care because the Petitioner's disabilities were trauma induced and not under the rules of and regulations of the department disabilities program. The Baptist health care recommended that the Petitioner be sent to the brain injury clinic or the forensic program offered by their facility.

The state court dropped the ball and proceeded against the Petitioner without Posey understanding the proceedings against him. The court proceeded against Posey with his minimal understanding of the following, this prejudice prejudiced Posey's ability to have a fair trial or hearing they are as follows:

1. *The Petitioner's appreciation of the charges and range and nature of possible penalties;*

2. *Petitioner's understanding of the adversarial nature of the legal process;*

3. *Petitioner's capacity to disclose to attorney pertinent facts surrounding the alleged offense;*

4. *Petitioner's ability to relate to his attorney;*

5. *Petitioner's ability to assist attorney in planning a defense;*

6. *Petitioner's capacity to realistically challenge the prosecution's witnesses;*

7. *Petitioner's ability to testify relevantly;*

8. *Petitioner's capacity to cope with stress of incarceration prior to trial; and*

9. *During the crime Petitioner knowing what he was doing was wrong.*

11

Due to petitioner's brain injury, which is very complex, Posey suffers from epilepsy and his injuries has left him with the IQ of around 64 to 70. Petitioner also suffers from epilepsy and severe migraine headaches which cause the sporadic periods of confusion as well as poor judgment, all of which made it impossible for Posey to have a fair trial.

Based on the facts presented herein, the court should vacate and set aside the judgment and sentence imposed in this case and conduct further hearings.

### GROUND FIVE

**THE STATE WRONGFULLY CHARGED THE PETITIONER UNDER THE KIDNAPPING STATUTE, §787.01(1)(A) FLORIDA STATUTES WHEN PETITIONER SHOULD HAVE BEEN CHARGED UNDER FALSE IMPRISONMENT STATUTE §787.02, FLORIDA STATUTES.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND FIVE

The initial charging document used in this case contains a sworn statement from the prosecuting attorney that states "before me personally appeared the undersigned designated assistant state attorney for the First Judicial Circuit of Florida, being duly sworn, says that the allegations set forth in the foregoing information are based on facts that have been sworn to as true, and which if true, would constitute the offense charged..."

It appears that the state *vindictively* charge Posey in the case with a life felony, that is the offense of kidnapping under §787.01(1)(a), Florida Statutes facts only supported the charge of false imprisonment, at best, which should have been charged under §787.02, Florida statutes. In fact, in the prosecutor's own words, it was based on sworn testimony under oath the charge of false imprisonment.

When the state became aware of the fact that the Petitioner intended to exercise his constitutional right to a jury trial, the state amended its charging document with additional information and charged the Petitioner from a third-degree felony to a life felony under §787.01(1)(a), Florida statutes.

The facts are very similar to the previous facts, but in the amended information the state prosecutor claims that the very same facts now supported the charge of kidnapping which is completely false.

The facts which the state alleged supported only a charge of false imprisonment as initially charged in this case, which is evidence by the fact, that the evidence adduced at trial only demonstrated that there was a *momentary restraint* of one of the alleged victims, if any restraint occurred at all and would have been inconsequential to any assault charge.

Therefore, the Petitioner in this case could not have been found guilty of either a kidnapping or false imprisonment charge as alleged by the state under §787.01(1)(a), Florida Statutes, if the *Faison* test was applied.

Based on the facts presented herein, the court should vacate and set aside the judgment and sentence imposed in this case and conduct further hearings.

**GROUND SIX**

**TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL A CRIME SCENE RECONSTRUCTION EXPERT AFTER BEING REQUESTED TO DO SO BY PETITIONER.**

**STATEMENT OF FACTS
IN SUPPORT OF GROUND SIX**

Failure by counsel to retain and call a crime scene reconstruction expert, after being requested to do so by the Petitioner, displayed that trial counsel was not functioning as

13

counsel should have based on the standard set forth in the Sixth and Fourteenth Amendment of the United States Constitution.

Petitioner asked and pleaded with counsel on several occasions before trial to call a crime scene reconstruction expert. Had counsel called this expert, this expert would have performed the necessary evaluation of the crime scene and would have been able to show that what the witnesses were stating was impossible to have occurred. This expert would have been able to cast doubt in the juror's minds and the outcome of the trial would have been different. That is to say it would have been impossible for this offense to have occurred at the location of the front door at 1767 Hopper St., Apt. 1.

At trial, the victim testified that Posey shoved her into the living room and made her get on the living room floor. Also at the scene officer Nichols, testified at trial that he heard Posey say I'm going to bash your fucking brains out. Officer Nichols then testified he saw Posey standing over two people (the alleged victims, Georgianna and Jamie) "with his right arm extending holding a pry bar as if Posey was about to hit one of them"

Had a crime scene reconstruction expert been retained and called, he would've testified that it would have been impossible to stand at the front door of 1767 Hopper Street, outside and see the alleged crime scene (living room). Had this expert been retained, performed the evaluation necessary, and called to testify this expert would have been able to present exculpatory evidence and testimony that would have impeached the states key material witness of officer Michael Nichols at trial.

Furthermore, the other arresting officer, Daniel Genrich, testified that he went to the back door, and he heard "I am going to bash your fucking brains in". At that time he went back to Nichols and they went into the apartment to the front door. Genrich stated that he

14

observed from looking in the apartment that Petitioner's right arm was raised over his head.  Genrich never testified at trial that he saw a crowbar or a pry bar therefore conflicting testimony between both Officers Nichols and Genrich.

Genrich did testify that he did not see the crowbar or pry bar when Posey was inside the residence, that he only saw the crowbar after he caught up with Posey outside.  The crime scene reconstruction expert would have been able to testify that when officer Genrich  positioned himself at the front door it would have been impossible for him see Petitioner holding a crowbar any type of weapon.

Once again, this evidence was very exculpatory and it would have contradicted each of these officers testimony that they saw Posey's "right arm extended over his victim" when in reality neither officer could see anybody in the house at the time of the alleged offense.

This officer's testimony prejudiced the Petitioner so severely that in effect it secured a kidnapping conviction based on false, misleading, and fabricated testimony that Posey confined and terrorized the alleged victims with a crowbar.

Posey was charged with kidnapping with the intent to terrorize and the officers testified that Posey did terrorized victims with the crowbar, this is based on evidence that they could not have seen and had the expert witness testified, he would have testified that it would have been impossible for the officers at the scene to have seen what they say they saw, therefore, the outcome of this proceeding would have been different.

In addition, officer Genrich testified that he "never lost sight of Posey as he chased Posey out the door." Officer Genrich testified falsely in order to disprove Posey's testimony that Posey actually picked up the crowbar while he was outside.  It is the position of the Petitioner that it was impossible for officer Genrich to have seen anything

inside of the apartment because the Venetian blinds were closed. Therefore this officer never had a straight line of sight to Posey.

If defense counsel would have simply called a crime scene reconstruction expert to testify at the Petitioner's trial he would have easily elicited testimony that was exculpatory and impeaching to all of the state's material witnesses, including both Officers Nichols and Genrich.

The testimony of the crime scene reconstruction expert would have been exculpatory and would have exonerated Posey of the kidnapping and assault charge. However due to counsel's failure to call this expert witness, this failure has prejudiced the Petitioner greatly and is risen to the level of a manifest injustice.

Posey contends that counsel was well aware of the potential benefits to the Petitioner's case had this expert been retained and testified at his trial. Failure of counsel to do so was deficient performance, therefore meeting the first prong of the ineffective assistance of counsel standard set-fourth by United States Supreme Court. The second prong of ineffective essence of counsel claim is what would the outcome have been as the Petitioner has shown that the testimony in the evidence to expert would've presented would've shown that there would've been no way for the officers to a scene what was going on inside of that apartment. Therefore there is a reasonable probability that had this expert testified that expert would have presented sufficient evidence to undermine the confidence of the outcome in that trial.

It would have been virtually impossible for the Petitioner to have held a crowbar and dragged the victim and move the Venetian blinds, unlock the door all without putting the

16

crowbar down.  Posey contends that hypothetically speaking he would have had to have dropped the crowbar in order to unlock the door or have six hands.

In conclusion, the crime scene expert would have testified that it was impossible for the officers to have seen what was *allegedly* going on inside of the apartment.  Moreover it was physically impossible to perform the actions that they claim Posey allegedly did, therefore the untruths given by the witnesses is clear on the face of the record.

Based on the facts presented herein the court should vacate and set aside the judgment and sentence imposed in this case and conduct further hearings.

## GROUND SEVEN

**COUNSEL PROVIDED CONSTITUTIONALLY DEFICIENT PERFORMANCE BY OPENING THE DOOR FOR THE STATE TO ARGUE THE DOMESTIC VIOLENCE INJUNCTION AFTER COUNSEL HAD SEVERED THE INJUNCTION OUT OF THE CONCERNS THAT IT WOULD BE PREJUDICIAL TOWARDS THE PETITIONER AT TRIAL.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND SEVEN

Counsel motioned the trial court to sever the charge of violation of domestic violence injunction in this case *which was granted by the court*.  Counsel felt in his judgment that this would have undue prejudice upon the Petitioner.

Counsel had strategically severed the domestic violence injunction so that the Petitioner would not be prejudiced by the introduction of the domestic violence injunction, this was done so as to prevent the jury from knowing that past violence *may have possibly* occurred in the Petitioner's marital relationship with the alleged victim.

17

When counsel later commented on this domestic violence injunction during trial, he opened the door for the state to present testimony, as well as evidence of the domestic violence injunction to the jury.

Petitioner refers that by doing so, defense counsel was not functioning as counsel guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution. Also, there is a reasonable probability that but for counsel's deficient performance and the error in which counsel committed the outcome of the trial would have been different.

It is clear on the face of the record, that Posey suffered prejudice by the jury hearing that a domestic violence injunction had been filed by the alleged victims in this case, when the Petitioner was charged with a violent offense against the same alleged victim i.e. kidnapping, assault, and burglary.

Due to counsel's error the state was permitted to introduce a copy of the injunction as an exhibit. The injunction containing rules that the Petitioner was not authorize to be at the home of the alleged victim at the time of the alleged crime.

This language in this domestic violence injunction satisfied the elements necessary to obtain a conviction of both the burglary and the kidnapping charges.  What is more disturbing, is that the jury was never informed that the Petitioner had never been convicted of domestic violence.  However, with the introduction of the domestic violence injunction in trial, the jury was able to infer that Posey had been convicted of a previous domestic injunction.

Counsel at the very least after opening the door as it related to domestic violence injunction, should have advised the jurors that the Petitioner had never abandoned the home, because he needed the home for his basic survival brought on by his disabilities and

18

that the court had failed to investigate the fact that the Petitioner was 100% disabled and that he needed the home and that the court should have never given the alleged victim exclusive possession of the home prior to issuing such injunction.

Counsel also failed to advise the jurors that the Petitioner *did* have the authority to be in his home out of necessity. Counsel's opening the door to this matter was a grave trial error that violated Posey's right to a fair trial, his rights to effective assistance of counsel, and his rights to Due Process of Law.

Had counsel not open the door, there is a reasonable probability that the outcome of the proceedings would have been different, in that the jury would have never heard anything about the domestic violence injunction, and more than likely would have returned a verdict of either not guilty or to a lesser charge, most certainly not kidnapping in the first degree.

However, counsel's deficient performance by opening the door to a previously ruled matter that was beneficial to the Petitioner amounted to clearly ineffective assistance of counsel, and it is clear from the face of the record that counsel made no efforts to rehabilitate his egregious error that more than likely caused the Petitioner to be convicted of a charge he did not commit.

Counsel knew or should have known that the state would have walked through an open door that would have surely been prejudicial and assisted the state's case in finding Posey guilty. Counsel's error is clearly and was the cause of Posey's conviction. Because without the introduction of the domestic violence injunction the state would have been unable to obtain a conviction for burglary and ultimately kidnapping.

19

Based on the grounds asserted in ground seven, that counsels was ineffective in his performance by introducing evidence it had previously been ruled inadmissible, counsel was ineffective in violation of Posey Sixth and Fourteenth Amendment Rights to the Constitution of the United States of America.

### GROUND EIGHT

**COUNSEL'S PERFORMANCE WAS CONSTITUTIONALLY DEFICIENT WERE COUNSEL ABANDONED THE PETITIONERS INSANITY DEFENSE.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND EIGHT

Posey contends that his trial counsel denied him the opportunity for the jury to decide whether he was mentally infirm or suffered from a disorder, which would have produced a reasonable doubt in the jurors mind necessary define him not guilty.

Petitioner was prejudice by this fact that if the jury was faced with the extensive mental health history and in Petitioner's state of mind at the time of the crime the jury would have found a reasonable doubt and would have instead found the Petitioner not guilty.

It is the position of the Petitioner that he did not have the ability to understand and appreciate the wrongfulness of his acts that had been lodged against him.  Insanity would have been a complete defense to the crime with which the Petitioner was charged with.

By Petitioner being insane at the time of the offense and that it was supported by two doctors reports that examined the Petitioner, a person who is insane is incapable of informing the intent necessary to commit crimes of such a complex nature as Petitioner's

crimes charged and such an individual cannot be legally punished for acts which could be criminal if he were not incompetent.

Counsel failed to investigate the insanity defense thoroughly. Thereby abandoning the insanity defense even when two doctors had presumably changed their positions and found Posey incompetent at the time of the offense. If counsel would've thoroughly investigated as counsel is required to, and presented the two doctors as defense witnesses, thus presenting their position, there would have been a reasonable probability the outcome would've been different.

The Petitioner takes the position there is ample evidence to prove his incompetency when listening to the CDs and comparing them to what happened at the time of the offense it is obvious that the Petitioner was confused at that time and the phone calls were recorded because the Petitioners details as to what happened at the crime scene, on the phone call was not even close to what the police or the victims or Posey testified to a trial. The state prosecutor used a CD to change the doctor's position, stating that the defense and the Petitioner had to have lied to his doctors with regard to his memory of the incident.

The CD recordings would've made it obvious that the Petitioner was confused as to what occurred at the time of the phone calls were recorded. If counsel would have investigated the reason why the doctors change their position he would have discovered that the doctors were misled by the prosecution.

The prosecution maliciously and with intention to mislead the doctors as well as a jury by saying the Petitioner remembered what had occurred that night at the crime scene. The phone calls when listened to, do not depict what occurred at the crime scene. What the

prosecutor did was to use the depositions to thwart the Petitioner's insanity defense and it was successful.

Counsel would have discovered by complete and thorough investigation the following:

1. The phone calls did not depict what transpired at the crime scene and that the Petitioner's conversation was inaccurate and unreliable to the facts surrounding the alleged crime.

2. That the prosecutor had no chain of custody to provide for the conversation making the evidence unreliable.

3. That the phone calls were never authenticated as to who was even speaking on the phone that evening.

4. Phone calls were illegally recorded because Petitioner was housed in a special housing unit as a forensic patient awaiting transport to the Florida State hospital and pursuant to the state law all calls from a forensic unit are required to be private.

The jail even went to great lengths to identify the Petitioner as a forensic patient by clothing Petitioner in a green uniform. Therefore counsel's performance was constitutionally deficient when he abandoned the insanity defense and allowed the state to influence the doctors to change their position.

As counsel for the Petitioner, counsel had a duty to at least follow up and advise the doctors that the phone calls are not a true depiction of what occurred the day of the crime, supporting the Petitioner's insanity defense that the Petitioner was confused as to what had occurred at the alleged crime scene. As it stands, counsel allowed the state to manipulate the Petitioner's doctor's right out of the insanity defense for Posey.

22

This was an unprofessional failure on the part of counsel at this time and proves that counsel was not functioning as counsel guaranteed by the sixth amendment of the United States Constitution and there is a reasonable probability that but for the errors and deficient performance of counsel the results would have been different a reliable probability is a probability sufficient to undermine the confidence of the outcome.

This is a facial sufficient claim of blatant ineffective assistance of counsel, which entitles the Petitioner to at the very least an evidentiary hearing. Posey contends that it would be insane to think that counsel's lack of investigation, research, and by aborting the insanity defense on the last day for trial *cannot* be said under any reasonable circumstance that counsel was functioning in the best interest of Posey. At the very least counsel should have declared that he was discharging himself from representation of Posey's because he had ***no trial strategy and was totally unprepared for the case***.

What is more disturbing is, *instead* of making the trial court aware of the change in the doctor's position, counsel waited until the day before trial to alert the trial court. Where at that time, counsel asked for a continuance, but it being in the eleventh hour the trial court *denied* counsel's request.

As a result, Posey was forced to go to trial with no strategy, with counsel who was unprepared, with counsel who did *no* investigation, with the counsel that was clearly ineffective in violation of Posey's Sixth and Fourteenth Amendment Rights.

At the very least counsel could have presented an insanity defense with the doctors and with lay testimony that Posey was actually insane at the time of the offense is still representing no defense at all. Some defense is better than no defense.

23

Therefore, the decisions by trial counsel were patently unreasonable and there was no

basis for counsel's decision, thus counsel was clearly ineffective and a judgment and

sentence should be vacated and set aside or in a very least an evidentiary hearing held.

## GROUND NINE

**COUNSEL PROVIDED CONSTITUTIONALLY
DEFICIENT PERFORMANCE BY NOT MOTIONING
THE COURT FOR A JURY VIEW OF THE ALLEGED
CRIME SCENE WHERE THERE WAS SUBSTANTIAL
TESTIMONY THAT BECAUSE OF THE LAYOUT OF
THE ALLEGED CRIME SCENE IT WOULD HAVE BEEN
VIRTUALLY IMPOSSIBLE FOR THE TWO ARRESTING
OFFICERS TO HAVE BEEN EYEWITNESSES TO THE
ALLEGED CRIME.**

## STATEMENT OF FACTS
## IN SUPPORT OF GROUND NINE

On at least two occasions the Petitioner asked his defense counsel to motion the trial

court, for it to allow the jurors to see in person the crime scene. So that the jurors could

physically see it was impossible for anyone, especially the arresting officers at night to see

what occurred inside of the residence. It is clear on the record counsel refused, moreover,

counsel could have had a diagram made of the crime scene or some pictures. However,

this was not done.

The alleged victims, the arresting officers, and the Petitioner all describe the layout of

the alleged crime scene at trial. All the testimony provided contained facts that would

have made it impossible for the arresting officers to view the allege scene of the crime

from the position that the police officers testified to and in the position they claimed to be

located at the crime scene i.e. outside the front door.

24

Had counsel motioned the trial court for the jury to view the alleged crime scene or presented some diagrams or photographs the jury would have been able to confirm the following facts for themselves:

1.  It was impossible to view inside the residence where the alleged offense occurred and the Petitioner was allegedly standing over the victims.

2.  It would have been impossible for the officers to see the Petitioner at all with the lights off especially at 1:00 am in the morning.

Thus, the jury view would have allowed counsel to impeach all four witnesses testimony with visual evidence, that the police were in the house at the same time that the Petitioner was and that they could not have seen what they testified that they had seen. The jury would have been able to determine that these witnesses testimony was untruthful and unreliable, thus raising a reasonable doubt.

Counsel was aware of the potential benefit of the requested jury view of the crime scene as the Petitioner had discussed this matter at great lengths with counsel, however counsel just ignored the Petitioner's request.

Counsel's refusal to move the court for a jury view in this instance makes absolutely no sense and races to the level of ineffective representation which is clearly demonstrated by the verdict in this case which had this been done it far out weighted the negative impact and it would *not* have prejudiced the state in any way if the jury would have been allowed to see the actual crime scene.

## GROUND TEN

## COUNSEL WAS CONSTITUTIONALLY DEFICIENT BY NOT INVESTIGATING RADIO TRANSMISSION HISTORY REPORT.

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND TEN

Counsel failed to investigate and call into evidence the radio transmission history report #OCS006CAD151835. Had counsel investigated this report, counsel would have been able to impeach all four witnesses and their testimony that the Petitioner yelled "I am going to bash your fucking brains out" at 01:12:59 in a statement that showed aggressive behavior.

The fact that the Petitioner said, "I'm going to blow *__my__* brains out" indicates that this was a self-hurt statement.

At 01:12:59 officer Nichols called officer Genrich and stated on the transmission "come around the front, I heard someone talking about blowing *their* brains out." (*emphasis added*)

The jury on numerous occasions heard the prosecutor and the witnesses testify that the Petitioner said this prejudicial statement when in fact the statement never existed. The four witnesses perjured their testimony with aid from the prosecuting authorities.

Posey avers that this was a clear violation of his Sixth Amendment Rights to effective representation, because counsel had a duty to ensure and protect Posey's Constitutional Rights. Where the State withheld exculpatory evidence, in violation of Posey's Fifth Amendment Rights and *Brady vs. Maryland*. This Court must as a matter of law vacate the judgment and sentence and forever discharge this Petitioner.

Counsel here was ineffective for not obtaining the reports, investigating the reports, reviewing the reports, and presenting the complete and truthful version to the jury. This amounts to clearly ineffective assistance of counsel in violation of Posey Fifth, Sixth and Fourteenth Amendment Constitution Rights.

Therefore, Posey has shown as well as met the two prong test of ineffective assistance of counsel that is the cause and prejudice standard. As a matter of law this court should reverse and remand this case to the state court for further proceedings.

## GROUND ELEVEN

**THE STATE WITHHELD EXCULPATORY EVIDENCE WHERE THE CHAIN OF CUSTODY RECORDS WOULD HAVE REVEALED THAT THIS EVIDENCE HAD BEEN TAMPERED WITH AND AS SUCH THIS ACT BY THE STATE DID DEPRIVE THE PETITIONER OF A VIABLE DEFENSE WHICH WOULD HAVE RESULTED IN A DIFFERENT OUTCOME AT TRIAL.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND ELEVEN

The state denied Posey of his Fifth and Fourteenth Amendment Rights of the United States Constitution, where this prosecution withheld evidence that was exculpatory to the Petitioner. Posey gained this information by way of requesting documents from the Okaloosa County Sheriff's Department. The evidence that was withheld and that Posey gained access to clearly shows that it had been tampered with, yet the prosecution still used it against Posey to convict him. Moreover, counsel failed to object to the use of this tainted evidence.

The normal operating procedures of the Okaloosa County Sheriff's Department was not followed in his case, the established procedure used in order to credibly verify the

chain of custody was grossly violated by Okaloosa County Sheriff's Department evidence custodian. Thus raising a question the reliability of all of the evidence used in trial against the Petitioner.

Moreover the prosecution knew, or should have known, of these documents however the prosecution with malicious intent withheld this information from the defense.

It is obvious that the prosecutor knew of these documents as a prosecutor's signatures appears on the documents, in which the Petitioner was able to obtain. On these documents, on the left bottom of the evidence receipt it appears the name Donna Maw, assistant state attorney dated May 5, 2008 the day before trial. These evidence receipts bearing the number EVP #OCS006EVP007345, camo mask, woven hat.

There was a dispute as it related to the identification of exhibits, as to Exhibit 1 which would solicit as a switchblade evidence number EVP#7344.

Posey testified that the knife that was entered into evidence was the kitchen knife that the alleged victim, Jamie Powell attacked Posey with.

Officer Nichols testified that the knife entered into evidence was the knife that he took off the Petitioner's person. This is significant because the knife that was taken off of the Petitioner was a smaller knife which at the time of the trial was still unaccounted for.

Also several rolls of film were allegedly placed into evidence on November 6, 2006. These photographs were exculpatory to the Petitioner as well as the photographs that showed and would have proven that the knife that was taken off of Posey was a completely different knife then the knife in the one that was produced at trial.

In addition the photographs would have also shown that the alleged victim, Georgianna Powell Posey, did not have any redness around her neck or on her arms as

28

alleged thus proving that the Petitioner never laid a hand on her, contrary to the testimony presented at trial and other reports utilized in this case.

The photograph would have also shown that there was no "booties" on the Petitioner's feet, but that there were in fact shoestring covers.

It is noteworthy that the jury commented on this particular piece of evidence stating that they felt that it was important to see but that it was unavailable to them.

Over objection from the defense counsel from a lack of foundation all evidence was allowed in as evidence in this case. However there jury was allowed to see all the evidence contained in exhibit A.

This evidence was very prejudicial to the Petitioner in this case as this evidence was highly unreliable and had practically no reliable chain of evidence whatsoever.

The evidence proffered into evidence in this case was the very same evidence that the officer claim was placed in evidence on November 6, 2006 which on the day of trial mysteriously disappeared.

It is clear that the officers as well as the evidence room officer has committed fraud upon this court, thus prejudicing the Petitioner at trial by the use of perjured testimony as a related to the evidence. Counsel had a duty to object to this evidence especially when the Petitioner told him that this was not the evidence that was taken the night of the incident. At the very least counsel should have asked for recess in order to ascertain what the Petitioner was actually talking about so he could make a competent objection to preserve this issue for appeal, if the trial court had denied him. Because of this in and of itself is a serious breach of trust and violation of Posey's constitutional rights.

29

The only thing Petitioner can deduce from this is that the state deliberately withheld evidence from the defense that could have been exculpatory to the Petitioner's case. In essence, this would be considered a *Brady* violation, a *Gigilo* violation and an extension of the motion of fraud upon the trial court.

Moreover, the Petitioner alleges this is newly discovered because he did not learn of it until after trial, and only what he found it out was because he sought to gather information for the preparation of his post collateral motions. There is no doubt that this evidence, this tampered with evidence would have been beneficial and exculpatory to the defense.

The evidence was willfully and intentionally suppress by the state and its representatives causing the Petitioner to suffer an engraved injustice that prejudiced his chance of proving his case. As a matter of law this Petitioner must be given the opportunity to proceed to an evidentiary hearing to determine whether this evidence was in fact exculpatory.

## GROUND TWELVE

**THE STATE TRIAL JUDGE PREJUDICE THE PETITIONER BY TWICE MAKING A COMMENT AS A RELATED TO THE MASK EXHIBIT.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND TWELVE

In trial, the state trial judge violated Posey's right to Due Process of Law where the trial judge failed to act as an impartial trier of fact. In trial the trial court made the following statement:

> *"Judge, Mr. Posey's intent is an element of the offense, for burglary you have to have an intent to commit a crime inside. It is very relevant for us to prove that his intent is. The fact that he's wearing a mask..."*

The judge stated as follows:

30

*"**The reason you were in a mask is obvious**"*

This comment was improper and prejudicial to the Petitioner and it left for the jury to think that the Petitioner were amassed to conceal his identity, thus satisfying the element of burglary.

If the comment wasn't enough to burn a thought into the juror's minds, the trial judge then provided a follow-up comment to insure in the jurors mind that a mask was used improperly when he openly stated:

*"**Well everybody knows that if you wear a mask is to conceal your identity**"*

This comment was said loud enough for all the jury members to hear because the jurors were shaking their heads up and down in an affirmation of what the state trial judge said.

While this court gave a curative instruction, this instruction did not *un*-ring the bell. The juror's minds was not focused on the fact that the trial judge believed that the mass was used to conceal the Petitioner's identity and due to the great weight that it is usually conferred on a judge's opinion that the Petitioner was extremely prejudiced by this comment by the trial court as it made the Petitioner look as if the trial court, the judge himself believe that the Petitioner was guilty, and that he was trying to employ some disguise in order to commit the burglary. This cannot be considered a harmless error by the trial court because it did draw the attention of the juror and gave the jurors a negative conference, and the court knew this that is why they gave a curative instruction.

Moreover, the court should have granted the defense their motion to dismiss regarding this matter, because the court refused to do so in furthering the courts prejudicial influence on the trial in this case which demonstrates that the trial judge was not acting as an

31

impartial neutral arbitrator which is required by Florida law, but more so required by the United States Constitution in protecting and accused right to a fair trial, a trial which results can be relied upon as being fair, just and correct.

Based on these facts, it is clear that Posey's rights to a fair trial have been violated under the dictates of the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution.

### GROUND THIRTEEN

**PETITIONER'S CONSTITUTIONAL RIGHTS DUE PROCESS OF LAW, EQUAL PROTECTION, FIFTH AND FOURTEENTH AMENDMENT RIGHTS ON THE UNITED STATES CONSTITUTION, LEGISLATIVE INTENT FOR THE FLORIDA STATUTES SECTION 415, AND THE AMERICANS WITH DISABILITIES ACT WERE VIOLATED BY RESPONDENTS NOT SUPERINTENDING A COURT ORDER BY THE STATE TRIAL COURT OF THE FOURTEENTH JUDICIAL CIRCUIT , SPECIFICALLY CONDITION NUMBER FOURTEEN OF POSEY'S PROBATION ORDER.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND THIRTEEN.

As part of Posey's conditions of probation the Circuit Court in and for the Fourteenth Judicial Circuit ordered that Posey, "*shall attend evaluation for mental health treatment and if treatment is necessary he will comply with it.*"

Petitioner contends he has exhausted the remedy, to assure due process of this claim. First, petitioner filed a grievance with the probation office in Okaloosa County. Second, he appeal the denial the district office of community probation and Pensacola Florida, which was also denied. Third, he appeal the denial of the district office to the regional communications probation department in Orlando Florida, again which was denied.

32

Fourth he appeal the denial of the department of corrections headquarters in Tallahassee Florida.

Posey took the final step and appealed the Department of Corrections final denial to the Circuit Court in and for Okaloosa County Florida on a habeas corpus a redress of a grievance petition. See case number 2012–CA–001823. (See Volume 1, pages 001-019), April 20, 2012. Entry, volume 1, page 022-122 motion for rehearing. (Index)

Sixth, petitioner filed a motion for relief from judgment and decree or order, see volume 1, pages 143 - 160, case number 2012-CA-001823, at the denial of his habeas corpus. Seventh petitioner filed a notice of appeal forest analogous habeas corpus, see volume 1 pages 185 196, petitioner was then assigned his case number in the DCA, 1D13-4434, in the First District Court of Appeals. Petitioner is now seeking relief in his 2254 habeas corpus in federal court in Pensacola after being per curium affirmed by the First District Court of Appeals.

## ARGUMENT

Petitioner was placed on probation for a period of 15 years, for armed robbery occurring in Bay County Florida, case number 98-1094-A, related case by the Hon. Don T Sirmons of the Fourteenth judicial circuit in and for Bay County Florida. Petitioner's probation was to be served in Okaloosa County Florida. See volume 1, May 15, 2012 motion for rehearing, pages 022-122 specifically probation order conditions number fourteen. This condition specifically states:

*"You must undergo a mental health evaluation, and if treatment is deemed necessary you must successfully complete the treatment".*

The probation order was specifically tailored by Judge Don T Sirmons after he was informed of the petitioner's rain damage and other mental health issues as a result of a 1998 automobile accident. Which the accident was of no fault of Posey and the fact that the sentencing court the petitioner was currently house and inpatient treatment at the Chattahoochee state hospital Annex in Lake City Florida for related mental health issues on the sentencing date.

On May 5, 2005 at the termination of petitioner's prison sentence, he was released from the mental hospital inpatient center on his own recognizance. Petitioner immediately reported to the probation office in Shalimar Florida, Okaloosa County to begin serving his probation. At that time and all throughout that. Posey was taking powerful psychotropic medication prior to and during his probationary period. At the time of arrest authorities were made aware and well-informed that petitioner was on mental health probation with special requirements and status.

Respondents, upon releasing a petitioner from the inpatient mental health hospital on his own recognizance and signature, at that time should have scheduled petitioner and evaluation for treatment outlined in probation condition fourteen. Petitioner avers that a reasonable person would construe that petitioner should have been evaluated and treatment given, if needed, as condition fourteen states, at the time the petitioner was released into society for probation only because his sentence ended in May 2005. That was not done, condition fourteen was not supervised by probation according to the court order.

On October 9, 2006, petitioner's wife and caretaker, as well as co-payee filed a domestic

violence injunction on petitioner.  See case number 2006-DR-0004182, petitioner's

wife/caretaker accompanied her injunction with an affidavit that, "petitioner was

incompetent and not acting right".  A reasonable person would construe this to be the

second opportunity to supervise condition fourteen of Posey's probation and have he

evaluated and treated, however this never happened.

At this time, petitioner avers that the respondents violated his constitutional rights to due

process of law and equal protection of the law by not supervising based upon the court's

order of condition fourteen and directing the petitioner to the appropriate facility for

evaluation and treatment.

A reasonable person would have concluded, that by the facts presented here in, which

are supported by voluminous mental health records.  At this time, not only was petitioners

Constitutional rights violated to due process and equal protection of the law, respondents

place public and petitioner's wife and caretaker in harm's way.  By doing so the

Department of Corrections clearly placed Posey in a position for *re*-arrest and ultimately

violation of his probation.

Despite the reports of petitioner's wife and caretaker that Posey was "incompetent"

and "not acting right" at the October 9, 2006 injunction hearing in case number 2006-DR-

0004182, respondents still have never supervise condition number fourteen of Posey's

probation order.

Approximately one month later on November 6, 2006, petitioner was arrested for

burglary with kidnapping, assault, and violation of injunction all offenses against

petitioner's wife/caretaker. That provided the respondents the report of petitioner's

35

deteriorating mental health condition, prearrest. The November 6, 2006 arrest came post to

emergency visits to his psychologist Dr. Demoya.  See volume 1, pages 22-122.  Dr.

Demoya's report.

Upon arriving at the county jail on November 6, 2006, petitioner was identified as a

mental health patient, in crisis state, and place in inpatient in the mental health clinic.  See

mental health records in volume 1, entry May 15, 2012 pages 022-122. Specifically, Dr.

Victor Demoya's report, a diplomat of the American Board of psychiatric and urology.

Note the report contained, no input on the respondents being a part of petitioner's needed

evaluation or treatment or aftercare post release of the petitioner from a mental health

hospital, on May 5, 2005.  In fact, respondent took no part in supervising the court order,

specifically condition fourteen, except to sign a November 7, 2006 affidavit for a

warrantless arrest for petitioner. Based on a new law violation and recommended a

maximum sentence in the Department of Corrections.

Shortly thereafter, on December 1, 2006 petitioner was deemed incompetent to

proceed, see his wife's and caretaker affidavit filed two (2) months, prior to the arrest on

October 9th, 2006 in case number 2006-DR-0004182 at the injunction hearing.  In fact, the

mental health reports of Dr. Larson states that the Petitioner was incapable of surviving

alone.  Moreover, he is in need of treatment that should have been given Petitioner at the

genesis of his probation and after his release from the mental health hospital in May of

2005.  The serious of the Petitioner's brain injury and his charges.

The States position was that they could not make the Petitioner be evaluated until the

termination of his fifteen (15) years of probation, because:

> **"There was no time frame within the provision, therefore,
> appellant had 15 years to complete it."**

See:  Respondents answer brief in the First District Court of Appeals, case number 1D13-4434, page 15, lines 9-12

Given the facts herein and the exhibits in volume 1 of the index, case number 2012-CA-1823, pages 1-196, a reasonable person would conclude that respondent's violated Petitioner's Due Process and Equal Protection Rights, which are guaranteed by the Fifth and Fourteenth Amendment Constitutional Rights.  By the Respondent's not supervision the Petitioner/Probationer and directing him to be evaluated and treated for his mental health issues, as order by the trial court in Bay County.  As of his probation, considering the facts presented herein, Petitioner avers that it would be ***outrageous*** and unlawful, as well as a violation of petitioner's due process rights, to allow him "free to roam" incompetent and insane in the public.  Because the probation condition number fourteen did not with specificity identify the exact date the evaluation and treatment had to be completed.  Importantly, respondent the condition fourteen to the sum of fifteen years to complete condition fourteen of his probation, without the court's authority.  Contrary to public safety, the safety of the petitioner who is a disabled individual and phone mobile adult.

There is no argument, that Posey is considered to be disabled, and a "vulnerable adult" by definition. Because of his brain injuries and substantial damage.

Respondents simply never participated in petitioner's supervision of condition fourteen and left petitioner to his own means.  Therefore, completely failing the petitioner, the system, and society and failing to properly supervise the petitioner as required by law.

It is abundantly clear that Posey was in need of a protective and proactive services of the probation and parole department of Florida.  However, the abuse and exploitation of petitioner was from the very department that was quartered by the court to protect him and supervise him and the department failed to do so.

The Honorable Judge Stone of the first judicial circuit was biased and prejudicial thus showing impropriety in petitioner's case, case number 2012-CA-1823, see volume 1 pages 143-160, violating petitioner's constitutional rights to due process and equal protection of the law.  See also, volume 1 pages 119 petition for habeas corpus filed April 20, 2012. See also appellate reply brief case number 1D 13-4434, Florida's first District Court of Appeals.

Respondents did violate Petitioner's right to due process, equal protection of the law, and the legislative intent outline in Florida statutes 415 for disabled and vulnerable adults, based on the disability act.  The violation of his constitutional rights cause petitioner to lose his wife, liberty, and happiness guaranteed by the United States Constitution. Petitioner has been unlawfully and illegally detained without authority continuously for 10 years onto the date of the filing of this federal habeas corpus based on 28 USC section 2254.

Petitioner humbly prays this Hon. Court ordered the respondents to issue all writs necessary to release petitioner from unlawful, illegal incarceration immediately due to the fact that Posey is detained without the authority of law.

## GROUND FOURTEEN

**PETITIONER'S FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE UNITED STATES CONSTITUTION WERE VIOLATED BY THE OKALOOSA COUNTY SHERIFFS DEPARTMENT, ET AL, OF THE FIRST JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, AND SHALIMAR, IN CASE NUMBER 2006-2901. THE CONSTITUTIONAL VIOLATION BY OKALOOSA COUNTY SHERIFF'S DEPARTMENT DID CHANGE THE OUTCOME OF THE PETITIONER'S TRIAL.**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND FOURTEEN.

### ARGUMENT A. – Phone Calls

Case Number 2013-CA-5345, L.T. Okaloosa County Florida.

Case Number 1D14-1482, First District Court of Appeals, State of Florida.

Petitioner was arrested on November 6, 2006 by the Okaloosa County Sheriff's Department and transported immediately to their detention facility, the Okaloosa County jail, which they supervise by the Okaloosa County Sheriff's Department.  Immediately upon Posey's arrival, he was evaluated by the mental health staff.  Petitioner was diagnosed incompetent and insane upon arrival on November 6, 2006 pursuant to Florida Rules of Court 3.210 and 3.219.  Petitioner was then house in special housing and instructed to wear identifying jail guard (green) for mental health patients. At this time Okaloosa County jail was an emergency holding facility for petitioner, a forensic patient, awaiting court ordered involuntary commitment to the Florida state mental hospital in Chattahoochee Florida. Petitioner upon arrival was enjoying his rights to communicate with outside persons by phone and letters freely and privately. Okaloosa County Sheriff's

apartment was recording petitioner's phone calls housed as a forensic patient with intent to prosecute unrelated to jail security from November 6, 2006 the day of his arrest. This continued up until 2008, petitioner's trial. The Okaloosa County Sheriff's Department also disseminated those recorded calls (composed), uncertified, without the authority or chain of custody and against the published contract number C04-1044 – C03-45 of the jail to petitioner's defense expert and attorney, destroying petitioner's only viable defense of insanity, days before trial. This violation of Petitioner's Constitutional Rights cited herein did result in conviction of Petitioner.

### Exhaustion of Remedies Phone Calls

Petitioner filed a formal Grievance within the county jail without answer. Petitioner then filed a grievance to the supervisor the county jail and the Okaloosa Board of County Commissioners. Commissioners stated that Okaloosa County Sheriff's Department did not have certification to disseminate the phone calls as authentic, according to the security contract with telecommunications contractor, contract number C04 – 1044 – C03 – 45 or 1044 – C04 – 45, with Inmate Calling Solutions.

The board of County commissioner's letter was dated February 24, 2012. See petitioner's petition, for redress of grievances case number 2013 – CA – 005345C.

Petitioner then filed a petition for redress of grievances, Case number 2013-CA–5345, it was dismissed on March 10, 20114. Petitioner appealed the dismissal of his petition on March 27, 2014, to the first District Court of Appeals. Petitioner received case 1D14-1383 on April 9, 2014. On June 13, 2014, petitioner filed a timely initial brief on the merits. On June 30, 2014, case numbers1D14-1383, 1D14-1379, and 1D14-1377 were consolidated for purposes of travel on June 30, 2014 a police filed an answer brief. On for

worry third 2015 a mandate was issued by the first of the Court of Appeals, per curiam affirmed the above referenced case numbers. Petitioner now files this timely claim under his federal habeas corpus pursuant to 28 USC section 2254.

Petitioner's reply on all facts statements file in his petition for redress of grievance in case number 2013-CA-5345 (c) and its appeal briefs filed in case number 1D14-1379 for support of his claim that the Okaloosa County Sheriff's Department violated petitioner's rights to Due Process on the Fifth and Fourteenth Amendment of the United States Constitution, and humbly prays this honorable court vacates petitioner's judgment and sentence in case number 2006 – 2901 and for order an evidentiary hearing and all other relief deemed just and proper.

Petitioner humbly request this court to take in a consideration state post-conviction motion and proceedings which were terminated on February 10, 2014. Petitioner filed his grievance initiating case number 2013-CA-5345 and 1D14-1379. In 2012 with internal affairs, the lower court denied/dismissed Petitioner's petition for redress of grievances as a collateral attack on his judgment in case number 2006-2901. He petitioner avers that this is a valid claim on a state post-conviction motion and the lower tribunal should have construed his petition 2013-CA-5345 as an additional amended claim on his state post - conviction motion that was pending. Petitioner file his next a friend state post-conviction as a 100% disabled person and praise this court will consider this properly exhausted claim based on the phone calls.

41

## ARGUMENT B
## SEIZING PETITIONERS LEGAL WORK PRODUCT
## IN CASE NUMBER 13-CA-545 AND
## 1D14-1379, FIRST DISTRICT COURT OF APPEALS.

Petitioner was granted a state post-conviction evidentiary hearing in case number 2006-2901, at the Okaloosa County Courthouse Annex on April 9, 2012. The Department of Corrections for the Okaloosa County jail transported petitioner from Walton correctional institution. Okaloosa County Sheriff's Department transported petitioner court on April 9, 2012 upon boarding the transport fan Okaloosa County Sheriff's transport officers did a brief search of petitioner's legal work product, is for his logs and mental health prosthesis for facts see case number 2013-CA-5345, "petition for redress of grievances", upon arrival at the courthouse, the logs sees against the will of petitioner. Post seizing the law petitioner witness Okaloosa County Sheriff's Department officers reading the information and taking notes and sharing the contents with adversarial witnesses that were subpoenaed to testify against the petitioner. Also, the Okaloosa County Sheriff's Department employees/deputies violated petitioner's constitutional right to due process of law provided by the Fourth Amendment right protecting petitioner from unlawful and illegal warrantless searches and seizures. Okaloosa County Sheriff's Department gained unfair advantage in the hearing by the above said violation. The legal work product logs and mental health prosthesis was petitioner's disability tool and was confidential between his counsel and himself, and contained strategies.

At the same April 9, 2012 evidentiary hearing as argument B previously stated the Okaloosa County Sheriff's Department place such restrictive restraint on petitioner in which he could not sufficiently assist his attorney to aid in his defense. Okaloosa County

42

Sheriff's Department at this time violated petitioner's right to due process and a full and

fair evidentiary hearing petitioner contends that the Okaloosa County Sheriff's apartment

place restrictive restraint's so tight on petitioner's extremities, that it caused petitioner to

go into a full panic attack and confusion. Thus exacerbating petitioner's mental illness to

a point he could not sufficiently and presently assist his attorney in his defense. The

restraints were so tight petitioner could not take notes or open his legal logbook mental

prosthesis to assist in the mid-his memory, in order to help his attorney with facts of the

case. At one time, the judge requested removal of at least the writing and to assist

petitioner, the Okaloosa County Sheriff's department officers refused, thus violating

Posey's due process rights and his rights to equal protection. This blatant violation altered

the outcome of the proceedings of evidentiary hearing in case number 2006-2901.

Petitioner relies on all documents in case number 2013-CA-345 and First District Court of

Appeals case number 1D14-1379.

## **ARGUMENT C**

**DESTROYING EXCULPATORY BRADY MATERIAL. RE: COURT SURVEILLANCE FILMS OF THE PRIOR APRIL 9 EVIDENTIARY HEARING IN CASE NUMBER 2006-2901, SEE ALSO CASE NUMBER 2013-CA-5347(C) AND VERSUS THE COURT OF APPEALS CASE NUMBER1D14-1379.**

On April 9, 2012, evidentiary hearing, petitioner requested a copy of the court

surveillance films and preservation of such in his complaint to the internal affairs

department of the Okaloosa County jail. See volume 1, December 30, 2013 pages one

through 15, specifically memo (OCS) 12-CAD006388) supervisory inquiry case number

2013CA-5347. D. C. S. D. Purposely he raced the film in bad faith stating "V 12".

A review of the Okaloosa County Courthouse annex extension, digital surveillance system was unable to produce related images of the April 9, 2012 date were already expired for the storage system.

At this time the Okaloosa County Sheriff's Department violated petitioner's rights to due process as the standard of review for video surveillance, retention is 30 days, Florida rules of court, record retention schedule states "V 12".

This record series consist of surveillance videotapes created to monitor activities occurring both within and outside public buildings. This tape may play an integral part in the prosecution or disciplinary action retention of 30 days. Dan even raced and reused provided any necessary images are saved.

Petitioner's internal affairs complaint grievances was filed on April 9, 2012, the same day the evidentiary hearing was held. The supervisory report/investigation was completed on April 20 50,012. See volume 1, pages one through 15, December 30, 2013, specifically 16 days later. The records retention states say the video for 30 days, only 16 days had passed petitioner's complaint filed on April 9, 2012 specifically requested the Okaloosa County Sheriff's Department to preserve the tapes for Brady material, they did not do so. By Florida rules of special requests from the Okaloosa County Sheriff's Department violated petitioner's right to due process based on the above said facts petitioner filed for formal grievance to the internal affairs office of the Okaloosa County Sheriff's Department on April 9, 2012 regarding argument (B)(C) and (D) by the US legal mail through prison officials hands at the Okaloosa County jail. See case number 2013-CA-5347(c) volume 1, December 30, 2013 specifically exhibit supervisor inquiry CAD number OCSO12CA-0063888, dated April 20 50,012. The complaint was denied,

44

petitioner Dan filed a next to Fran petition for redress grievances/injury in the lower tribunal, see case number 2013-CA-5347, volume 1 December 30, 2013 pages one through 15.

The petition was dismissed on March 11, 2014, see volume 1 pages 18-19, petitioner Dan filed an appeal to the first District Court of Appeals on March 21, 2014 and directions to the clerk. See pages 20-25, volume 1 case number2013-CA-5347 the first District Court of Appeals, assigned case number 1D14-1379.  Petitioner filed a timely initial brief on the merits on July 18, 2014.  See DCA case docket 1D14-1379. Petitioner's brief was unchallenged by the Okaloosa County Sheriff's Department, petitioner was issued a mandate per care affirmed on January 8, 2015. Now petitioner places exhausted claims on his federal habeas corpus pursuant to 28 USC section 2254.

Based on all the facts herein, in the cases above and the internal affairs complaint filed on April 9, 2012 and arguments (B)(C) and (D) herein, petitioner contends is due process rights were violated by the Okaloosa County Sheriff's Department.  This clear and blatant violation change the outcome of Posey's evidentiary hearing on April 9, 2012.  Petitioner humbly praise this honorable court will vacate petitioner's judgment and sentence and or order an evidentiary hearing to the lower tribunal and have evidentiary hearing regarding argument in (B)(C) and (D).  In any other relief this honorable court deems just and proper.

## **ARGUMENT D**

## **CASE NUMBER 2013CA-5346 AND FIRST IS THE COURT OF APPEALS CASE NUMBER 1D14-1377 EVIDENCE ROOM AT THE OKALOOSA COUNTY SHERIFF'S DEPARTMENT.**

Petitioner filed a formal sworn complaint to the Okaloosa County Sheriff's internal

affairs division and the records and evidence custodian of the Okaloosa County jurors

department. In regards to the missing evidence and discrepancies in the chain of custody

of the evidence in case number 2006-2901. Petitioner contends that the Okaloosa County

Sheriff Department violated his due process rights of law by not maintaining and securing

the evidence room, thus causing petitioner's evidence to disappear. Petitioner also avers

that the evidence would have ported his innocence at trial, and would have impeached all

witnesses for the state. On November 6, 2006 Okaloosa County Sheriff's Department

arrested petitioner for multiple felonies in case number 2006-2901 and case number 2006-

DR- 4182.

That same night the Okaloosa County Sheriff's deputies turned in several rolls of film

to the Okaloosa County Sheriff's Department evidence room in Shalimar Florida. The

film, according to the Okaloosa County Sheriff's Department deputies evidence room that

arrested petitioner on November 6, 2006, contained the following pictures of the crime

scene and the evidence collected and pictures of the victims and the petitioner at the 2008

trial. What happened, how the crime happened, and the alleged crime scene evidence

became an issue of controversy between the Okaloosa County Sheriff's Department and

the petitioner. Such as, the victim and the Okaloosa County Sheriff's office stated the

victim had a visible redness on her neck and arms as if a struggle had transpired. Petitioner

testified no struggle had occurred. Both officers testified they witnessed the alleged crime

from outside the front door, petitioner testified that the officers could not have seen the alleged crime scene from outside the door. Both officers testified that the knife collected was petitioners and it was not.

This controversy prejudiced the petitioner in the jurors mind. Okaloosa County Sheriff's Department lost a photograph turned in to the Okaloosa County Sheriff's evidence room, petitioner avers that his Fifth and Fourteenth amendment Constitutional rights to due process of law were violated, by the Sheriff's Department not maintaining and securing evidence and evidence room.

What's more disturbing is the petitioner and Okaloosa County Sheriff's Department agreed that the pictures were taken, however the Okaloosa County Sheriff's deputies do not know how they became missing, apologizing in trial in their testimony. The case number 2006 2901. It is Posey's position that there is no way that he could avail himself of due process of law with out the photographs to be viewed by the jury, the factfinders. Petitioner's a material eyewitness contends that the photographs were exculpatory in nature, essentially Brady material. Okaloosa County Sheriff's Department has a lawful duty to provide and secure evidence in their evidence room so that the public and the petitioner can receive a fair trial based on due process of law in their cases. Before the court, thus they have a duty to provide any and all exculpatory evidence based on Brady to the petitioner's and defense counsel for use in trial.

Petitioner, in his independent investigation, post-trial avers that the rolls of film were destroyed in bad faith by the arresting officers that allegedly turned the rolls of film in according to his trial attorney. Petitioner supports his claim that the officers destroyed the rolls of film because it would not have supported his affidavit for probable cause, in both

scenarios of the Okaloosa County Sheriff's Department thus still violating petitioner's due process rights in case number 2006-2901.

A formal notarize grievance was filed with the internal affairs department of the Okaloosa County Sheriff's Department however Posey never received a response. Petitioner then filed an ethics, the ethics complaint committed redirected petitioner to file it with the Okaloosa County Sheriff's Department again. Petitioner did that. See the petition for redress of grievance attachments, volume 1 case number 2013CA-5346(c). Again no response from the Okaloosa County Sheriff's Department. Petitioner Dan file the petition for redress grievance in case number 2013-CA-5346. See volume 1, entry December 26, 2013.

On March 11, 2014, the petition was dismissed, the case docket 2013-CA-5346. On March 21, 2014 petitioner filed a notice of appeal along with directions to the clerk on April 9, 2014. Petitioner received his case in the first the Court of Appeals bearing case number1D14-1377. On October 30, 2014 petitioner's brief was placed for a panel of judges unopposed by the Okaloosa County Sheriff's Department for disposition on the merits. On January 8, 2015 versus the Court of Appeals issued a mandate, stating per curiam affirmed.

Noteworthy, the petition for redress grievances was filed on December 26, 2013, it was dismissed on March 10, 2014. The petition was dismissed stating that the petition should have or could have been raised in post-conviction proceedings. The court abused its discretion, by dismissing the petition as a post-conviction proceeding were still pending

48

till February 2014. The court should have strewed the petition as a 3.850 and also on the merits.

### CONCLUSION

Petitioner's judgment and sentence should be vacated and or an evidentiary hearing be ordered in any other relief this court deems just fair and proper.

### GROUND FIFTEEN

**THE STATE OF FLORIDA VIOLATED THE PETITIONERS FIFTH AND FOURTEENTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION, IN THAT IT PLACED THE PETITIONER IN DOUBLE JEOPARDY, BY TWICE BEING PUNISHED FOR THE SAME ACT. IN THAT THE BURGLARY WITH THE INTENT TO KIDNAP AND THE KIDNAPPING IN FURTERNACE WAS UNLAWFUL AND CONSTITUTE AN ILLEGAL SENTENCE**

### STATEMENT OF FACTS
### IN SUPPORT OF GROUND FIFTEEN.

Petitioner separate sentences for count II, kidnapping also constitutes the same acts, elements, and incidents for which he was sentenced in count I, Berkeley with intent to kidnap. This was the legal because both counts I and II have the same element as the other. Thus, violating Posey's right to be free from double jeopardy in violation of his Fifth and Fourteenth Amendment Constitutional Rights, as well as his rights to Due Process of Law.

Count I, the burglary and count II kidnapping have the same facts as each other and to be tried and convicted as such clearly raises the level of a manifest injustice. The Florida

legislature did not intend that a defendant be charged for the same offense as Florida has been very protective of an individual's right as it relates double jeopardy.

It is Posey's contention that the kidnapping never occurred, it is fact that the entire episode which gives rise to even the state claiming that a kidnapping occurred lasted only millisecond.

In comparing the elements that must be proved in a crime for kidnapping and burglary with a kidnapping, it is clear that although burglary with the kidnapping requires proof of an element that kidnapping does not, kidnapping does not require proof of an element that burglary with the kidnapping does not. Stated more clearly, all the elements kidnapping, our present in the burglary with a kidnapping. Therefore the kidnapping case is illegal, and judgment must be vacated, and any other relief team just and proper.

It is Posey's position, that a kidnapping never occurred, that a burglary never occurred, and that both counts one and two are not supported by fact.

50

# Attachment B

# Original Order Denying Motion for Post-Conviction Relief

Case 3:15-cv-00452-MCR-CAS    Document 1    Filed 10/15/15    Page 69 of 92

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-



EXHIBIT
B

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

STATE OF FLORIDA,
               Plaintiff,

v.

DAVID RUSSELL POSEY,
               Defendant.

Case No.:   2006-CF-002901

Division:   002

---

### ORDER SUMMARILY DENYING ALL GROUNDS EXCEPT FOR 26 OF DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

THIS CAUSE is before the Court on Defendant's Motion for Postconviction Relief filed in three (3) separate documents on:

June 1, 2010: Motion for Rehearing

June 7, 2010: Motion to Amend Motion for Rehearing

August 10, 2010: Motion for Post Conviction Relief

Any reference to the Motion for Post Conviction Relief is a reference to these three documents collectively. The Court has reviewed the Motion, applicable portions of the record, the State's Response, and the Defendants reply to the State's Response, and is otherwise fully informed in the matter. The Court has considered the motion pursuant to Rule 3.850, Fla. R. Crim. P., and Rule 3.800(a), Fla. R. Crim. P., as applicable. The Court finds as follows:

On May 8, 2008, the Defendant was found guilty after a jury trial of charges as described in the attached judgment and sentence.[1]

On June 7, 2010, in response to a motion alleging fraud upon the court filed by the Defendant on May 26, 2010, this Court issued an order to show cause which construed that motion as a motion for post conviction relief. The instant Order serves as a resolution of that motion and order to show cause. Ground 26 of Defendants present motion subsumes, clarifies, and reiterates the arguments presented in his prior motion with respect to the "voice CAD report" and radio transmission or call log.

---

[1] Exhibit A – Judgment and Sentence

1

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

In his present motion, Defendant raises thirty-four (34) grounds for relief. Several of these the Court has interpreted as arguments of ineffective assistance of counsel. Following the United States Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), Florida court's have held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:

> "First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied."[2]

There is a strong presumption that trial counsel's performance was not ineffective.[3] "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[4] The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[5]. "Judicial scrutiny of counsel's performance must be highly deferential."[6] The Florida Supreme Court has held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."[7]

## I.    MOTION FOR REHEARING

### GROUND ONE: CONVICTED OF A CHARGE NOT CONTAINED IN THE INFORMATION

Defendant argues that he was convicted of a charge not found in the Information. The attached

---

[2] <u>Maxwell v. Wainwright</u>, 490 So.2d 927, 932 (Fla. 1986) (citations omitted)
[3] See <u>Strickland</u>, 466 U.S. at 690
[4] <u>Id.</u> at 689
[5] <u>Id.</u> (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955))
[6] <u>Id.</u>
[7] <u>Occhicone v. State</u>, 768 So.2d 1037, 1048 (Fla. 2000)

2

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

Amended Information and Judgment and Sentence show otherwise.[8] This ground is summarily **DENIED**.

### GROUND TWO: INSUFFICIENT EVIDENCE TO SUPPORT KIDNAPPING CHARGE

Defendant argues that there was insufficient evidence to support his conviction for kidnapping. Arguments regarding the sufficiency of the evidence to support the convicted offense are not cognizable in a motion for post conviction relief. Such claims must be made through a timely appeal. This ground is summarily **DENIED**.

### GROUND THREE: SENTENCED AS PRISON RELEASEE REOFFENDER USING ONLY HEARSAY EVIDENCE

Defendant argues that he was impermissibly sentenced as PRR when the State used only hearsay to support the designation. The Defendant does not challenge that he does not actually fit the criteria for PRR status, but rather attacks the procedure used by the Court to arrive at the designation. The procedure used to designate a defendant as a PRR is not subject to attack as an illegal sentence. Only when the designation is substantively erroneous may the defendant challenge such designation. This ground is summarily **DENIED**.

### GROUND FOUR: ERROR IN ALLOWING JURY INSTRUCTION FOR BURGLARY

Defendant argues that his attorney erred in presenting to the jury an instruction for burglary. It is difficult for the court to decipher Defendant's argument in this ground. If the Defendant argues that there was insufficient evidence for the burglary count to reach the jury, as described above, such an argument is not cognizable in a motion for post conviction relief and should have been presented on appeal. This ground is summarily **DENIED**.

### GROUND FIVE: ERROR TO CONVICT FOR KIDNAPPING WITH A WEAPON WITHOUT A SPECIAL FINDING THAT DEFENDANT WAS ARMED DURING THE OFFENSE

As the State properly identifies, the weapon in the present case merely enhances the degree of the crime rather than establishing a minimum mandatory sentence. Because the reference to the firearm

---

[8] Exhibit B – Amended Information

3

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

was contained in the identification of the specific crime for which the Defendant was found guilty, no

special finding was required.[9] This ground is therefore summarily **DENIED**.

### GROUND SIX: ILLEGAL CONSECUTIVE PRR SENTENCE ARISING OUT OF SINGLE CRIMINAL EPISODE

As the attached excerpt from sentencing shows, the Defendant was only sentenced as a PRR on

count two.[10] This ground is therefore summarily **DENIED**.

### GROUND SEVEN: ILLEGALLY SENTENCED FOR CHARGES WHICH ENHANCED OTHER CHARGES ON WHICH THE DEFENDANT WAS ALSO SENTENCED

The Court cannot discern the legal argument Defendant makes in this ground. As the State

explains in their response, if the Defendant is challenging his multiple convictions on double jeopardy

grounds, his argument clearly fails as each crime contains an element not contained in the others. This

ground is summarily **DENIED**.

### GROUND EIGHT: COURT USED INCORRECT JURY INSTRUCTIONS

In general, an improper jury instruction should be objected to at trial and appealed. If a

defendant's attorney fails to object to an improper instruction, a defendant could seek relief through

Rule 3.850, Fla. R. Crim. P., by alleging ineffective assistance of counsel. In this case, the Defendant

has failed to identify any specific incorrect instruction. More importantly, the Defendant has failed to

state how he has been prejudiced by any alleged inadequacy of the jury instructions used in this case.

This ground is summarily **DENIED**.

### GROUND NINE: ERROR TO CONVICT WITHOUT A SPECIAL FINDING

As explained previously in Ground Five, above, this ground is summarily **DENIED**.

### GROUND TEN: ILLEGALLY FOUND GUILTY OF BURGLARIZING OWN HOME

This argument goes to the sufficiency of the evidence to support the conviction and should

have been raised on direct appeal. This ground is summarily **DENIED**.

### GROUND ELEVEN: ILLEGAL SENTENCE FOR BURGLARY OF A DWELLING

[9] See State v. Isley, 944 So.2d 227 (Fla. 2007)
[10] Exhibit C – Excerpt from Sentencing Transcript

4

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

Defendant argues that burglary of a dwelling is a felony of the third degree. This is incorrect. Chapter 810, Fla. Stat., clearing defines defendant's conviction as a second degree felony punishable by fifteen (15) years imprisonment. This ground is summarily **DENIED**.

### GROUND TWELVE: COURT FAILED TO INSTRUCT JURY ON LESSER INCLUDED OFFENSES

Defendant argues that the jury should have been instructed on third degree burglary of a dwelling as well. Chapter 810, Fla. Stat., indicates that burglary of a dwelling, whether occupied or unoccupied, is at least a felony of the second degree. This ground is summarily **DENIED**.

### GROUND THIRTEEN: JURY SHOULD HAVE BEEN REQUIRED TO MAKE SPECIAL FINDING OF INTENT FOR EACH WEAPON AND OFFENSE

The jury was properly instructed on the element of intent required for each crime.[11] This ground is summarily **DENIED**.

## II.    MOTION TO AMEND MOTION FOR REHEARING

### GROUND FOURTEEN: COURT SHOULD HAVE REQUIRED VARIOUS "SPECIAL FINDINGS" IN VERDICT

As the attached jury instructions show, the jury was properly informed as to the elements of each offense and made the correct findings. This ground is summarily **DENIED**.

### GROUND FIFTEEN: REHASH OF GROUNDS FIVE AND NINE

As described above in grounds five and nine, this ground is summarily **DENIED**.

### GROUND SIXTEEN: ILLEGAL USE OF "GENERAL" VERDICT FORM

This ground is a general rehash of several previous grounds wherein the Defendant alleges that the jury was required to make various "special findings" of fact. As described above, this ground is summarily **DENIED**.

## III.    MOTION FOR POST CONVICTION RELIEF

### GROUND SEVENTEEN: COURT LACKED SUBJECT MATTER JURISDICTION

---

[11] Exhibit D – Jury Instructions

5

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

Defendant's argument is entirely without legal merit and is summarily **DENIED**.

### GROUND EIGHTEEN: INEFFECTIVE ASSISTANCE OF COUNSEL WHEN ATTORNEY FAILED TO ATTEND COMPETENCY EVALUATION

Defendant has failed to allege how his attorney's lack of attendance, which is not mandatory, at his competency evaluation prejudiced his case. This ground is summarily **DENIED**.

### GROUND NINETEEN: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO OBJECT AND DEMAND ADDITIONAL COMPETENCY HEARING AT TRIAL

Defendant alleges that an additional competency hearing should have been *sua sponte* ordered by the Court after the presiding judge at trial made a comment alluding to the sanity, or lack thereof, of the Defendant. In addition to the fact that the Defendant has not alleged any facts which would support his incompetency at trial (thereby failing to allege prejudice) and the fact that many proceedings were held over the course of Defendant's case to evaluate and determine his competency, this issue was addressed and affirmed on appeal and is thus summarily **DENIED**.

### GROUND TWENTY: ERROR TO PROCEED AGAINST DEFENDANT WITH "SUBNORMAL IQ"

This is another competency argument. As described above, it is summarily **DENIED**.

### GROUND TWENTY-ONE: EVIDENCE ONLY SUPPORTED FALSE IMPRISONMENT, NOT KIDNAPPING

As described previously in this order, challenges to the sufficiency of the evidence in support of the crimes for which the Defendant was convicted are not cognizable in a motion for post conviction relief and could or should have been presented on appeal. This ground is summarily **DENIED**.

### GROUND TWENTY-TWO: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CALL CRIME RECONSTRUCTION EXPERT

Defendant alleges that his attorney should have called a crime reconstruction expert to describe for the jury the location in which the crime was committed. Defendant argues that this would have shown the jury that the statements of the witnesses regarding what they had seen were untrue because it would have been impossible for them to have observed things in the way they indicate that they did. Because it does not require specialized knowledge, training, or experience to determine whether the

6

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

layout of a home would inhibit the site or hearing of a witness, the defense attorney can not be said to have performed ineffectively for failing to call an expert. This ground is summarily **DENIED**.

### GROUND TWENTY-THREE: INEFFECTIVE ASSISTANCE OF COUNSEL FOR OPENING DOOR TO STATE COMMENTS ABOUT DOMESTIC VIOLENCE INJUNCTION

Defendant alleges that his attorney performed ineffectively when he opened the door to State comment on a domestic violence injunction against the Defendant. It was actually the State that introduced the injunction at the beginning of testimony by a victim.[12] Trial counsel objected to the testimony and his objection was overruled. This matter should have been presented on direct appeal and is thus summarily **DENIED**.

### GROUND TWENTY-FOUR: INEFFECTIVE ASSISTANCE OF COUNSEL FOR ABANDONING INSANITY DEFENSE

Defendant alleges that his attorney should not have abandoned his insanity defense. In fact, up until May 5, 2008, Defendant's attorney continued to argue for a defense of insanity on behalf of his client – even in the face of overwhelming evidence from psychological reports, depositions, and recordings of telephone calls made by the Defendant that the Defendant was not, in fact, insane. This ground is without a factual basis and is summarily **DENIED**.

### GROUND TWENTY-FIVE: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO FILE MOTION FOR JURY VIEW OF SCENE

Defendant alleges that his attorney should have requested a jury view of the scene of the crimes. Defendant has failed to allege how the special circumstances of this case required a trip by the juror's to the home where the crimes occurred in order for the jurors to understand the facts of the case. A jury view pursuant to § 918.05 is a highly discretionary tool that the court has broad discretion to permit or deny as required by the circumstances. Finally, Defendant has failed to allege how testimonial descriptions of the property fail to convey some essential element of the circumstances of the case such that a jury view would change the outcome of the trial. This ground is summarily **DENIED**.

---

[12] Exhibit E – Excerpt from Trial Transcript

7

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

## GROUND TWENTY-SIX: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO EXAMINE RADIO TRANSMISSION HISTORY REPORT

Defendant alleges that on the night of the offenses he actually did not state, as the victims testified at trial, that he wanted to harm them. Rather, he argues, he shouted that he would harm *himself*. Defendant insists that the radio transmission log from law enforcement dispatch on the night of the offenses would corroborate his description of events and cast doubt on the victims' description of events and that his attorney was ineffective for failing to examine or otherwise investigate or incorporate the call log into his defense.

The State responds that the radio log contains a statement which could, although ambiguous, be interpreted as evidence of a self-harm statement by the Defendant. However, the State argues, because the Defendant testified at trial and was specifically asked by his attorney what statements he made and he did not mention any threat to harm himself, the evidentiary value of this ambiguous statement is low and the Defendant has failed to show prejudice – i.e., the Defendant already had an opportunity to explain the threat to harm himself to the jury and did not.

As the State points out in its response, the court records clearly show, along with psychological reports and depositions and the Defendant's own testimony, that the Defendant, although not insane, had numerous psychological and mental infirmities and had little clear memory of what exactly transpired on the night of the criminal event. Counsel, being aware of his client's deficiencies, may have performed ineffectively by failing to seek introduction of the call report log through the officer who apparently heard someone state that they would blow "their" brains out. It is difficult for the Court to estimate the effect that this testimony may have had on the minds of the jurors as they weighed the credibility of the victims' testimony and the Defendant's testimony and pieced together what happened on the night in question. An evidentiary hearing should be held on this ground.

## GROUND TWENTY-SEVEN: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO OBJECT TO SLEEPING JUROR

Defendant alleges that his attorney should have objected to a sleeping juror during the reading

8

of jury instructions. As the State points out, the jurors were also given written copies of the jury instructions. The Defendant has failed to allege how he was prejudiced by this event, in light of the fact that the juror, even if in fact asleep, did receive the instructions. This ground is summarily **DENIED**.

### GROUND TWENTY-EIGHT: NEWLY DISCOVERED EVIDENCE THAT TRIAL EVIDENCE HAD BEEN TAMPERED WITH AT SHERIFF'S OFFICE EVIDENCE ROOM

As the State argues in their response, the evidence cards provided by the Defendant in support of this claim were clearly in existence at the time of trial. Newly discovered evidence must be evidence that was not discoverable through the exercise of due diligence by the Defendant or his attorney. In addition, this ground seems to challenge the reliability or sufficiency of the evidence to support his conviction – such a claim must be raised on direct appeal. This ground is summarily **DENIED**.

### GROUND TWENTY-NINE: TRIAL COURT ERRED IN COMMENTING ON MASK EXHIBIT

Defendant is incorrect regarding the trial court's comments. As the State correctly points out, such comments about the mask exhibit were not made to the jury and were not made with direct reference to the Defendant, but rather the court was addressing, in general and at a side bar conference, what a mask is used for.[13] This ground is summarily **DENIED**.

### GROUND THIRTY: COURT REFUSED TO ASNWER JURY QUESTIONS ABOUT EVIDENCE

This ground is entirely without merit, should have been raised on appeal, and is summarily **DENIED**.

### GROUND THIRTY-ONE: COURT ERRED IN NOT GRANTING JUDGMENT OF ACQUITTAL

This ground is not cognizable in a motion for post conviction relief and should have been raised on appeal. It is summarily **DENIED**.

### GROUND THIRTY-TWO: COURT LACKED PERSONAL JURISDICTION

This ground is difficult to interpret, but appears to be a claim that the court lacked personal jurisdiction over the defendant. This ground is utterly baseless and summarily **DENIED**.

### GROUND THIRTY-THREE: CUMULATIVE ERROR

---

[13] Exhibit F – Excerpt from Trial Transcript

9

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

There has not been cumulative error — nearly every ground raised by Defendant has been meritless. This ground is summarily **DENIED**.

<u>GROUND THIRTY-FOUR: INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO RAISE CONSTITUTIONAL VIOLATIONS</u>

This ground is legally and factually insufficient in that it fails entirely to describe which constitutional violations should have been argued and is summarily **DENIED**.

Therefore, it is **ORDERED AND ADJUDGED** that the Defendant's Motion for Postconviction Relief is hereby **SUMMARILY DENIED** as to grounds 1 - 25, and 27 - 34. An evidentiary hearing shall be held as to ground 26. This order is not final, for purposes of appeal, until the final order on Defendant's motion is entered after the evidentiary hearing is held. Such hearing shall be scheduled by the Court and notice of that hearing, appointment of post conviction counsel, and transportation shall be arranged by the Court.

**DONE AND ORDERED** in Okaloosa County, Florida, this 14 day of December, 2010.

TERRANCE R. KETCHEL
CIRCUIT JUDGE

<u>CLERK'S CERTIFICATE OF SERVICE</u>

I hereby certify a true copy of the foregoing has been furnished to the following this 17 day of Dec, 2010.

Office of the State Attorney — Courthouse Mailbox - Without Attachments

David Russell Posey, DC# 218253
Walton Correctional Institution
691 Institution Road
DeFuniak Springs, FL 32433

DON W. HOWARD
CLERK OF THE CIRCUIT COURT

By: 
Deputy Clerk

10



IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

STATE OF FLORIDA,
             **Plaintiff,**

v.
                               **Case No.**   **2006-CF-002901**
                               **Division**   **002**

DAVID RUSSELL POSEY,
             **Defendant.**

_____

## SUA SPONTE POST-CONVICTION SCHEDULING ORDER

**WHEREAS**

    (1)    The Defendant has filed eighteen (18) post-conviction motions, requests, or demands since October 7, 2009;

    (2)    The Defendant is entitled to thorough and adequate review of his post-conviction motions;

    (3)    The State is entitled to adequately respond to any post-conviction motions filed by the Defendant and prepare for any hearings necessitated by such filings; and

    (4)    The Court must regulate its docket such that each case is given proper consideration and progresses toward resolution in an efficient matter; therefore

    In light of the foregoing factors and in the interest of judicial economy, it is hereby **ORDERED** that

    The Defendant shall prepare and file all desired post-conviction motions, demands, requests, notices, or other pleadings available to address any presently ripe issue no later than **SIXTY (60) DAYS** from the date of rendition of this Order. If the Defendant requires more time to prepare such documents, he shall request such additional time prior to the expiration of this sixty (60) day time period.

    Upon the expiration of this time period, the Court shall consider and respond to all

1

DAVID RUSSELL POSEY vs. STATE OF FLORIDA
LT. CASE NO: 2006 CF 002901 S
HT. CASE NO: 1D14-

pending issues simultaneously and, if necessary, issue a single order to show cause and hold a single hearing to address all outstanding issues requiring such.

Any motions filed by Defendant after the expiration of this time period shall be summarily denied as successive.

**DONE AND ORDERED** in Okaloosa County, Florida, this $9$ day of $June$, 2010.

_____
TERRANCE R. KETCHEL
CIRCUIT JUDGE

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify a true copy of the foregoing has been furnished to the following this $10$ day of $June$, 2010:

Office of the State Attorney
Courthouse Mailbox

David Russell Posey, Defendant
DC# 218253
Walton Correctional Institution
691 Institution Road
DeFuniak Springs, FL 32433

DON W. HOWARD
CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk

2

# Attachment C

# Order Denying Motion for Post-Conviction Relief

3,85 c

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR OKALOOSA COUNTY, FLORIDA

STATE OF FLORIDA,

        **Plaintiff,**

v.                                   **Case No.  06-CF-2901**
                                         **Div. 002**

DAVID RUSSELL POSEY,

        **Defendant.**

---

## ORDER DENYING MOTION FOR POST CONVICTION RELIEF

---

**THIS CAUSE** is before the Court on Defendant's *pro se* "Motion for Post Conviction Relief," filed on August 10, 2010, pursuant to Florida Rule of Criminal Procedure 3.850. Prior to filing the "Motion for Post Conviction Relief," Defendant filed a "Motion for Rehearing," on June 1, 2010, and a "Motion to Amend Motion for Rehearing," on June 7, 2010. On December 16, 2010, the Court construed Defendant's pleadings as a single composite motion and entered an order denying all of the claims except for one claim of ineffective assistance of counsel, on which the Court granted an evidentiary hearing. On August 19, 2011, Defendant filed, through counsel, an "Amended Pleading of 3.850 Motion and Brady Violations," which supplemented Defendant's ineffective assistance of counsel claim with an allegation that the State committed a Brady[1] violation. This Order constitutes the final order on these matters. The Court conducted hearings on August 8, 2011, April 9, 2012, and February 10, 2014.[2] Having considered the motions, the State's response, applicable law, the trial transcripts, the testimony, evidence, and

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).
[2] Defendant was represented by counsel at the hearings held on August 8, 2011, and April 9, 2012. Prior to the February 10, 2014, hearing, Defendant filed a motion to discharge counsel. Following an inquiry into the matter at the beginning of the hearing held on February 10, 2014, counsel was discharged according to Defendant's desire. Defendant represented himself for the remainder of the hearing.

argument presented at the evidentiary hearings, and otherwise being fully advised in the premises, the Court finds as follows:

Defendant was tried by a jury and found guilty of burglary of a dwelling (Count 1), armed kidnapping with a weapon (Count 2), and aggravated assault by threat (Count 3). On June 9, 2008, Defendant was sentenced to a term of life in prison on Count 2 and 15 years and 5 years in prison on Counts 1 and 3, respectively. The sentence imposed for Count 1 runs consecutively to Count 2, and Count 3 runs consecutively to Count 1. Defendant filed a notice of appeal on June 23, 2008, and the First District Court of Appeal affirmed by mandate on April 6, 2010.[3] Following his conviction, Defendant filed multiple motions, including a "Motion to Preserve Evidence," "Motion for Reduction or Modification of Sentence," and a "Motion to Correct Illegal Sentence," all of which were denied.

## Brady Claims

Defendant alleges that the State committed a Brady violation by (1) delaying disclosure of a computer assisted dialog (CAD) report and (2) failing to provide audio recordings of the radio communications related to the CAD report. Defendant alleges the CAD report and audio recordings have exculpatory or impeachment value because the report and audio show he intended to harm himself, not the victims. The CAD report entry at issue reads as follows: "195-239 come around the front, heard someone talking about blowing their brains out."[4] Defendant alleges that he had said he wanted to blow *his own* brains out, not the victims' brains.

To succeed on an allegation that the State committed a Brady violation, "the defendant has the burden to show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the

---

[3] Posey v. State, 29 So. 3d 1123 (Fla. 1st DCA 2010) (unpublished table disposition).
[4] The entry on the call history record reflects a date and time of 11/06/2006 at 01:12:59.

defendant was prejudiced." <u>Hurst v. State</u>, 18 So. 3d 975, 988 (Fla. 2009). "This prejudice is measured by determining whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. In applying these elements, the evidence must be considered in the context of the entire record." <u>Occhicone v. State</u>, 768 So. 2d 1037, 1041 (Fla. 2000) (internal quotations and citations omitted). In other words, "the defendant must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Mungin v. State</u>, 79 So. 3d 726, 734 (Fla. 2011) (internal quotations omitted).

At trial,[5] Deputy Daniel Genrich testified that while responding to a burglary in progress call, he heard a woman screaming as he approached the residence. (Tr. 304-06) Deputy Genrich testified that he proceeded to the back of the apartment and "heard a male say, quote, I'm going to bash your f[***]ing brains in." (Tr. 308)

At trial, Deputy Michael Nichols testified that while positioned near the front door of the residence, he "heard a male voice say, I'm going to bash your f[***]ing brains out." (Tr. 344-45) Deputy Nichols testified that he then told Deputy Genrich to "come around front." (Tr. 346) Deputy Nichols testified that when he made entry into the residence he saw Defendant "standing above two individuals . . . with his right arm extended holding a pry bar as if he was about to hit one of them." (Tr. 347-48)

At trial, Georgeanna Powell-Posey testified that she had the locks changed on her home after an injunction was entered against her husband, the Defendant. (Tr. 272-73) She testified that on the night of the incident, she came home from work, unlocked the door to her residence, and Defendant "jumped out of the bushes and shoved [her] in the house and closed the door."

---

[5] Exhibit A: Attached are the relevant parts of the trial transcript cited in this Order. Citations using the abbreviation "Tr." refer to this exhibit.

(Tr. 273-74) She testified that he was wearing a mask, and she asked him to leave. (Tr. 274) She said Defendant "rip[ped] the phone out of the wall and shove[d] me . . . ." (Tr. 274) She testified that her son entered the room. (Tr. 275) She said Defendant ordered her and her son, Jamie, to get down on the floor. (Tr. 276) She said Defendant "grabbed me by the jacket and threw and shoved me down." (Tr. 276) She testified that, while holding a crowbar in his hand, Defendant said, "I'm going to bash your brains out. I'm going to kill you, Jamie." (Tr. 277) She testified that she was scared and believed Defendant was going to kill her or her son and she did not see a way to escape. (Tr. 278)

At trial, Jamie Powell testified that "we were in the living room and [Defendant] had a crow bar [sic] in his hand and he was telling us to get down on the floor . . . ." (Tr. 208) He testified that Defendant held the crowbar up and "said he was going to kill us." (Tr. 209) He testified that Defendant "yelled that he was going to beat our brains out . . . ." (Tr. 209)

At the evidentiary hearing[6] held on April 9, 2012, Deputy Nichols testified that the lines on the CAD report beginning with "195" are attributable to him. (Hr'g 62) He testified that the line on the CAD report reading "heard someone talking about blowing their brains out" is "inaccurate." (Hr'g 62) He said, "I can specifically tell you that I did not utter the term blowing their brains out because I specifically heard bashing their brains out. Had I heard blowing their brains out it would have probably cautioned me in a slightly different way, the fact that we were dealing with a firearm, so that would have definitely been something different, something I definitely would have remembered." (Hr'g 63) Deputy Nichols said, in reference to the CAD report, "I can't say that it's verbatim word for word what I said, but I can definitely say the word

---

[6] Exhibit B: Attached are the relevant parts of the April 9, 2012, evidentiary hearing transcript cited in this Order. Citations using the abbreviation "Hr'g" refer to this exhibit.

Page 4 of 11

*blowing* was *bashing.*" (Hr'g 81) (emphasis added) He testified that if he had uttered the word "their" it was a reference to the victims' brains. (Hr'g 81-82)

At the evidentiary hearing held on February 10, 2014, Denise Sledge testified that she was the person who typed the dispatch entry recorded on the CAD report. She said she typed "what I thought I heard." Ms. Sledge testified that she had trouble understanding the radio communications at the time due to problems with reception. She testified that the CAD report is not necessarily an exact quote of what Deputy Nichols said. She testified that the context of the situation, in regard to the word "their," indicates the threat had been made to the victims. Ms. Sledge testified that she did not review any audiotapes pertaining to the radio transmissions, nor did she know if a recording had been made.

At the evidentiary hearing held on February 10, 2014, Victor Everett testified that he has been the communications manager for the Okaloosa County Sheriff's Department for thirteen years. Mr. Everett testified that the recording system used to record radio dispatch calls malfunctioned, and audio recordings taken from March 2006 through April 2008 were destroyed as a result of that equipment failure. Mr. Everett testified that to his knowledge, neither he, nor anyone under his direction, reviewed an audio recording of November 6, 2006. Mr. Everett testified that he could not confirm whether a recording of the radio transmissions existed, or if a recording existed, that it was audible.

### (1) Delayed Disclosure of CAD Report

The record shows that the State provided the CAD report to trial counsel on October 10, 2007,[7] approximately seven months before the beginning of Defendant's trial on May 5, 2008. The Court notes that the CAD report is short; it consists of approximately two and a half pages of

---

[7] Exhibit C: Amended Discovery Exhibit, certifying that the call history record was provided to defense counsel on October 10, 2007.

printed material. Defense counsel had nearly seven months to examine the CAD report. Consequently, Defendant's allegation that a Brady violation exists is not well-taken in light of the length of time before trial that defense counsel had access to the CAD report.

Moreover, the Court finds the testimony given by Deputy Nichols and Ms. Sledge credible. Consequently, when examined in the context of the entire record, the CAD report has little value, if any, to Defendant. It is not a transcription of Defendant's words; it reflects the words Ms. Sledge *thought* she heard Deputy Nichols say. Deputy Nichols testified that the male voice he heard had threatened the victims, which is also reflected on the addendum of probable cause filed with the arrest report.[8] The Court finds that the CAD report is not exculpatory evidence, and any potential impeachment value of the CAD report diminishes when examined in the context of Ms. Sledge's testimony concerning the poor radio transmission quality, Deputy Nichols's testimony at the evidentiary hearing, and the trial testimony given by Deputy Genrich, Deputy Nichols, and the victims.

Further, although it is not necessary for Defendant to prove that the State willfully delayed providing the report, there has been no showing that the State willfully suppressed it; any delay was inadvertent.

Finally, the State introduced evidence at trial showing that Defendant wore a mask, possessed a crowbar, stun gun, and switchblade knife during the incident.[9] The jury did not need to find that Defendant threatened the victims with words in order to find guilt; Defendant's actions were sufficient to support the jury's verdict. Even if Defendant had threatened to bash or blow his *own* brains out, the jury verdict is supported by the evidence that Defendant wore a mask, possessed weapons, entered or remained in the residence unlawfully, ordered the victims

---

[8] Exhibit D: Addendum of probable cause
[9] See Exhibit A, pages 355-70.

to the floor, pushed Ms. Powell-Posey to the floor, and confined the victims while wielding a crowbar over them.[10]

Therefore, after considering the testimony given by Deputy Nichols and Ms. Sledge at the evidentiary hearings, as well as the overwhelming evidence of guilt presented at trial, the Court finds that the CAD report could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. There is no reasonable probability that, had the CAD report been disclosed earlier, the outcome of the trial would have been different. Therefore, this claim is denied.

### (2) Failure to Disclose Audio Recordings

The Court finds the testimony of Deputy Nichols, Ms. Sledge, and Mr. Everett credible. The State admits that no audio recordings relating to the CAD report were provided to Defendant. Both Ms. Sledge and Mr. Everett testified that they had not reviewed any audio recordings pertaining to the radio transmissions at issue. Defendant presented no evidence showing an audible recording was ever made of the radio transmissions. Consequently, Defendant has failed to show the basic foundation necessary to support his claim: i.e., the existence of audio recordings pertaining to the radio dispatch call in his case.[11]

Nevertheless, even assuming audible recordings of the radio transmissions existed and were in the State's possession, the Court finds no Brady violation exists. Similar to the printed CAD report discussed above, an audio recording of dispatch communications would not contain Defendant's voice, but rather, the voice of law enforcement. Like the CAD report, any recording of the radio communications would have limited impeachment value, at best, when examined in the context of the entire record in this case.

---

[10] Exhibit E: Jury verdict form and jury instructions (in relevant part)
[11] See Beasley v. State, 18 So.3d 473, 488 (Fla. 2009).

Further, there has been no showing that the State willfully suppressed or destroyed any audio recordings in this case. Assuming, but not finding, that a recording existed, the Court concludes that any failure to disclose a recording of the radio communications was not willful, but rather, a result of the equipment failure testified to by Mr. Everett.

Moreover, as explained above in the analysis regarding the CAD report, apart from evidence concerning Defendant's verbal threat, there was sufficient other evidence introduced at trial to support the jury's verdict. Consequently, after considering the overwhelming evidence of guilt presented at trial, as well as the testimony given by Deputy Nichols, Ms. Sledge, and Mr. Everett at the evidentiary hearings, the Court finds that an audio recording of the dispatch communications could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. There is no reasonable probability that, had an audio recording of the dispatch communications been disclosed to the defense, the outcome of the trial would have been different. Therefore, this claim is denied.

### Ineffective Assistance of Counsel

Defendant alleges that counsel was ineffective for failing to investigate the CAD report and use it during cross examination of witnesses because the CAD report would have cast doubt on the State's theory of events by showing that Defendant had threatened to harm himself, not the victims. The CAD report entry at issue reads as follows: "195-239 come around the front, heard someone talking about blowing their brains out."

To be successful on an ineffective assistance of counsel claim, a defendant must demonstrate that counsel's performance was both (1) deficient and (2) prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694. However, "strategic decisions do not constitute

ineffective assistance of counsel if alternative courses have been considered and rejected and

counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State,

768 So. 2d 1037, 1048 (Fla. 2000). "[T]he fact that counsel's strategy was unsuccessful does not

result in the conclusion that the representation was inadequate." State v. Freeman, 796 So. 2d

574, 576 (Fla. 2d DCA 2001).

At the evidentiary hearing held on April 9, 2012, Defendant's trial counsel, Bruce Miller,

testified. Mr. Miller testified that his opinion was that the CAD report would not have caused the

jury to believe the State witnesses were lying or that Defendant had threatened to kill himself.

(Hr'g 44-45) He said, "[A]s a defense counsel one of my rules of thumb is you don't help the

state make their case . . . ." (Hr'g 18) He testified that "this whole case was about anger." (Hr'g

18) He testified that "the trial is about somebody who's angry who is going into a house carrying

a crowbar and I don't know how many times you want to bring that whole scenario up in front of

the jury." (Hr'g 24) Mr. Miller testified that the defense "wanted to get [the State's] witnesses off

of the stand as quickly as possible 'cause there's such a thing as asking too many questions and

helping the state and I did not want to do that." (Hr'g 44) Mr. Miller said, "[M]y strategy was—

we had two officers testify to almost identical facts. I wanted to get what I could, have them sit

down and move on." (Hr'g 48) He said, "[W]e certainly tried to minimize what the officers were

saying in terms of bash and blowing . . . ." (Hr'g 50)

As previously articulated, Deputy Nichols testified at the April 9, 2012, evidentiary

hearing. Deputy Nichols testified that the line on the CAD report reading "heard someone talking

about blowing their brains out" is "inaccurate." (Hr'g 62) He said, "I can specifically tell you

that I did not utter the term blowing their brains out because I specifically heard bashing their

brains out. Had I heard blowing their brains out it would have probably cautioned me in a

slightly different way, the fact that we were dealing with a firearm, so that would have definitely

been something different, something I definitely would have remembered." (Hr'g 63)

The Court finds the testimony of Mr. Miller and Deputy Nichols credible. The Court

finds that counsel made an informed and reasoned decision not to incorporate the CAD report

into the defense strategy. Although the wording of the CAD report differs from the testimony

given at trial, the jury could have interpreted the word "their" on the CAD report as additional

evidence showing that Defendant had threatened to harm the victims. Counsel's decision to

avoid drawing more attention to the emotional, anger-driven words attributable to Defendant was

a well-reasoned tactical decision, especially considering the limited value of the language

contained in the CAD report. Moreover, based on the evidence introduced at trial and testimony

given at the evidentiary hearing, there is no reasonable probability that the outcome of the trial

would have been different had counsel used the CAD report during cross examination or

otherwise made the report's content available to the jury. Accordingly, this claim is denied.

Therefore, it is **ORDERED AND ADJUDGED** that Defendant's "Motion for Post

Conviction Relief" is **DENIED**.

Defendant has the right to appeal within 30 days of the rendition of this order.

**DONE AND ORDERED** in Fort Walton Beach, Okaloosa County, Florida, on this

26 day of _Feb_ , 2014.

WILLIAM F. STONE
WILLIAM F. STONE
CIRCUIT JUDGE

WFS/eeb

<u>CLERK'S CERTIFICATE OF SERVICE</u>

I hereby certify a true copy of the foregoing has been furnished to the following this
_27_ day of _Feb_, 2014.

Office of the State Attorney
Courthouse Mailbox

David Russell Posey, DC# 218253
Blackwater River Correctional Facility
5914 Jeff Ates Road
Milton, Florida 32583-0000

DON W. HOWARD
CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk