**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DAVID RUSSELL POSEY,**

     **Petitioner,**

**v.**                       **Case No. 3:15cv452-MCR/CAS**

**SCOTT MIDDLEBROOKS,**

     **Warden,**

**and**

**FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY,**

     **Respondents.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 15, 2015, Petitioner David Russell Posey, proceeding pro

se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

ECF No. 1.   He filed an amended § 2254 petition on March 9, 2016.   ECF

No. 13.   On May 25, 2016, Respondent filed an answer, ECF No. 22, and

exhibits, ECF No. 23.   Petitioner filed a reply on or about September 29,

2016.   ECF No. 33.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).   After careful consideration

of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

<u>**Background and Procedural History**</u>

By information filed November 27, 2006, in case number 2006-CF-2901, the State of Florida charged Petitioner Posey with five counts in connection with events that took place on or about November 6, 2006:   (1) burglary of a dwelling while armed, a first degree felony punishable by life in prison, in violation of sections 810.02(1)(b) and (2)(b), Florida Statutes; (2) false imprisonment, a third degree felony, in violation of section 787.02, Florida Statutes; (3) aggravated assault by threat, a third degree felony, in violation of section 784.021(1)(a); (4) possession of a weapon during the commission of a felony (prior conviction), a first degree felony, in violation of section 790.07(4), Florida Statutes; and (5) violation of an injunction for protection against domestic violence, a first degree misdemeanor, in

violation of section 741.31, Florida Statutes.   Ex. B at 5-6.[1]  In an order

rendered December 13, 2006, the state trial court adjudged Posey

incompetent to proceed due to mental illness as defined in section

916.106(11), Florida Statutes, stayed further proceedings, and committed

him to the Florida Department of Children and Families as provided in

section 916.13(1), Florida Statutes.   *Id.* at 23-27.   In July 2007, the

professional staff at the Florida State Hospital determined Posey was

competent to proceed and no longer met criteria for involuntary

commitment.   *Id.* at 40-61.   In August 2007, Posey was discharged from

the Florida State Hospital and transferred to the Okaloosa County Jail.   *Id.*

at 66.

Thereafter, the State amended the charging information several

times.   *See* Ex. C at 279-80, 283-84, 285-86, 287-88.   The State

ultimately charged Posey with three counts:   (1) burglary of a dwelling

while armed with a dangerous weapon, a first degree felony punishable by

life in prison, in violation of sections 810.02(1)(b) and (2)(b), Florida

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits, ECF No. 23, submitted with Respondent's answer, ECF No. 22.

Page **4** of **91**


Statutes; (2) armed kidnapping with a weapon, a life felony, in violation of

sections 787.01(1)(a) and 775.087, Florida Statutes; and (3) aggravated

assault by threat, a third degree felony, in violation of section

784.021(1)(a), Florida Statutes.   *Id.* at 289-90.   He proceeded to a jury

trial in May 2008, during which he testified.   Exs. E, F, G, H (trial

transcript); Ex. G at 515-78.   On May 8, 2008, the jury returned a verdict

finding Posey guilty, on Count 1, of the lesser included offense of burglary

of a dwelling, and guilty on Counts 2 and 3 as charged.   Ex. C at 380; Ex.

H at 716-19.   The judge adjudicated him guilty and sentenced him to life in

prison on Count 2, fifteen (15) years in prison on Count 1, and five (5)

years in prison on Count 3, with all sentences to run consecutively.   Ex. D

at 468-73.

Posey appealed his judgment and sentence to the First District Court

of Appeal (First DCA), assigned case number 1D08-3116.   *Id.* at 478; *see*

Exs. J (Initial Brief), K (Answer Brief), L (Reply Brief).   The Initial Brief

presented two points on appeal.   Ex. J at i.   The First DCA per curiam

affirmed the case without a written opinion on February 19, 2010, and

denied rehearing by order on March 19, 2010.   Ex. M; Posey v. State, 29

Case No. 3:15cv452-MCR/CAS

So. 3d 1123 (Fla. 1st DCA 2010) (table).

On March 2, 2010, Posey filed a motion to reduce his sentence pursuant to Florida Rule of Criminal Procedure 3.800(c).   Ex. "Insert" (following Ex. N) at 1-5.   By order rendered March 12, 2010, the state trial court denied the motion because Posey filed it pro se while represented by counsel.   *Id.* at 6-7.   A "Motion to Revisit and Rule on Reduction and Modification of Sentence" was filed on April 28, 2010.   *Id.* at 9-10.   By order rendered May 12, 2010, the trial court denied that motion, finding Posey's sentence "appropriate."   *Id.* at 11.

On or about May 4, 2010, Posey filed a Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).   *Id.* at 12-14.   By order rendered May 12, 2010, the state trial court denied that motion, finding Posey's claims not cognizable in a Rule 3.800(a) motion. *Id.* at 15-16.   Posey filed a motion for rehearing, *id.* at 17-30; however, the state court does not appear to have ruled on that motion, *see* ECF No. 22 at 3.

On May 21, 2010, Posey filed a "Motion of Fraud Upon the Court." Ex. P at 1-10.   The state trial court considered the motion as one filed

under Rule 3.850 and directed the State to respond.   *Id.* at 11-12.   In a

separate order rendered two days later, on June 10, 2010, the court

explained that Posey had filed 18 post-conviction motions since October 7,

2009, and directed Posey to prepare and file all post-conviction motions

within 60 days, so that the court could regulate its docket and the State

could adequately respond.   *Id.* at 13-14.

Thereafter, Posey filed a Motion for Rehearing, Ex. S at 1-18, and a

"Motion to Amend, Motion for Rehearing," *id.* at 19-27.   On August 8,

2010, he filed a motion for post-conviction relief.   *Id.* at 68-200, Ex. T at

201-25.   He also filed a supplemental memorandum, Ex. T at 255-61, and

a Reply to State's Partial Response, *id.* at 291-314.   On November 8,

2010, the State filed a response to all Posey's filings.   Ex. U at 315-29

(exclusive of attachments, contained in remainder of Ex. U as well as Exs.

V and W)).

In a non-final order rendered December 16, 2010, the state trial court

explained Posey had raised 34 grounds, considered all of them as a single

post-conviction motion, and summarily denied all the grounds except for

Ground 26, on which the court granted an evidentiary hearing.   Ex. X at

917-26.   The court also appointed counsel for Posey.   *Id.* at 926.

Through post-conviction counsel, Posey amended his Rule 3.850 motion to include a claim under Brady v. Maryland, 373 U.S. 83 (1963). Ex. X at 1010-23.   The State filed a response.   *Id.* at 1032-34.

The evidentiary hearing took place on April 9, 2012.   Ex. Z at 1205-1324.   During the hearing, defense counsel, the prosecutor, and the court were made aware of a domestic violence injunction proceeding initiated by Posey's (then) wife in Okaloosa County, case number 2006 DR 4182, in which Posey filed a pro se petition in February 2012 claiming he was mentally impaired, incompetent, and a vulnerable adult with brain damage. Ex. X at 1106.   Defense counsel made an ore tenus motion to stay the evidentiary hearing proceedings until Posey could be evaluated to confirm his competence to proceed with the hearing.   *Id.*   The court granted the motion "in the abundance of caution."   *Id.* at 1106-07.

The hearing resumed February 10, 2014.   *See* Ex. AA at 1407. Prior to the hearing, Posey filed a motion to discharge counsel and, at the beginning of the hearing, the court inquired into the matter and discharged counsel according to Posey's desire.   *Id.* at n.2.   On February 26, 2014,

the court rendered a final order denying post-conviction relief.   Ex. AA at

1407-17.   Posey appealed and filed a pro se brief, assigned case number

1D14-1156.   Ex. DD at 1-32.   The State did not file an answer brief.   *See*

Ex. DD at 33-35.   On January 6, 2015, the First DCA per curiam affirmed

the case without a written opinion; the mandate issued February 3, 2015.

Ex. EE; Posey v. State, 156 So. 3d 1082 (Fla. 1st DCA 2015).

 During the pendency of the post-conviction proceedings in the state

trial and appellate courts, Posey filed other actions in the state court as

detailed in the Response.   *See* ECF No. 22 at 5-7.   As indicated above,

Posey filed a § 2254 petition in this Court on October 15, 2015.   ECF

No. 1.   He filed an amended § 2254 petition on March 9, 2016, ECF No.

13, and raises 19 grounds, including several claims alleging ineffective

assistance of counsel (IAC):

 (1) **Trial Court Error**:   "The lower court erred in denying
 Petitioner's motion for judgment of acquittal on Counts (1)
 and (3), burglary with intent to kidnap and kidnapping."   *Id.*
 at 2.

 (2) **IAC**:   "Trial counsel was ineffective for not attending an
 adversarial competency examination of the Petitioner which
 was a critical stage of the proceeding even after being
 requested to do so by Petitioner to either be present to
 protect this Petitioner's legal interest or with leave of the

court to videotape the competency evaluation to preserve
the matters that transpired at the evaluation."   *Id.* at 7.

(3) **Trial Court Error**:   "The court erred by not moving sua
sponte for a competency h[e]aring after the presiding judge
expressed concerns that the petitioner was possibl[y] not
sane."   *Id.* at 10.

(4) **Trial Court Error**:   "The court erred by proceeding against
the Petitioner they knew or should have known had a
subnormal IQ and did not understand the proceedings
against him."   *Id.* at 11.

(5) **Trial Court Error**:   "The State wrongfully charged the
Petitioner under the kidnapping statute, § 787.01(1)(A) F.S.
when Petitioner should have been charged under false
imprisonment statute § 787.02, F.S."   *Id.* at 13.

(6) **IAC**:   "Trial counsel was ineffective for failing to call a crime
scene reconstruction expert after being requested to do so
by Petitioner."   *Id.* at 14.

(7) **IAC**:   "Counsel provided constitutionally deficient
performance by opening the door for the [St]ate to argue the
domestic violence injunction after counsel had severed the
injunction out of the concerns that it would be prejudicial
towards the Petitioner at trial."   *Id.* at 17.

(8) **IAC**:   "Counsel's performance was constitutionally deficient
where counsel abandoned the Petitioner's insanity defense."
*Id.* at 19.

(9) **IAC**:   "Counsel provided constitutionally deficient
performance by not motioning the court for a jury view of
the alleged crime scene where there was substantial
testimony that because of the layout of the alleged crime

scene it would have been virtually impossible for the two arresting officers to have been eyewitnesses to the alleged crime."  *Id*. at 21.

(10) **IAC**:  "Counsel was constitutionally deficient by not investigating radio transmission history report."  *Id*. at 23.

(11) **Trial Court Error**:  "The State withheld exculpatory evidence where the chain of custody records would have revealed that this evidence had been tampered with and as such this act by the State did deprive the Petitioner of a viable defense which would have result[ed] in a different outcome at trial."  *Id*. at 24.

(12) **Trial Court Error**:  "The state trial judge prejudiced the Petitioner by twice making a comment as related to the mask exhibit."  *Id*. at 26.

(13) **Trial Court Error**:  "Petitioner's constitutional rights [to] due process of law, equal protection, Fifth and Fourteenth Amendment rights on the United States Constitution, legislative intent for the Florida Statutes section 415, and the Americans with Disabilities Act were violated by Respondents not superintending a court order by the state trial court of the Fourteenth Judicial Circuit, specifically condition number fourteen of Posey's probation order."  *Id*. at 28.

(14) **Trial Court Error**:  "Petitioner's Fourth, Fifth, Sixth and Fourteenth Amendment rights guaranteed under the United States Constitution were violated by the Okaloosa County Sheriff's Department, et al, of the First Judicial Circuit of the State of Florida, and Shalimar, in case number 2006-2901. The constitutional violation by Okaloosa County Sheriff's Department did change the outcome of Petitioner's trial." *Id*. at 30.  Petitioner asserts this ground concerns (a) phone

calls, (b) seizure of his legal work product, (c) destruction of exculpatory <u>Brady</u> material, and (d) missing evidence.   *Id.* at 30-34.

(15) **Trial Court Error – Double Jeopardy**:   "The State of Florida violated Petitioner's [rights under the] 5th and 14th Amendments of the United States Constitution, in that it placed the Petitioner in Double Jeopardy several different ways."   *Id.* at 35.   Petitioner asserts four double jeopardy violations: (a) convictions for kidnapping and burglary with intent to kidnap; (b) "assault conviction and sentence count (3)"; (c) convictions and sentences on count (2) and (3) where "the verdict form returned contains no indication as to whether the jury found Petitioner had committed a burglary with kidnapping or assault, given Petitioner's additional convictions for kidnapping and assault, the determination of burglary with kidnapping or assault by sentencing judge would have been necessary so as to not run afoul of the double jeopardy issue"; and (d) Petitioner was already punished for violating the injunction imposed October 13, 2006, so he could not be subsequently prosecuted for those felonies (kidnapping, burglary, and assault).   *Id.* at 35-36.

(16) **Trial Court Error**:   "The court erred by denying Petitioner's ground that you cannot burglarize you[r] own home[, resulting in] a miscarriage of justice."   *Id.* at 36.

(17) **Trial Court Error or IAC**:   "The State violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) when it failed to provide defense counsel with a copy of said CAD report/audio recordings, or in the alternative, defense counsel rendered ineffective assistance of counsel for failing to properly impeach the state witness."   *Id.* at 38.

(18) **Trial Court Error**:   "The trial court committed reversible error when it summarily denied certain post conviction

claims without an evidentiary hearing or attaching portions
of the record conclusively demonstrating that he was
entitled to relief."   *Id*. at 41.

(19) **IAC**:   "Counsel provided constitutionally deficient
performance by misadvising Petitioner to plea not guilty to
all charges while incompetent."   *Id*. at 46.

Respondent filed an answer, with exhibits.   ECF Nos. 22 (Answer), 23

(Exhibits, filed under seal).   Posey has filed a reply.   ECF No. 33.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not
be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of
the claim –

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d).    *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).    "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"    Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."    *Id.*

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.    This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.    Second, the defendant must show that the deficient performance prejudiced the defense.    This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).    To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."    *Id.* at 688.    To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*   For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"   <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).   "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*   It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

**<u>Ground 1</u>:   Trial Court Error – Denial of Judgment of Acquittal**

In his first ground, Petitioner Posey argues the state trial court erred in denying the defense motion for a judgment of acquittal (JOA) on Counts 1 and 3.   ECF No. 13 at 2.   Respondent answers this ground, raised for the first time in the amended § 2254 petition, is untimely and does not relate back to the original § 2254 petition.   ECF No. 22 at 12.

Respondent further asserts Posey did not present, in his direct appeal or in the state trial court, a federal claim concerning the sufficiency of the evidence and, therefore, this ground is procedurally barred.    *Id.* at 13.

As Respondent indicates, even assuming this ground is timely raised, it is procedurally barred.    Posey did not present a federal claim concerning the sufficiency of the evidence to the state trial court or the state appellate court in his direct appeal, and he cannot now return to state court to raise this claim.    *See* Ex. G at 471-78, 579, 599-600, Ex. H at 602-08 (JOA motions in trial); Ex. J at I, 33-37 (no federal law cited in initial brief on direct appeal); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("[I]f state court remedies are no longer available, . . . those remedies are technically exhausted, . . . but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court; instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.").    *See also, e.g.*, McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) ("McNair's references to federal law in his state

habeas proceedings are exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement."); <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."); <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010) (explaining "[a] federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation" or if fundamental miscarriage of justice exists because "'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986))). Petitioner has not demonstrated cause and prejudice for the default.

Moreover, even assuming Posey has presented and exhausted this as a federal claim, or shown cause and prejudice for any default, the ground lacks merit.   The State presented sufficient evidence and testimony, viewed in a light most favorable to the prosecution, such that the jury could have found him guilty beyond a reasonable doubt.   *See, e.g.,*

Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001) (explaining that, in federal habeas review of sufficiency of state evidence, "[t]he question we ask is very limited: whether after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt" and "[a]lthough each element of the offense but be established beyond a reasonable doubt . . . the State is not required to rule out every hypothesis except that of the guilt of the defendant" and, further, "federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence"); U.S. v. Herrera, 931 F.2d 761, 763 (11th Cir. 1991) ("It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.").

In particular, the record reflects that, in his direct appeal, Posey challenged the denial of JOA on only Counts 1 and 2, not Count 3.   Thus, it appears that in his § 2254 petition, rather than challenging the denial of JOA on Counts 1 and 3, Posey actually challenges the denial of JOA on Counts 1 and 2; indeed, his arguments address the sufficiency of the

evidence to support kidnapping, which is the charge in Count 2 and one of the possible bases of the burglary charge in Count 1.   ECF No. 13 at 2-7; Ex. C at 289-90.

The evidence presented at trial showed Posey entered without permission the apartment occupied by Georgianna Powell-Posey (his estranged wife) and her 16-year-old son, Jamie Powell (Posey's step-son), about 1:00 a.m. on November 6, 2006.   In particular, Jamie testified he had changed the locks on the apartment after Posey moved out; he further testified there was a court order in place prohibiting Posey from coming near Jamie and his mother.   Ex. E at 199; Ex. F at 240.   Jamie testified he was home alone and heard a clicking noise at the back sliding glass door but, when he went to check it, he did not see anything.   Ex. E at 198-200; Ex. F at 202.   After Jamie returned to his room, he heard more noises, this time coming from the front door.   Ex. F at 202-03.   He checked the front door twice and the second time, through the peephole, he saw Posey.   *Id.* Jamie testified Posey was wearing a stocking over his head.   *Id.* at 202-04. Jamie testified he was scared and called 911; the 911 call was played for the jury.   *Id.* at 204.   He then heard the door unlocking and heard his mother screaming.   *Id.* at 207.

Georgianna testified that Posey jumped out of the bushes next to the apartment as she was returning home and unlocking the door.    *Id.* at 273-74.    She testified that she had the locks changed after the injunction was in place and only she and Jamie had keys.    *Id.* at 272-73.    Georgianna testified that Posey shoved her in the house and closed the door.    *Id.* at 273-74.    She testified Posey had "some type of mask over his head."    *Id.* at 274.    She testified she asked him to please leave, but he went into the kitchen and ripped the phone out of the wall; he shoved her into the living room area.    *Id.*; *see id.* at 207.    She testified she had not invited Posey into her home.    *Id.* at 298.    Jamie came out of his room and told them he had called the police.    *Id.* at 207, 275-76.    Posey had a crowbar in his hand and appeared angry.    *Id.* at 276-77.    Posey told Jamie and his mother to get on the ground; Jamie got down and Posey grabbed Georgianna by the jack and "threw and shoved [her] down."    *Id.* at 208, 210, 276-77.

When Jamie told Posey he had called the police, Posey responded that Jamie should not have done that and he would kill him.    *Id.* at 208-09.    Posey told them he would bash their brains out.    *Id.* at 209, 276-77, 345.    Both Jamie and Georgianna testified they were scared and believed Posey

would kill them.    *Id.* at 204, 209, 278.    Jamie testified that Posey was

holding the crowbar and "had it in his hand and he raised up when he said

he was going to kill us."    *Id.* at 209.    Georgianna testified she did not see

a way to get away from Posey and she "kept looking for a way in [her]

mind."    *Id.* at 278.    She kept telling Posey to leave; Jamie also told Posey

to leave.    *Id.* at 278, 300.    Posey also said he would kill Jamie's

grandmother as he knew where she lived.    *Id.* at 211.    Posey said

Georgianna was coming with him and then Posey began to drag her out of

the back door by her neck and collar.    *Id.* at 209.    Jamie testified Posey

"yelled that he was going to beat our brains out because she [Georgianna]

wouldn't go and then the cops came in."    *Id.* at 209.

Deputy Daniel Genrich testified that as he approached the apartment,

he heard a woman screaming and he called for a backup officer because

he "was in fear that somebody might be getting hurt."    *Id.* at 306-07.

Deputy Nichols arrived shortly thereafter; Deputy Nichols went to the front

door and Deputy Genrich went to the back door.    *Id.* at 307-08.    Deputy

Genrich testified, "While I was in back I heard a male say, quote, I'm going

to bash your fucking brains in."    *Id.* at 308.    He heard a woman scream

again.    *Id.*    Deputy Nichols testified he "heard a male voice say, I'm going

to bash your fucking brains out." *Id.* at 345.   He also heard a woman

scream.   *Id.*   Both deputies decided to go in because they feared

someone was in imminent danger.   *Id.* at 309, 346-47.   As they entered,

Deputy Genrich observed a male and female on the floor as well as "a male

standing over the two, dressed in all camouflage wearing a mask, gloves"

and "[h]e had his right arm raised while he was over the two."   *Id.* at 310.

Deputy Nichols also observed Posey "standing above two individuals in full

camouflage with his right arm extended holding a pry bar as if he was

about to hit one of them."   *Id.* at 348.   Posey fled out the back door; the

deputies apprehended him in the back yard.   *Id.* at 313, 351-52.   Posey

had a crowbar "wedge[d] down between the sleeve of his coat."   *Id.* at 315.

Posey also had a stun gun and a large switchblade knife on his person.

*Id.* at 323, 360.   Deputy Genrich took a statement from Georgianna and

observed she had redness on her arm and neck.   *Id.* at 326.   Deputy

Nichols also observed red marks around Georgianna's neck and testified

both Georgianna and Jamie were very upset.   *Id.* at 353.

Count 1 charged Posey with burglary of a dwelling while armed with a

dangerous weapon, in violation of section 810.02(1)(b) and (2)(b), Florida

Statutes (2006).   That statute provides:

(b)   For offenses committed after July 1, 2001, "burglary means:

    1.   Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or

    2.   Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:

    a.   Surreptitiously, with the intent to commit an offense therein;

    b.   After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or

    c.   To commit or attempt to commit a forcible felony, as defined in s. 776.08.

        . . . .

(2)   Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:

        . . . .
(b) Is or becomes armed within the dwelling, structure, or conveyance, with explosives or a dangerous weapon[.]

§ 810.02(1)-(2), Fla. Stat. (2006).   From the evidence set forth above, the

jury could reasonably conclude Posey committed burglary of a dwelling

while armed with a dangerous weapon as he entered the house with the

intent to commit an offense therein.   He possessed three weapons, he

threatened to kill the victims, the victims saw the crowbar, and Posey

started dragging Georgianna out the back door.

Count 2 charged Posey with armed kidnapping with a weapon, to wit

a crowbar and/or a knife and/or a stun gun, in violation of sections

787.01(1)(a) and 775.087, Florida Statutes (2006).   Section 787.01(1)(a)

provides:

> The term "kidnapping" means forcibly, secretly, or by threat
> confining, abducting, or imprisoning another person against her
> or his will and without lawful authority, with intent to:
>
> 1.  Hold for ransom or reward or as a shield or hostage.
>
> 2.  Commit or facilitate commission of any felony.
>
> 3.  Inflict bodily harm upon or to terrorize the victim or another
>     person.
>
> 4.  Interfere with the performance of any governmental or
>     political function.

Section 775.087(1), Florida Statutes (2006), provides that "whenever a

person is charged with a felony . . . and during the commission of such

felony the defendant carries, displays, uses, threatens to use, or attempts

to use any weapon . . ., the felony for which the person is charged shall be

reclassified" to the next higher offense level.   From the evidence set forth

above, the jury could reasonably conclude Posey committed armed kidnapping with a dangerous weapon as he ordered the victims to lie down, he brandished a crowbar, he threatened to kill them, Georgianna did not feel she had a way out, and Posey began dragging her out the door.

Petitioner Posey has not shown that, if considered on the merits, the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 2</u>:   IAC – Not Attending Competency Examination

In his second ground, Petitioner Posey argues defense counsel provided ineffective assistance by not attending his competency examination, after Posey requested him to do so, or moving to have the examination videotaped.   ECF No. 13 at 7.   Posey raised this as the second ground in his Rule 3.850 motion.   Ex. S at 73-77.   The state court summarily denied the claim (as Ground 18), finding that "Defendant has failed to allege how his attorney's lack of attendance, which is not mandatory, at his competency evaluation prejudiced his case."   Ex. X at 922.   On appeal, the First DCA affirmed without a written opinion.   This

constitutes a ruling on the merits and is entitled to AEDPA deference.   *See*
28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 98-100 (2011).

The record supports the state post-conviction court's findings.
Notably, the Florida Rules of Criminal Procedure permit, but do not require,
attorneys to be present at a competency examination.   *See* Fla. R. Crim.
P. 3.210(b) (providing, in pertinent part, "[a]ttorneys for the state and the
defendant may be present at any examination ordered by the court").
Even assuming defense counsel's lack of attendance at Posey's
competency examination constituted deficient performance, Posey did not
allege how such lack of attendance resulted in prejudice, as the state court
found.   *See* Ex. S at 73-77.   Moreover, as Respondent explains, Posey
was found incompetent to proceed in December 2006, and in July 2007,
the Department of Children and Families notified the trial court that Posey
had regained competency.   Ex. B at 23-27, 40-41.   Three evaluations –
one in mid-July 2007, one in January 2008, and one in February 2008 –
found him competent to proceed.   Ex. U at 442-55 (July 2007), 428-33
(January 2008), and 434-39 (February 2008).

The evaluation Posey references in his petition is the one from
February 2008 by Dr. Gilgun.   *See* ECF No. 13 at 8-9.   Dr. Gilgun testified

at the competency hearing held February 26, 2008, during which Posey was represented by counsel.   Ex. D at 520-31.   Dr. Gilgun testified at the hearing that, after reviewing records and examining Posey, he determined Posey was competent to proceed.   *Id.* at 521-22.   Defense counsel cross-examined Dr. Gilgun.   *Id.* at 523-27.   At the conclusion of the hearing, the court found Posey competent based on Dr. Gilgun's testimony and the report from the Florida State Hospital.   *Id.* at 530.

Petitioner Posey has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## Ground 3:   Trial Court Error – No Sua Sponte Competency Hearing

In his third ground, Petitioner Posey argues the state trial court erred in not moving sua sponte for a competency hearing after the judge expressed concerns that Posey was possibly not sane.   ECF No. 13 at 10. In particular, Posey asserts the presiding judge stated, during a jury recess on May 6, 2008, "I think it would be prudent in this case to . . . put on evidence that the gentleman is sane."   *Id.*

In the answer, Respondents' counsel indicates he could not locate this statement by the state court in the record and "Respondents do not agree the court made such observation, but will assume it did in order to answer." ECF No. 22 at 16. Respondents then argue this issue is one for direct appeal, but Posey did not raise it on direct appeal; therefore, it is procedurally barred. *Id.* at 16-17. Addressing the merits, "Respondents adopt the State's argument on direct appeal." *Id.* at 18. In particular, Respondents note the State argued, in its answer brief, the denial of a continuance solely for Posey to obtain another competency evaluation did not transgress <u>Drope v. Missouri</u>, 420 U.S. 162 (1975). *Id.*

A review of the trial transcript, specifically the transcript for May 6, 2008, reflects that at the start of proceedings that day, before the jury was brought in, discussion took place on the record regarding the insanity defense:

> MS. MAW [prosecutor]: Judge, yesterday there was a discussion about the insanity defense. We did not instruct the jury on the insanity defense because it wasn't clear whether or not there was going to be an insanity defense. But now it's my understanding from Mr. Miller [defense counsel] that there is not going to be an insanity defense. Am I correct in that?
>
> MR. MILLER: Well, we have discussed our various available defenses in this case. I spoke about it with Mr. Posey both yesterday after court and this morning and we have elected to

proceed without trying to utilize the insanity defense.

THE COURT:   All right.

MS. MAW:   Okay.   I think in that vein we need to clarify the record.   We've discussed this in chambers previously.   I think hanging out there for the appellate court at this point in time are two evaluations by two doctors that indicate that Mr. Posey was insane.

Now we have heard from the Defense Attorney, and I'm not sure if this is on the record, that they have both indicated they will recant and they do not support that finding at this point in time.   To clarify that for the record I would have a proffer for the Court that Dr. DeMoya has indicated he will not maintain his position that Mr. Posey was insane at the time of the offense.   I would put his deposition into evidence.

MR. MILLER:   I'm going to object to that.   I don't know what the relevance of it is.   If we're talking about the issue of competency and there being only one evaluation, competence is not a substantive defense.   It has to do with Mr. Posey, if he can proceed to trial, understand what's going on, has the ability to help his Defense Counsel.   It has nothing to do with the defense.

Ex. F at 249-51.   The judge then inquired regarding Posey's consultation

and agreement with defense counsel not to assert an insanity defense, and

during this inquiry, the judge made the statements focused on by Posey in

his habeas claim:

THE COURT:   All right.   Let's start off.   Mr. Posey, I'm going to ask you a couple of quick questions.   I will not ask you anything that deals with guilt or innocence.   Raise your right hand.   Do you solemnly swear or affirm the statements you

make to me are true and correct?

THE DEFENDANT:   Can I stand up, your Honor?

THE COURT:   Yes.

THE DEFENDANT:   Yes, sir.

THE COURT:   Do you concur with Mr. Miller's statement that you have discussed with him the insanity defense and you together, based on his advice, you have elected with your attorney not to utilize that as a defense in this case?

THE DEFENDANT:   At this point in time I am proceeding at the advice of my Counsel and do what he says.

THE COURT:   He said you're not going to use the insanity defense; is that correct?

THE DEFENDANT:   I'm proceeding on what he asked me to do, your Honor.   I'm going at his advice.

MS. GORDON:   Judge, that is not an acceptable answer for purposes of the record on appeal on a 3850 response.

THE DEFENDANT:   We're not at appeal, your Honor.   We're at trial and I'm trying to get the truth out in the situation.

THE COURT:   Well, I think –

THE DEFENDANT:   She's trying to conserve things for the record that we haven't even covered yet, your Honor.   She's testifying for Dr. DeMoya –

THE COURT:   <u>I think it would be prudent in this case to call a psychologist or psychiatrist to put on evidence that the gentleman is sane.</u>

MR. MILLER:   Judge, unless we raise it in our defense, then it would be irrelevant.

THE COURT:   Well, if you do not want to raise it, then you have to affirmatively waive it.   That has to include both you and Mr. Posey.

MR. MILLER:   Judge, I have spoke about this issue with Mr. Posey.   Without divulging the content of our conversation, it's my understanding that he has agreed in his best interest to proceed without the insanity defense.

THE COURT:   Well, I need him to say that.

THE DEFENDANT:   She can't proffer testimony, your Honor, that's not even been said yet and that's what she's doing, saying what Dr. DeMoya would say.

THE COURT:   I don't want this case to come back.   In the event the jury should convict you, I don't want you to come back later and say your lawyer refused to raise the insanity defense and you requested it.

THE DEFENDANT:   I can't be put on that spot, your Honor. I'm doing it at the advice of my Counsel what to do in my best interest.

THE COURT:   Well, I don't want you later complaining about your Counsel's advice.   Either you want the insanity defense in this trial or you don't.

THE DEFENDANT:   Whatever my attorney advises me, your Honor, that's what I'm going to do.   I've got mental health issues.   If the Court wants proper testimony, I have organic brain syndrome.   I've had numerous –

THE COURT:   Well, that's not –

THE DEFENDANT:   Well, I'm just letting you know –

THE COURT:   Well, that's not the issue right now.

*Id.* at 251-54 (emphasis added).   The prosecutor stated, for the record:

> [T]he State would proffer that Dr. DeMoya has indicated, for the record, that he would not be supporting his previously entered assessment that Mr. Posey is insane.   He would be saying that he was sane or that he could not say that he was insane at the time of the offense.
>
> Additionally, Dr. Larson, who has a report in front of the Court that says Mr. Posey was insane, has also, for the record I would proffer, indicated that he could not support that finding and that indeed he would withdraw his opinion that Mr. Posey was insane at the time of the offense.   Both of those doctors have indicated that.
>
> If the Court requires more, I can have them present to testify out of the presence of the jury to that issue.   But I would, out of an abundance of caution, put into the record, for appellate purposes, the deposition of Dr. DeMoya from April 25, 2008.

*Id.* at 254-55.   The judge then asked about additional doctors and the

prosecutor responded:

> There are two other doctors, your Honor, Dr. Gilgun and Dr. McLaren.   For the record, both of their opinions have been entered into the record.   Both of their opinions are that Mr. Posey was sane at the time of the offense.   I would again move those into evidence in this particular case.

*Id.* at 155.   The court allowed them into evidence "only for the purpose of

the record and not for presentation to the jury unless this becomes an issue

in front of the jury brought up by the defendant." *Id.*

As Respondents indicate, this ground presents a direct appeal issue. Posey did raise two points on direct appeal, including one asserting the trial court erred in failing to appoint two experts to evaluate Posey's competency pursuant to Florida Rule of Criminal Procedure 3.210(b).   Ex. J at i, 26, 27-33.   In support of that point, Posey cited only state procedural rules and case law, with the exception of one citation to Dusky v. United States, 362 U.S. 402 (1960), for the proposition that "[d]etermination of a defendant's competency depends upon the [sic] whether the defendant has 'sufficient present ability' to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational as well as a factual understanding of the proceedings against him."   *Id.* at 32; *see id.* at 27-33.   Posey argued that Dr. Gilgun was the only expert appointed to evaluate his competency for the February 2008 competency hearing, and the trial court erred in denying the defense motion for a second expert. *Id.* at 33.   No federal issue was presented on this point.   *See id.* at 27-33. And certainly no point on appeal was raised presenting the ground Posey now includes in his federal habeas petition, asserting the trial court erred in not sua sponte ordering a competency hearing during interaction the

quoted above.   Thus, it does not appear Posey fairly presented this ground as a federal claim in his direct appeal in state court.   *See, e.g.*, McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) ("McNair's references to federal law in his state habeas proceedings are exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement."); Ramos v. Sec'y, Fla. Dep't of Corr., 441 F. App'x 689, 696-97 (11th Cir. 2011) (holding that where petitioner "made one passing reference to federal law" in initial brief in state direct appeal, and did not argue federal standards or reference federal case law, issue was not fairly presented to state court and federal claim not properly exhausted).

Posey did, however, raise this claim as the third ground in his Rule 3.850 motion.   Ex. S at 77-78.   The state post-conviction trial court denied the claim (as Ground 19), although the court captioned it as one alleging IAC:

> Defendant alleges that an additional competency hearing should have been *sua sponte* ordered by the Court after the presiding judge at trial made a comment alluding to the sanity, or lack thereof, of the Defendant.   In addition to the fact that the Defendant has not alleged any facts which would support his incompetency at trial (thereby failing to allege prejudice) and the fact that many proceedings were held over the course of Defendant's case to evaluate and determine his competency,

this issue was addressed and affirmed on appeal and is thus summarily **DENIED**.

Ex. X at 922.   Posey appealed the order denying relief and filed, through counsel, an initial brief; however, the points on appeal did not include this claim.   Accordingly, this claim is not exhausted, both because it was not raised on direct appeal as a federal issue and because Posey did not obtain a complete review of the claim through all the state court proceedings.

Even assuming the ground should be considered on the merits, it should be denied.   It appears that Posey is raising a procedural competency claim, a claim pursuant to Pate v. Robinson, 383 U.S. 375 (1966), that the trial court erred by not ordering a competency hearing. *See* Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 481 n.5 (11th Cir. 2012).   "A defendant is competent to stand trial if he possesses (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and (2) a rational and factual understanding of the proceedings against him."   Pardo v. Sec'y, Fla. Dep't of Corr., 587 F.3d 1093, 1100 (11th Cir. 2009) (citing Dusky v. United States, 362 U.S. 402 (1960), and Fla. R. Crim. P. 3.211(a)(1)).   "A trial judge must conduct a *sua sponte* sanity hearing if the defendant's conduct

and the evidence raises a 'bona fide doubt' regarding the defendant's competence to stand trial." *Id.* at 1099-1100 (quoting <u>Pate</u>, 383 U.S. at 385-86).

In addition to the portion of the transcript quoted above, the record includes the following earlier statements, just before jury selection, when defense counsel moved for a one-month continuance:

> MR. MILLER [defense counsel]:   Judge, this is Mr. David Posey before the court.   We're here on case number 06-2901 that is set to proceed to a jury trial this morning.   At this time this morning I'm going to ask the court for at least a one month continuance based upon the reason that a substantial, if not entirely, part of our defense and strategy upon until this point, or at least until late last week as the court probably is aware, was an insanity defense, that Mr. Posey was not guilty by reason of insanity.   We planned to use two mental health experts to try to prove that up to the jury; one being Mr. Posey's long time treating doctor, Victor DeMoya.   After docket day last Thursday, Dr. DeMoya called me at my office and indicated to me that he would be changing his opinion with regard [to] the issue on insanity.   I met with my client, I believe, I know Saturday and Sunday – I'm not sure if it was Friday or Thursday, I think it was Thursday after court, and we discussed that as well as another strategy using Dr. Larson.   I had spoken with Mr. Larson in my office, he called me yesterday, who indicated that his testimony, might change somewhat as well.   Now, so based upon that, I would be asking for a continuance also, Mr. Posey supplied me with some case law this morning, I believe it's Gonzales verse State.   It looks like all I can do is give – I'm not sure what the site is here.   I can't really see through this, but it's a Third District court case from June 23, 2004, which seems to indicate that it could be error to not allow a second opinion, court ordered, with regard to

competency.    I guess the only one I'm aware of that I know the court specifically ordered was after Mr. Posey came back from Florida State Hospital was Dr. Gilgun with regard to the issue of competency so speaking with Mr. Posey this morning he is wanting to have a second evaluation with regard to his competency issue.    That's one issue for the court.

THE COURT:    How many court ordered evaluations does the state's record reflect?

MRS. MAW:    Judge, I've been reviewing the rule, Rule 3.216 with regard to insanity at the time of offense and I would point out for the record this case occurred November 6, 2006 so for 18 months we've been dealing with this particular issue.    Dr. Larson was requested by Mr. Hilley [former defense counsel] and I'm understanding that to be confidential attorney client; however, at some point during the pendency of this case Mr. Hilley explained to me that Dr. Larson would be one of their experts and that he would be testifying for the defendant that he was insane.    Subsequent to that and upon reviewing that report and noting that it really had no actual support in it, the state asked for the court to appoint a second expert and I can see by the court's order, September 27, 2007, that Dr. McClaren was appointed to evaluate insanity at the time of the offense.    As well, Judge, with regard to Dr. Gilgun, that looks like December 19, 2007 that he was court appointed and I would point out to Dr. Gilligan's [sic] psychological eval, in the first paragraph, reason for referral, Mr. Posey was seen by me for a court ordered psychological evaluation . . . with the specific questions of his competence to proceed is meeting the criteria for involuntary hospitalization and his sanity at the time of the offense.    I point that out from Dr. Gilligan's [sic] report because the actual order signed in February talks about competency and I don't think, you know these things were done on the fly.    I'm not sure, I think the PD did this one or maybe Mr. Hilley.    It's hard to say because that was the point when attorneys were changing but at least Mr. Gilligan's [sic] understanding and his report was as a court appointed.    As

well, subsequently, it would appear that Dr. DeMoya was at
least paid by the court.   He was ordered on September – well,
it's hard for me to find all these but it's my understanding that
Dr. DeMoya was also ordered by the court to evaluate Mr.
Posey and that was revealed to us and then subsequently he
was deposed.   It looks like January 25th his order for granting
partial indigency was signed.   So it's my understanding and
that was his first insanity evaluation that we have at least Dr.
Gilgun and Dr. McClaren but quite possibly Dr. DeMoya, as well
as Dr. Larson, coming in to say that he was going to come out
of the attorney client and utilized as one of the defendant's
experts.

THE COURT:   So there has been in effect two or more court
appointed –

MRS. MAW:   At least two and it looks like four from my reading
of things.

THE COURT:   All right.

Ex. E at 4-8.   Defense counsel argued that Dr. Gilgun was the only court-

appointed evaluation, *id.* at 8, but the trial court rejected that argument and

found "there's been two and possibly more court appointed evaluations as

to competency or insanity at the time of the offense," *id.* at 9.   The court

then denied defense counsel's motion for a continuance.   *Id.* at 9-11.

Defense counsel subsequently asked the judge to inquire of Posey

regarding his desire to maintain the insanity defense:

MR. MILLER:   Judge, also for purposes of 38.50 just on this
particular issue, with regard to the insanity defense, I would like
the court to make an inquiry of the defendant to assure the

court and the record that indeed Mr. Posey is the one who wants to proceed forward with an insanity defense despite the fact that all of the doctors have indicated he is sane, that he's been cautioned to that issue and then we proceed forward –

THE COURT:   All right.

MR. MILLER:   -- at his pleasure.

THE COURT:   Mr. Posey, do you understand that if you assert an insanity defense at the time of this action without the support of an expert witness, you're opening the door for the state to bring in their expert who's going to say you were not insane at the time of the incident.   Do you understand that?

MR. POSEY:   I'm not going to comment, Your Honor.

THE COURT:   Well –

MR. POSEY:   I plead the Fifth on that issue.

THE COURT:   Okay.   That's certainly your right.

MRS. MAW:   Judge, I think for purposes of 38.50 it is not Mr. Posey's right to plead the Fifth on a possible affirmative defense.

MR. POSEY:   Your Honor, it's my constitutional right to plead the fifth whenever I desire to do that.   Thank you.

THE COURT:   What did you just say?   I missed that.
MRS. MAW:   Before the jury comes in, I don't think it's his right to plead the Fifth with regard to this particular – he is directing the defense and he needs to be made aware and the court needs to show on the record –

THE COURT:   If he asserts –

MR. POSEY:   For the record your Honor, I'm not directing my defense.   I'm going with what my defense advises me of and I'm listening to my attorney.

THE COURT:   If Mr. Posey elects to take the stand at the appropriate point in the trial, when he has right to do that; and if at the time he asserts a defense, that opens him up for cross examination and rebuttal information to that defense.

MRS. MAW:   Yes, sir.   I understand.

THE COURT:   Once that happens, there is no right – fifth amendment right in regards to what he might testify to.

MRS. MAW:   Well, we'll take that issue up at that point in time then.   Thank you.

THE COURT:   Yes, that would be appropriate.

*Id.* at 25-28.   As explained above, defense counsel and Posey ultimately decided not to proceed with the insanity defense.

From the foregoing, then, in the statement of the trial judge that Posey focuses on, the trial judge merely observed that it may be a good idea to put in evidence that Posey is sane.   Contrary to Posey's suggestion, the trial judge did not specifically indicate he believed Posey was insane.   Rather, it appears the judge may have made the statement because, as outlined above, although several doctors had evidently evaluated Posey, both sides considered the number of doctors differently and at least two of the doctors (Dr. DeMoya and Dr. Larson) had changed

their minds and determined Posey was sane at the time of the offense.

These two doctors, Dr. DeMoya and Dr. Larson, were the doctors on which

the defense had been planning to rely.   *See id.* at 20; *see also* Ex. Z at

1214, 1235-38.   Thus, a fair reading reflects that, given the case history,

the trial judge simply wanted to make sure the record clearly indicated

Posey was sane, not that the judge thought he was insane.   From the

information disclosed during the competency hearing as well as from the

arguments of counsel during that hearing and during the sidebar

discussions at trial, the trial judge knew various doctors had examined

Posey and found him competent to proceed.   Petitioner responded to the

judge's questions and attempted to help defense counsel with case law to

support the reason for the requested continuance.   Petitioner has not

pointed to any objective facts known to the trial court sufficient to raise a

bona fide doubt about his competence to proceed at the trial.

The United States Supreme Court has "repeatedly and consistently

recognized that 'the criminal trial of an incompetent defendant violates due

process.'"   Cooper v. California, 517 U.S. 348, 354 (1996) (quoting Drope

v. Missouri, 420 U.S. 162, 171-72 (1975); Pate v. Robinson, 383 U.S. 375,

378 (1966)).   A state court's finding of competency constitutes a factual

finding, which is presumed correct and can be overcome only with clear and convincing evidence of incompetence.   Pardo, 587 F.3d at 1101; *see* Demosthenes v. Baal, 495 U.S. 731, 735 (1990); Sanchez-Velasco v. Sec'y, Dep't of Corr., 287 F.3d 1015, 1030 (11th Cir. 2002).   As discussed in the analysis of Ground 2, *supra*, the state trial court here found Posey competent to proceed and the record supports that determination.   To the extent Posey is raising a substantive competency claim pursuant to Dusky v. United States, 362 U.S. 402 (1960), that he was convicted while mentally incompetent, he has not presented or referenced any evidence of incompetence, much less clear and convincing evidence. *See* Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 481 n.5 (11th Cir. 2012).

Finally, to the extent Posey asserts the state court erred in any decision concerning the Florida rules, including Rules 3.210, 3.211, and 3.216, "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); *see* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief).   "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature

is involved." <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir.

1983).

This ground should be denied.   Petitioner Posey has not shown that

the state court's rejection of this ground, assuming it was fairly presented

and exhausted, involved an unreasonable application of clearly established

federal law or that it was based on an unreasonable determination of the

facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).

### <u>Ground 4</u>:   Trial Court Error – Posey's IQ

In his fourth ground, Petitioner Posey argues the trial court erred in

proceeding against him because the court knew or should have known that

Posey had a "subnormal IQ" and did not understand the proceedings.

ECF No. 13 at 11.   Posey raised this argument in the fourth ground of his

Rule 3.850 motion.   Ex. S at 78-79.   In denying the claim, the state post-

conviction trial court explained:   "This is another competency argument.

As described above, it is summarily denied."   Ex. X at 922.   As

Respondent indicates, Posey appealed the order denying relief and filed,

through counsel, an initial brief; however, the points on appeal did not

include this claim.   Accordingly, this claim is not exhausted.

Considering the merits, for the reasons set forth in the analysis of

Grounds 2 and 3, *supra*, regarding Posey's procedural and/or substantive

competency claims, this ground should also be denied.    Petitioner Posey

has not shown that the state court's rejection of this ground involved an

unreasonable application of clearly established federal law or that it was

based on an unreasonable determination of the facts.    *See* 28 U.S.C.

§ 2254(d)(1)-(2).

### Ground 5:    Trial Court Error – Posey Wrongfully Charged Under Kidnapping Statute Instead of False Imprisonment Statute

In his fifth ground, Petitioner Posey asserts the State wrongly

charged him with kidnapping under section 787.01(1)(a), Florida Statutes,

rather than with false imprisonment under section 787.02, Florida Statutes.

ECF No. 13 at 13-14.    Posey raised this claim as the fifth ground in his

Rule 3.850 motion.    Ex. S at 79-80.    The state post-conviction trial court

summarily denied the claim (as ground 21), making the following findings:

> As described previously in this order, challenges to the
> sufficiency of the evidence in support of the crimes for which
> Defendant was convicted are not cognizable in a motion for
> post conviction relief and could or should have been presented
> on appeal.    This ground is summarily **DENIED**.

Ex. X at 922.    Posey appealed the order denying relief and filed, through

counsel, an initial brief; however, the points on appeal did not include this

claim.    Accordingly, this claim is not exhausted.

Further, as the state court found, this issue was one for direct appeal and, by not raising it there, Posey has waived it.   Moreover, as Respondent asserts, this constitutes a state law issue not cognizable in federal habeas.   ECF No. 22 at 20-21.

Based on the foregoing, this ground should be denied.   Petitioner Posey has not shown that the state court's rejection of this ground, assuming it was fairly presented and exhausted, involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).

## <u>Ground 6</u>:   IAC – Failure to Call Crime Scene Reconstruction Expert

In his sixth claim, Petitioner Posey argues defense counsel provided ineffective assistance because he did not use a crime scene reconstruction expert after Posey requested him to do so.   ECF No. 13 at 14-16.   Posey raised this ground as the sixth claim in his Rule 3.850 motion.   Ex. S at 80-84.   The state post-conviction trial court summarily denied the claim (as ground 22), making the following findings:

> Defendant alleges that his attorney should have called a crime scene reconstruction expert to describe for the jury the location in which the crime was committed.   Defendant argues that this would have shown the jury that the statements of the witnesses regarding what they had seen were untrue because it would have been impossible for them to have observed things

> in the way they indicate that they did.    Because it does not
> require specialized knowledge, training, or experience to
> determine whether the layout of a home would inhibit the site
> [sic] or hearing of a witness, the defense attorney can not be
> said to have performed ineffectively for failing to call an expert.

Ex. X at 922-23.    On appeal, the First DCA affirmed without a written

opinion.    This constitutes a ruling on the merits and is entitled to AEDPA

deference.    *See* 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86,

98-100 (2011).

The state court did not unreasonably determine the facts in finding an

expert was not needed to describe the location of the crime and, therefore,

defense counsel did not perform deficiently in not calling an expert for this

purpose.    Petitioner Posey has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.    *See* 28 U.S.C. § 2254(d)(1)-(2).    This

ground should be denied.

### Ground 7:   IAC – Opened Door on Domestic Violence Injunction

In his seventh claim, Petitioner Posey asserts that after defense

counsel obtained severance of the count for violation of a domestic

violence injunction, counsel commented on the injunction, thus opening the

door for the State to present testimony and the injunction to the jury.   ECF

No. 13 at 17-18.   Posey raised this as the seventh claim in his Rule 3.850

motion.   Ex. S at 84-86.   The state post-conviction trial court denied the

claim (as ground 23), making the following findings:

> Defendant alleges that his attorney performed
> ineffectively when he opened the door to State comment on a
> domestic violence injunction against the Defendant.   It was
> actually the State that introduced the injunction at the beginning
> of testimony by a victim.   Trial counsel objected to the
> testimony and his objection was overruled.   This matter should
> have been presented on direct appeal and is thus summarily
> **DENIED**.

Ex. X at 923 (footnote referencing trial transcript omitted).   Posey

appealed and filed a brief, through counsel, but did not raise a point

specifically challenging the denial of this claim; accordingly, as Respondent

indicates, this ground is procedurally barred.

On the merits, a review of the trial transcript reflects that, contrary to

the state court's determination, the trial judge determined defense counsel

had opened the door concerning testimony and evidence about the

injunction.   In particular, the State's first witness, victim Jamie Powell,

testified on direct that Posey was his step-father, and Posey lived with him

and his mother prior to November 2006.   Ex. E at 198-99.   He further

testified on direct:

> Q   Okay.   Did there come a time when the defendant was no longer allowed in the house?
>
> A   Yes.
>
> Q   Okay.   And when was that approximately?
>
> A   Mid October.
>
> Q   Okay.   Did your mom have the locks changed?
>
> A   I did it for her.
>
> Q   Okay.   Late on the night of – and was that after Mr. Posey was not allowed to stay at that house?
>
> A   True.

*Id.* at 199.   On cross, defense counsel inquired about the locks:

> Q   Now, you testified about the locks being changed, isn't it correct that the locks were actually changed earlier, they were changed back in September, a couple – almost a couple of months before this incident?
>
> A   I don't believe it was that early.
>
> Q   Are you sure?
>
> A   Yes, sir.
>
> Q   Do you know somebody named Denise that your mom was friends with?
>
> A   Yes, sir, I do.

Q   Did she ever live in that apartment on Hopper Street [where Jamie and his mother lived in the fall of 2006]?

A   Yes, sir, for a couple of weeks she did.

Q   Was that back in somewhat proximity to this time frame?

A   It was before we had changed the locks.

Q   Right.   And isn't that the reason you changed the locks because of Denise?

A   No.

Q   You might have been afraid – your mother might have been afraid she might come back and steal something?

A   No.

*Id*. at 220-21.   At a subsequent side bar conference, the prosecutor

indicated, "Also, we've opened the door to the injunction."   Id. at 230.   The

following transpired:

MRS. MAW [prosecutor]:   . . . . I'm now moving to imply – to ask this witness about the injunction because the defense has asked him if the locks were changed for Denise, when they indeed know the locks were changed for the injunction.   That door's opened.

MR. MILLER [defense counsel]:   Don't know that the door's were changed for the injunction.   They could have been changed just simply – if he moved out somebody could have changed the locks.

MRS. MAW:   It's no longer appropriate to perpetuate the fraud upon the jury that that was –

MR. MILLER:   I'm going to object to that because that would
be an ethical violation.   The state's accused me of
perpetuating a fraud –

THE COURT:   No.

MRS. MAW:   I'm not saying you.

THE COURT:   The state can ask if he knows why the locks
were changed because you've asked were they changed
because of Denise or somebody.

MRS. MAW:   Which he said no.

MR. MILLER:   Well, I don't believe that opens the door.   I
mean, they've already established that they were separated
and he moved out.   That alone is reason.   I don't believe it
opens the door.

MRS. MAW:   You know he changed the locks because of the
injunction because you asked him in the deposition –

THE COURT:   All right.   Let's move on.   It's getting late.

*Id.* at 230-32.   In accordance with the court's ruling, on redirect, the

prosecutor inquired:

Q   Okay.   Now, there was a question asked of you as to why
the locks were changed, and you, yourself, testified you
changed those locks, is that correct?

A   That's correct.

Q   Go ahead and tell us why you changed them if you know.
You can say.

A   Mom asked me to change them because he wasn't allowed there anymore.

Q   Okay.   Was there anything done about that that he was not allowed there anymore?

A   Yes, ma'am.

Q   What was that?

A   It was something saying he couldn't come within 500 feet of us.

Q   What is that called, if you know?

A   I can't remember the name actually.

Q   Okay.   Was that something ordered by whom, if you know?

A   It was a judge.

*Id.* at 239-40.   This was the only witness for the first day of trial.   At the start of trial the next day, before the jury came in, defense counsel moved for a mistrial:

> MR. MILLER:   At this time I'm going to move for a mistrial. Yesterday the Court had granted the defense motion to sever count four, the violation of the injunction and indicated no testimony should be brought in about the injunction.
>
> Yesterday on cross examination – I'm sorry, on direct examination of Jamie the State asked him specifically about changing a lock on the residence.   Now, I of course went and cross-examined Jamie about the circumstances regarding changing the lock.   The Court ruled that I had opened the door and then allowed the testimony about the injunction.

If the Court does not allow me to cross-examine on things that the State brings up, then the State essentially puts me in the position where I cannot cross-examine a witness.    They put out stuff and I'm roped out of being able to address that, which would deny Mr. Posey the right of effective assistance of counsel, the right to put on a defense.

THE COURT:    Well, the State can correct me if I'm wrong, but my recollection was the reason for the changing of the lock was not delved into on direct.    But it was by you on cross.    It was on redirect that the State went into the necessary reasoning for it; is that correct?

MS. MAW:    Yes, sir, your Honor.    And if I might just respond. With regard to Jamie, the Court gave the State a specific order not to mention the injunction.    We've cautioned the witness, do not mention the injunction.    The witness was asked, as part of the element of burglary, that is, an uninvited entry, if the locks had been changed since Mr. Posey had moved out.    The witness said they had been changed.

The witness did not elaborate, did not talk about why, did not mention the injunction in any way, shape or form.    The Defense got up and said, isn't it true the locks were changed because Denise was there and she moved out and you were afraid she might steal from you?    The witness said no, that's not true.

But the jury is left with the opinion that that is why.    The witness knows why the locks were changed.    The witness changed the locks himself.

Then I approached and indicated to the Court, the door had been opened, up at the bench.    The Court made a ruling that the door had been opened with regard to the injunction. The witness was asked, why were the locks changed, on redirect and the witness answered because of a stay away

order by the Court.   He didn't know the name of the injunction, but he testified as to substantively why.

THE COURT:   All right.   That's exactly my recollection so the motion is denied.

MR. MILLER:   Well, I just need for the record to make sure that my position is that – I mean, we can't have things that the State can ask a witness about and then my hands are tied from cross-examining this person.   Because the State put it out there first.   I did not.   That actually would have been maybe something proper for rebuttal if I ever did open the door.   But I did not open the door.   The State was the one that opened the door.

THE COURT:   I've ruled.   Motion denied.

MR. MILLER:   It put me in a position where I had to.

*Id.* at 256-59.

The State next called another victim, Georgianna Powell-Posey, Posey's wife.   *Id.* at 265.   During her testimony, the State introduced certified copies of the temporary and final injunctions.   *Id.* at 267-68. Defense counsel objected to the admission of the copies as unnecessary, explaining, "It doesn't tend to prove anything other than the injunction that she can testify too."   *Id.* at 268.   The judge overruled the defense objection.   *Id.* at 268-69.   Defense counsel also sought "to voir dire [the witness] to see if she's familiar with any of the language" as "she can't just read it and testify what it's to."   *Id.* at 271.   The judge explained the copies

were certified.   *Id*.   Defense counsel again noted his objection.   *Id*. at

272.   The judge directed that the document be put into evidence and he

would give a cautionary instruction concerning some underlining that

appeared on the copies.   *Id*.; *see id*. at 269.

The record thus supports the state post-conviction court's factual

determination that the State actually introduced the injunction when one of

the victims, Posey's wife, testified at trial.   The state post-conviction court

did not specifically address which side had, prior to the wife's testimony,

already opened the door to testimony and evidence of the injunction,

although it is clear from the above-quoted portions of the trial transcript that

the trial judge determined defense counsel had opened the door.   Defense

counsel maintained he had not opened the door, objected to that finding,

and moved for a mistrial.   That the trial judge exercised his discretion and

found the door opened (and denied the mistrial) does not amount to

ineffective assistance.

Petitioner has not shown the state court's rejection of this ground was

either (1) contrary to, or involved an unreasonable application of, clearly

established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.    *See* 28 U.S.C. § 2254(d)(1)-(2).    This

ground should be denied.

### Ground 8:    IAC – Abandonment of Insanity Defense

In his eighth ground, Petitioner Posey argues defense counsel

provided ineffective assistance by abandoning his insanity defense.    ECF

No. 13 at 19-20.    Posey raised this as the eighth claim in his Rule 3.850

motion.    Ex. S at 86-89.    The state post-conviction trial court denied the

claim (as ground 24), making the following findings:

> Defendant alleges that his attorney should not have
> abandoned his insanity defense.    In fact, up until May 5, 2008,
> Defendant's attorney continued to argue for a defense of
> insanity on behalf of his client – even in the face of
> overwhelming evidence from psychological reports,
> depositions, and recordings of telephone calls made by the
> Defendant that the Defendant was not, in fact, insane.    This
> ground is without a factual basis and is summarily **DENIED**.

Ex. X at 923.    Posey appealed and filed a brief through counsel, but did

not raise a point specifically challenging the denial of this claim;

accordingly, as Respondent indicates, this ground is procedurally barred.

Further, on the merits, the records supports the findings of the state

post-conviction trial court.    As set forth in the analysis of Grounds 2 and 3,

*supra*, multiple evaluations and doctors concluded Posey was competent to

proceed and was not insane.    Notwithstanding this evidence, as the state

post-conviction court explained, and as detailed in the analysis of Grounds
2 and 3, defense counsel pursued the insanity defense up until the start of
the trial on May 5, 2008, at which point defense counsel, in support of a
requested continuance, explained on the record that Dr. DeMoya, who
counsel had planned to use in support of this defense, had changed his
opinion and so had Dr. Larson.   Ex. E at 4-8; *see* Ex. Z at 1214, 1235-38.
The trial judge conducted a colloquy with Posey regarding Posey's
consultation and agreement with defense counsel not to assert the insanity
defense, quoted in the analysis of Ground 3, *supra*.   Although Posey did
not specifically say he agreed with this decision, Posey did agree that he
was proceeding on the advice of his attorney.   Ex. F at 251-54.   Defense
counsel stated on the record that he had spoken with Posey about this
issue and Posey had "agreed it was in his best interest to proceed without
the insanity defense."   *Id.* at 253.

Petitioner Posey has not shown the state court's rejection of this
ground was either (1) contrary to, or involved an unreasonable application
of, clearly established U.S. Supreme Court precedent, or (2) based on an
unreasonable determination of the facts in light of the evidence presented
in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

### Ground 9:   IAC – Failure to Move for Jury View of Crime Scene

In his ninth ground, Petitioner Posey argues defense counsel

provided ineffective assistance by not moving for a jury view of the crime

scene, so the jurors could see it was not possible for the arresting officers

to see what occurred inside the residence.   ECF No. 13 at 21-22.   Posey

raised this ground as the ninth claim in his Rule 3.850 motion.   Ex. S at 89-

90.   The state post-conviction court denied the claim (as Ground 25),

making the following findings:

> Defendant alleges that his attorney should have
> requested a jury view of the scene of the crimes.   Defendant
> has failed to allege how the special circumstances of this case
> required a trip by the jurors to the home where the crimes
> occurred in order for the jurors to understand the facts of the
> case.   A jury view pursuant to § 918.05 is a highly discretionary
> tool that the court has broad discretion to permit or deny as
> required by the circumstances.   Finally, Defendant has failed to
> allege how testimonial descriptions of the property fail to
> convey some essential element of the circumstances of the
> case such that a jury view would change the outcome of the
> trial.   This ground is summarily **DENIED**.

Ex. X at 923.   On appeal, Posey's counsel did not raise a point specifically

challenging the denial of this claim; accordingly, as Respondent indicates,

this ground is procedurally barred.

Further, on the merits, the claim should be denied.   As the state

post-conviction court explained, a trial judge's decision regarding a jury

view, if requested, is highly discretionary.   *See* § 918.05, Fla. Stat.   As the

state post-conviction court found, Posey has not explained how any special

circumstances of this case necessitated a trip by the jurors to the

apartment where the crime occurred (and which the victims had vacated in

August or September 2007).   *See* Ex. S at 89-90; Ex. W at 824, 828

(deposition testimony of landlord, taken October 15, 2007, indicating

victims vacated apartment "about two months" earlier).   Further, multiple

witnesses described the apartment and crime scene during trial testimony,

and Posey has not specifically explained how such testimony proved

insufficient.

Petitioner Posey has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

### Ground 10:   IAC – Failure to Investigate Radio Transmission Report

In his tenth ground, Petitioner Posey argues defense counsel

provided ineffective assistance by not investigating the radio transmission

history report, which Posey asserts would have impeached four State

witnesses.   ECF No. 13 at 23.   Petitioner raised this ground as the tenth

claim in his Rule 3.850 motion.   Ex. S at 90-91.   The state post-conviction

court addressed the claim (as Ground 26), making the following findings

and directing that an evidentiary hearing be held on this claim:

> Defendant alleges that on the night of the offenses he
> actually did not state, as the victims testified at trial, that he
> wanted to harm them.   Rather, he argues, he shouted that he
> would harm himself.   Defendant insists that the radio
> transmission log from law enforcement dispatch on the night of
> the offenses would corroborate his description of events and
> cast doubt on the victims' description of events and that his
> attorney was ineffective for failing to examine or otherwise
> investigate or incorporate the call log into his defense.

> The State responds that the radio log contains a
> statement which could, although ambiguous, be interpreted as
> evidence of a self-harm statement by the Defendant.
> However, the State argues, because the Defendant testified at
> trial and was specifically asked by his attorney what statements
> he made and he did not mention any threat to harm himself, the
> evidentiary value of this ambiguous statement is low and the
> Defendant has failed to show prejudice – i.e., the Defendant
> already had an opportunity to explain the threat to harm himself
> to the jury and did not.

> As the State points out in its response, the court records
> clearly show, along with psychological reports and depositions
> and the Defendant's own testimony, that the Defendant,
> although not insane, had numerous psychological and mental
> infirmities and had little clear memory of what exactly transpired

on the night of the criminal event.   Counsel, being aware of his client's deficiencies, may have performed ineffectively by failing to seek introduction of the call report log through the officer who apparently heard someone state that they would blow "their" brains out.   It is difficult for the Court to estimate the effect that this testimony may have had on the minds of the jurors as they weighed the credibility of the victims' testimony and the Defendant's testimony and pieced together what happened on the night in question.   An evidentiary hearing should be held on this ground.

Ex. X at 924.   As discussed above, through counsel, Posey amended his

Rule 3.850 motion to include an additional clam related to the radio

transmission – a Brady claim because the recording of the radio

transmission (the "CAD audio recording") was not provided to the defense.

Ex. Z at 1205-1324.   The evidentiary hearings took place on April 9, 2012,

and February 10, 2014.   Following the hearings, the state court rendered a

final order denying the IAC claim and explaining:

> Defendant alleges that counsel was ineffective for failing to investigate the CAD report and use it during cross examination of witnesses because the CAD report would have cast doubt on the State's theory of events by showing that Defendant had threatened to harm himself, not the victims. The CAD report entry at issue reads as follows:   "195-239 come around front, heard someone talking about blowing their brains out."

> To be successful on an ineffective assistance of counsel claim, a defendant must demonstrate that counsel's performance was both (1) deficient and (2) prejudicial to the defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984).

Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.   However, "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).   "[T]he fact that counsel's strategy was unsuccessful does not result in the conclusion that the representation was inadequate." State v. Freeman, 796 So. 2d 574, 576 (Fla. 2d DCA 2001).

At the evidentiary hearing held on April 9, 2012, Defendant's trial counsel, Bruce Miller, testified.   Mr. Miller testified that his opinion was that the CAD report would not have caused the jury to believe the State witnesses were lying or that Defendant had threatened to kill himself.   (Hr'g 44-45) He said, "[A]s a defense counsel one of my rules of thumb is you don't help the state make their case . . . ."   (Hr'g 18)   He testified that "this whole case was about anger."   (Hr'g 18)   He testified that "the trial is about somebody who's angry who is going into a house carrying a crowbar and I don't know how many times you want to bring that whole scenario up in front of a jury."   (Hr'g 24)   Mr. Miller testified that the defense "wanted to get [the State's] witnesses off of the stand as quickly as possible 'cause there's such a thing as asking too many questions and helping the state and I did not want to do that." (Hr'g 44)   Mr. Miller said, "[M]y strategy was – we had two officers testify to almost identical facts.   I wanted to get what I could, have them sit down and move on."   (Hr'g 48)   He said, "[W]e certainly tried to minimize what the officers were saying in terms of bash and blowing . . . ."   (Hr'g 50)

As previously articulated, Deputy Nichols testified at the April 9, 2012, evidentiary hearing.   Deputy Nichols testified that the line on the CAD report reading "heard someone talking about blowing their brains out" is "inaccurate."   (Hr'g 62)   He said, "I can specifically tell you that I did not utter the term

blowing their brains out because I specifically heard bashing their brains out.   Had I heard blowing their brains out it would have probably cautioned me in a slightly different way, the fact that we were dealing with a firearm, so that would have definitely been something different, something I definitely would have remembered."   (Hr'g 63)

The Court finds the testimony of Mr. Miller and Deputy Nichols credible.   The Court finds that counsel made an informed and reasoned decision not to incorporate the CAD report into the defense strategy.   Although the wording of the CAD report differs from the testimony given at trial, the jury could have interpreted the word "their" on the CAD report as additional evidence showing that Defendant had threatened to harm the victims.   Counsel's decision to avoid drawing more attention to the emotional, anger-driven words attributable to Defendant was a well-reasoned tactical decision, especially considering the limited value of the language contained in the CAD report.   Moreover, based on the evidence introduced at trial and testimony given at the evidentiary hearing, there is no reasonable probability that the outcome of the trial would have been different had counsel used the CAD report during cross examination or otherwise made the report's content available to the jury.   Accordingly, this claim is denied.

Ex. AA at 1415-16.   On appeal, Posey's counsel did not raise a point specifically challenging the denial of this claim; accordingly, as Respondent indicates, this ground is procedurally barred.

Further, on the merits, the claim should be denied.   The state post-conviction trial court sits as the fact-finder and determines witness credibility in Rule 3.850 proceedings.   *See, e.g.*, Smith v. State, 697 So.2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850(d).   "Federal habeas

courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'"   Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).   The record supports the findings of the state post-conviction trial court.   In particular, the transcript of the evidentiary hearing reflects that defense counsel testified in accordance with the state post-conviction court's findings.   Ex. Z at 1222, 1228, 1247-54.   The transcript also reflects Deputy Nichols testified in accordance with the court's findings.   Id. at 1265-67.   The court properly accepted the testimony of defense counsel and Deputy Nichols, finding that counsel made a reasonable strategic decision not to include the CAD report.   Indeed, as alluded to during the evidentiary hearing, defense counsel's strategy of minimizing evidence (including the CAD report) tending to show Posey had the crowbar inside the house may have had some success as, on Count 1, the jury convicted Posey of the lesser included offense of burglary of a dwelling, rather than the charged offense of armed burglary.   See id. at 1252-53; Ex. C at 380; Ex. H at 716-19.

Petitioner Posey has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

### Ground 11:   Trial Court Error – State Withheld Exculpatory Evidence

In his eleventh ground, Petitioner Posey argues the State withheld exculpatory evidence "where the chain of custody records would have revealed that this evidence [used against him by the State] had been tampered with," specifically that the evidence room was unsecured from November 6, 2006, to May 5, 2008.   ECF No. 13 at 24; *see* Ex. S at 93. Petitioner raised this ground as the twelfth claim in his Rule 3.850 motion. Ex. S at 92-95.   The state post-conviction court denied the claim (as Ground 28), making the following findings:

> As the State argues in their response, the evidence cards provided by the Defendant in support of this claim were clearly in existence at the time of trial.   Newly discovered evidence must be evidence that was not discoverable through the exercise of due diligence by the Defendant or his attorney.   In addition, this ground seems to challenge the reliability or sufficiency of the evidence to support his conviction – such a claim must be raised on direct appeal.   This ground is summarily **DENIED**.

Ex. X at 925.   On appeal, Posey's counsel did not raise a point specifically

challenging the denial of this claim; accordingly, as Respondent indicates, this ground is procedurally barred.

Further, on the merits, the claim should be denied. The record supports the findings of the state court that the evidence cards were in existence at the time of trial and thus do not constitute newly discovered evidence. *See* Ex. S at 181-95.

Petitioner Posey has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### Ground 12:   Trial Court Error – Trial Judge's Comments

In his twelfth ground, Petitioner Posey argues the state court trial judge prejudiced him by twice making comments concerning the mask exhibit. ECF No. 13 at 26. Posey raised this ground as the thirteenth claim in his Rule 3.850 motion. Ex. S at 95-96. The state post-conviction court summarily denied the claim (as Ground 29), making the following findings:

> Defendant is incorrect regarding the trial court's comments.   As the State correctly points out, such comments about the mask exhibit were not made to the jury and were not made with direct reference to the Defendant, but rather the court was addressing, in general and at a side bar conference, what a mask is used for.[]   This ground is summarily **DENIED**.

Ex. X at 925 (footnote to trial transcript omitted).   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 562 U.S. at 98-100.

The state court record supports the findings and conclusions of the post-conviction trial court.   Specifically, the portion of the trial transcript cited by Posey and the post-conviction judge, specifically reflects the trial judge's comments about the mask were made during a side bar conference and nothing shows the jury heard them.   *See* Ex. S at 95-96; Ex. X at 925, 963-63.   In particular, the trial transcript reflects the following occurred during the direct testimony of Deputy Michael Nichols:

> Q   So you have experience with collecting different types of evidence from crime scenes?

> A   Yes, ma'am.

> MS. GORDON [prosecutor]:   Judge, may we approach?

> THE COURT:   Sure.

**(SIDEBAR)**

MS. GORDON:   Judge, Mr. Posey's intent is an element of this offense.   For burglary you have to have an intent to commit a crime inside.   It's very relevant for us to prove what his intent was.   The fact that he's wearing a mask, gloves –

THE COURT:   <u>The reason you wear a mask is obvious</u>.

MR. MILLER [defense counsel]:   You can't prove it from what somebody else might have done some other time or what his speculation was.

MS. GORDON:   As a crime scene investigator he knows about collecting prints which is why you wear gloves.   He knows about the booties.   He knows about collecting foot prints, which is why you would wear the booties.   I don't think that those are necessarily obvious to a jury.   I can move on from the mask. But gloves and booties, it absolutely is an element to prove. The jury needs to know that a crime scene officer –

THE COURT:   Why is it relevant?

MS. GORDON:   Because it shows his intent when he entered, Judge, which is an element of burglary.

THE COURT:   <u>Well, everybody knows that if you wear a mask it's to conceal your identity</u>.

MS. GORDON:   Well, not everybody knows about fingerprints and booties?

MR. MILLER:   This guy has already said that this image will stay with him forever because it was so weird.   Obviously there's nothing to compare it to.   Because it's so weird, it's going to stay with him forever.

MS. GORDON:   Judge, I can remark on the mask because I do

think it's probably common sense about the mask.    But as far
as the gloves and the booties –

THE COURT:    Okay, you can go into that.    Let's not dwell on
it.

**(SIDEBAR CONCLUDED)**

BY MS. GORDON:

Q    Deputy Nichols, I believe you said you had some
experience and training in crime scene investigation?

A    Yes, ma'am.

Ex. F at 372-74 (bold and underline emphasis added).    The comments

Posey challenges are underlined above; however, as reflected by the

parenthetical notations regarding the sidebar conference, in bold above,

the comments occurred while the attorneys were conferring with the judge

at the bench.    Indeed, a bit earlier in the trial, after one of the sidebar

conferences, the judge gave the following explanation on the record:

> THE COURT:    To insure that all the evidence is precise and
> legal and subject to the rules of evidence and so the attorneys
> have a chance to test these questions, we don't move as fast
> as they do on Law and Order.    That's why we approach and do
> things out of your hearing so I don't have to send you in and out
> of the courtroom to the jury room.    The attorneys just come up
> here.    There's a special little microphone that the court reporter
> can even hear what they're saying when you can't.    That's
> what we're in the process of doing.

*Id*. at 270.

The record further reflects that after Deputy Nichols testified, another witness testified, and then court concluded for the day.    *See id.* at 419, 429.    At some point, Posey evidently informed defense counsel that Posey believed the jurors heard the judge's comments about wearing a mask, and defense counsel then moved for dismissal near the start of the next day's proceedings:

> MR. MILLER:   I need to make a motion to dismiss this morning.   So at this time I would make my motion to dismiss and I'm basing this motion on some representations and things Mr. Posey told me about that I am aware of that happened but didn't see everything that he saw.   And so yesterday when one of the deputies was testifying about this mask there was an objection made about the deputy talking about experiences, what deputies wear or what masks are for.   We had a bench conference, I believe, and I didn't – I remember the conference, but I didn't see what Mr. Posey saw, which is, I think, the court said something like, we all know what masks are for.   Mr. Posey said it was said loud enough that the jury heard it and he witnessed three jurors shaking their heads up and down, I guess.   So my concern is that that's somewhat of a comment on the evidence that draws a negative inference.   It would be prejudicial and so I would ask you for a minimum of a curative instruction to disregard anything they might have heard the court say, but basically my motion is to dismiss.   I don't know if they've heard it –
>
> THE COURT:   I'll be glad to give a curative instruction, but, I mean, the jury is going to be instructed to use their common sense.
>
> MR. MILLER:   I understand.

THE COURT:   A mask can only be used for about four or five things.

MR. MILLER:   I understand.

THE COURT:   Ice hockey, concealment of identity, protection from the cold, and riding a motorcycle.   I don't know what else but I'm sure there must be something else.

MR. MILLER:   Right, I just needed to make my motion to dismiss.

THE COURT:   All right.

MR. MILLER:   One other issue.

MRS. GORDON:   On that one, real quick, Mr. Miller.   I believe there's already a standard instruction, Judge, that you would be instructing the jury that anything that you might have said during the trial.

THE COURT:   I know but I'll go ahead and do it again.

Ex. G at 442-44.   After the jury was brought in, the judge gave the curative

instruction:

THE COURT:   Please be seated when you arrive at your chair. The record would reflect that it's May 7th and the jury is properly reassembled for Mr. Posey's trial and, I believe, before we get – one thing I want to tell you that during yesterday's proceedings at some point in the trial one of the deputies was testifying about part of the garment Mr. Posey wore that might have been referred to as a mask.   I made a comment that people can use their common sense to know what a mask is for.   There's been an objection to my comment so I instruct you to disregard any comment I made about that mask.   Nothing I say or do during this trial should influence your verdict in any

way when you ultimately render it.   So any comment I made on the evidence was improper and I shouldn't have done it so disregard it.   Let it play no part in your decision.   All right. . . .

*Id.* at 446.

Petitioner Posey has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

## Ground 13:   Trial Court Error – No Mental Health Treatment Offered to Posey During Probation for Other Offenses

In his thirteenth ground, Petitioner Posey asserts his "constitutional rights [to] due process of law, equal protection, Fifth and Fourteenth Amendment rights on the United States Constitution, legislative intent for the Florida Statutes section 415, and the Americans with Disabilities Act were violated by Respondents not superintending a court order by the state trial court of the Fourteenth Judicial Circuit, specifically condition number fourteen of Posey's probation order."   ECF No. 13 at 28.   Posey explains that, as part of his conditions of probation imposed for an armed robbery conviction in another case, number 98-1094-A, he was ordered to "'attend

evaluation for mental health treatment and if treatment is necessary he will comply with it.'"   *Id.*      Posey asserts that when he was released from the incarceration portion of his sentence in that case, Respondents "should have scheduled [him] an[] evaluation for treatment [as] outlined in probation condition fourteen."   *Id.*

Petitioner does not appear to have raised this ground as part of Rule 3.850 proceedings.   *See* Ex. X at 917-26.   He did not raise it on direct appeal or on appeal from the denial of post-conviction relief.   *See* Exs. J, L, DD.   Accordingly, this claim is not exhausted and is procedurally defaulted.   Further, as Respondent indicates, this ground does not state a claim for relief in federal habeas.   *See* ECF No. 22 at 30-31.   Accordingly, this ground should be denied.

## <u>Ground 14</u>:   Trial Court Error – Constitutional Violations by Okaloosa County Sheriff's Department

In his fourteenth ground, Petitioner Posey asserts the Okaloosa County Sheriff's Department violated his constitutional rights in four instances:   (a) recording his phone calls while he was in detention; (b) seizing his legal work product; (c) destroying surveillance films which he says constituted exculpatory <u>Brady</u> material; and (d) failing to properly secure the evidence room, resulting in missing evidence.   ECF No. 13 at

30.   As Respondent explains, it does not appear that Posey raised this claim at any stage in the state trial court in any challenge to his conviction and sentence.   *See* ECF No. 22 at 32; *see also* Exs. J, K, L, S, DD. Posey did file grievances with the Okaloosa County Board of County Commissioners as well as civil cases in circuit court against that Board and the Okaloosa County Sheriff's Office, these actions did not involve the validity of his conviction and sentence, nor did the defendants therein have authority to grant relief from his conviction and sentence.   *See* ECF No. 22 at 33-34; *see also* Exs. UU, VV, WW.   Accordingly, the claim is unexhausted and procedurally barred.   This ground should be denied.

### <u>Ground 15</u>:   Trial Court Error – Double Jeopardy

In his fifteenth ground, Petitioner asserts the State violated his right against double jeopardy in four instances:   (a) convictions for kidnapping and burglary with intent to kidnap; (b) "assault conviction and sentence count (3)"; (c) convictions and sentences on count (2) and (3) where "the verdict form returned contains no indication as to whether the jury found Petitioner had committed a burglary with kidnapping or assault, given Petitioner's additional convictions for kidnapping and assault, the determination of burglary with kidnapping or assault by sentencing judge

would have been necessary so as to not run afoul of the double jeopardy

issue"; and (d) Petitioner was already punished for violating the injunction

imposed October 13, 2006, so he could not be subsequently prosecuted for

those felonies (kidnapping, burglary, and assault).   ECF No. 13 at 35-36.

Petitioner Posey appears to have raised at least a portion of this ground in

his Rule 3.850 motion.   Ex. R at 33-36.   The state post-conviction court

denied the claim (as Ground 7), making the following findings:

> The Court cannot discern the legal argument Defendant
> makes in this ground.   As the State explains in their response,
> if the Defendant is challenging his multiple convictions on
> double jeopardy grounds, his argument clearly fails as each
> crime contains an element not contained in the others.   This
> ground is summarily **DENIED**.

Ex. X at 920.   On appeal, Posey's counsel did not raise a point specifically

challenging the denial of this claim; accordingly, as Respondent indicates,

this ground is procedurally barred.   *See* ECF No. 22 at 35.

Further, on the merits, the claim should be denied.   The United

States Supreme Court has explained that the Double Jeopardy Clause

provides three separate constitutional protections:

> It protects against a second prosecution for the same offense
> after acquittal.   It protects against a second prosecution for the
> same offense after conviction.   And it protects against multiple
> punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794 (1989) (concerning presumption of vindictiveness in sentencing).   Here, Posey appears to argue the State of Florida violated the third protection as he asserts he received multiple punishments (three convictions) for the same underlying conduct for which he was punished for violating the injunction.   ECF No. 13 at 35-36.

As the post-conviction court found, each crime contains an element not contained in the others.   Specifically, Count 1 charged Posey with burglary of a dwelling while armed with a dangerous weapon, in violation of section 810.02(1)(b) and (2)(b), Florida Statutes (2006).   Ex. C at 290.   As quoted in the analysis of Ground 1, *supra*, that statute provides:

> (b)   For offenses committed after July 1, 2001, "burglary means:
>
> > 3.   Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
> >
> > 4.   Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
> >
> > d.   Surreptitiously, with the intent to commit an offense therein;
> >
> > e.   After permission to remain therein has been withdrawn, with the intent to commit an offense

therein; or

    f.   To commit or attempt to commit a forcible felony, as defined in s. 776.08.

    . . . .

(2)   Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:

    . . . .
(b) Is or becomes armed within the dwelling, structure, or conveyance, with explosives or a dangerous weapon[.]

§ 810.02(1)-(2), Fla. Stat. (2006).

Count 2 charged Posey with armed kidnapping with a weapon, to wit

a crowbar and/or a knife and/or a stun gun, in violation of sections

787.01(1)(a) and 775.087, Florida Statutes (2006).  Ex. C at 289.  Section

787.01(1)(a) provides:

The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:

5. Hold for ransom or reward or as a shield or hostage.

6. Commit or facilitate commission of any felony.

7. Inflict bodily harm upon or to terrorize the victim or another person.

8. Interfere with the performance of any governmental or
   political function.

Section 775.087(1), Florida Statutes (2006), provides that "whenever a
person is charged with a felony . . . and during the commission of such
felony the defendant carries, displays, uses, threatens to use, or attempts
to use any weapon . . ., the felony for which the person is charged shall be
reclassified" to the next higher offense level.

Count 3 charged Posey with aggravated assault by threat, in violation
of section 784.021(1)(a), Florida Statutes (2006).   Ex. C at 289-90.   That
statute provides that "[a]n 'aggravated assault' is an assault . . . [w]ith a
deadly weapon without intent to kill[.]"   § 784.021(1)(a), Fla. Stat. (2006).

Count 1 requires an entering or remaining in a dwelling, which is not
required by Counts 2 or 3.   Count 2 requires a forcible confining, which is
not required by Counts 1 or 3.   Count 3 requires threatening to do violence
to another with a deadly weapon, with the apparent ability to do so, which is
not required by Counts 1 or 2.   No constitutional violation appears here.
"[T]he prohibition against double jeopardy does not prohibit multiple
convictions and punishments where a defendant commits two or more
distinct criminal acts." Hayes v. State, 803 So. 2d 695 (Fla. 2001) (citing
Blockburger v. United States, 284 U.S. 299, 302-04 (1932)).

Petitioner Posey has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

### <u>Ground 16</u>:   Trial Court Error – Burglary

In his sixteenth ground, Petitioner Posey asserts the state trial court

erred "by denying Petitioner's ground that you cannot burglarize you[r] own

home[, resulting in] a miscarriage of justice.   ECF No. 13 at 36.

Respondent answers this ground, raised for the first time in the amended

§ 2254 petition, is untimely and does not relate back to the original § 2254

petition.   ECF No. 22 at 39.   Respondent further asserts the state court

denied this ground, finding it raised a direct appeal issue.   *Id.*

As Respondent indicates, the state post-conviction trial court

summarily denied this claim (as Ground 10), finding, "This argument goes

to the sufficiency of the evidence to support the conviction and should have

been raised on direct appeal."   Ex. X at 920.   On appeal, Posey's counsel

did not raise a point specifically challenging the denial of this claim;

accordingly, this ground is not exhausted and procedurally barred.

Further, because the state court found the claim barred under state law, it

is likewise barred from federal review.   *See, e.g.*, LeCroy v. Sec'y, Fla.

Dep't of Corr., 421 F.3d 1237, 1260 (11th Cir. 2005) ("If, however, the claim

'could have been raised [on direct appeal], but was not, it would be barred

from any state collateral review, and likewise barred from federal review.'"

(quoting Murray v. Carrier, 477 U.S. 478 (1986))).   Even considered on the

merits, the claim should be denied as the evidence, detailed in the analysis

of Ground 1, *supra*, was sufficient to support the burglary charge.

Petitioner Posey has not shown the state court's rejection of this

ground was either (1) contrary to, or involved an unreasonable application

of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This

ground should be denied.

### Ground 17:   Trial Court Error/IAC – Brady Violation

In his seventeenth ground, Petitioner Posey asserts the trial court

erred because the State withheld evidence in violation of Brady v.

Maryland, 373 U.S. 83 (1963), specifically the CAD recording discussed in

Ground 10, *supra*, which Posey asserts would have impeached a key witness.   ECF No. 13 at 38.   Posey alternatively asserts that, if the State did not commit a Brady violation, then defense counsel provided ineffective assistance by not obtaining the CAD recording and using it during trial to impeach the officers' testimony regarding what they heard Posey say to the victims as they arrived on the crime scene.   *Id.*

Respondent answers that this ground, raised for the first time in the amended § 2254 petition, is untimely and does not relate back to the original § 2254 petition.   ECF No. 22 at 40.   Respondent further asserts the state court denied this ground as an IAC claim, after the evidentiary hearing finding it raised a direct appeal issue.   *Id.*

As discussed in the analysis of Ground 10, supra, after the state post-conviction court granted an evidentiary hearing on Posey's IAC claim concerning the CAD recording, Posey amended his Rule 3.850 motion, through counsel, to include an additional clam related to the radio transmission – a Brady claim because the recording of the radio transmission (the "CAD audio recording") was not provided to the defense. Ex. Z at 1205-1324.   The evidentiary hearings took place on April 9, 2012, and February 10, 2014.   Following the hearings, the state court rendered a

final order that included an explanation of the <u>Brady</u> claim:

> Defendant alleges that the State committed a <u>Brady</u> violation by (1) delaying disclosure of a computer assisted dialog (CAD) report and (2) failing to provide audio recordings of the radio communications related to the CAD report. Defendant alleges the CAD report and audio recordings have exculpatory or impeachment value because the report and audio show he intended to harm himself, not the victims.   The CAD report entry at issue reads as follows:   "195-239 come around the front, heard someone talking about blowing their brains out."   Defendant alleges that he had said he wanted to blow *his own* brains out, not the victims' brains.

> To succeed on an allegation that the State committed a <u>Brady</u> violation, "the defendant has the burden to show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced."   <u>Hurst v. State</u>, 18 So. 3d 975, 988 (Fla. 2009). "This prejudice is measured by determining whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.   In applying these elements, the evidence must be considered in the context of the entire record."   <u>Occhicone v. State</u>, 768 So. 2d 1037, 1041 (Fla. 2000) (internal quotations and citations omitted).   In other words, "the defendant must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   <u>Mungin v. State</u>, 79 So. 3d 726, 734 (Fla. 2011) (internal quotations omitted).

Ex. AA at 1408-09 (footnotes omitted).   The post-conviction court then

made findings about the testimony given at trial and at the post-conviction

hearings:

At trial, Deputy Daniel Genrich testified that while responding to a burglary in progress call, he heard a woman screaming as he approached the residence.   (Tr. 304-06)   Deputy Genrich testified that he proceeded to the back of the apartment and "heard a male say, quote, I'm going to bash your f[***]ing brains in."   (Tr. 308)

At trial, Deputy Michael Nichols testified that while positioned near the front door of the residence, he "heard a male voice say, I'm going to bash your f[***]ing brains out." (Tr. 344-45)   Deputy Nichols testified that he then told Deputy Genrich to "come around front."   (Tr. 346)   Deputy Nichols testified that when he made entry into the residence he saw Defendant "standing above two individuals . . . with his right arm extended holding a pry bar as if he was about to hit one of them."   (Tr. 347-48)

At trial, Georgeanna Powell-Posey testified that she had the locks changed on her home after an injunction was entered against her husband, the Defendant.   (Tr. 272-73)   She testified that on the night of the incident, she came home from work, unlocked the door to her residence, and Defendant "jumped out of the bushes and shoved [her] in the house and closed the door."   (Tr. 273-74)   She testified that he was wearing a mask, and she asked him to leave.   (Tr. 274)   She said Defendant "rip[ped] the phone out of the wall and shove[d] me . . . ."   (Tr. 274)   She testified that her son entered the room.   (Tr. 275)   She said Defendant ordered her and her son, Jamie, to get down on the floor.   (Tr. 276)   She said Defendant "grabbed me by the jacket and threw and shoved me down."   (Tr. 276)   She testified that, while holding a crowbar in his hand, Defendant said, "I'm going to bash your brains out. I'm going to kill you, Jamie."   (Tr. 277)   She testified that she was scared and believed Defendant was going to kill her or her son and she did not see a way to escape.   (Tr. 278).

At trial, Jamie Powell testified that "we were in the living room and [Defendant] had a crow bar [sic] in his hand and he

was telling us to get down on the floor . . . ."  (Tr. 208)   He testified that Defendant held the crowbar up and "said he was going to kill us."  (Tr. 209)   He testified that Defendant "yelled that he was going to beat our brains out . . . ."  (Tr. 209).

At the evidentiary hearing held on April 9, 2012, Deputy Nichols testified that the lines on the CAD report beginning with "195" are attributable to him.  (Hr'g 62)   He testified that the line on the CAD report reading "heard someone talking about blowing their brains out" is "inaccurate."  (Hr'g 62)   He said, "I can specifically tell you that I did not utter the term blowing their brains out because I specifically heard bashing their brains out. Had I heard blowing their brains out it would have probably cautioned me in a slightly different way, that fact that we were dealing with a firearm, so that would have definitely been something different, something I definitely would have remembered."  (Hr'g 63)   Deputy Nichols said, in reference to the CAD report, "I can't say that it's verbatim word for word what I said, but I can definitely say the word *blowing* was *bashing*."  (Hr'g 81) (emphasis added)   He testified that if he had uttered the word "their" it was a reference to the victims' brains.  (Hr'g 81-82)

At the evidentiary hearing held on February 10, 2014, Denise Sledge testified that she was the person who typed the dispatch entry recorded on the CAD report.   She said she typed "what I thought I heard."   Ms. Sledge testified that she had trouble understanding the radio communications at the time due to problems with reception.   She testified that the CAD report is not necessarily an exact quote of what Deputy Nichols said.   She testified that the context of the situation, in regard to the word "their," indicates the threat had been made to the victims.   Ms. Sledge testified that she did not review any audiotapes pertaining to the radio transmissions, nor did she know if a recording had been made.

At the evidentiary hearing held on February 10, 2014, Victor Everett testified that he has been the communications

manager for the Okaloosa County Sheriff's Department for
thirteen years.   Mr. Everett testified that the recording system
used to record radio dispatch calls malfunctioned, and audio
recordings taken from March 2006 through April 2008 were
destroyed as a result of that equipment failure.   Mr. Everett
testified that to his knowledge, neither he, nor anyone under his
direction, reviewed an audio recording of November 6, 2006.
Mr. Everett testified that he could not confirm whether a
recording of the radio transmissions existed, or if a recording
existed, that it was audible.

*Id.* at 1409-11 (footnotes omitted).   The court concluded that no

Brady violation occurred and, accordingly, denied the claim:

> The record shows that the State provided the CAD report
> to trial counsel on October 10, 2007, approximately seven
> months before the beginning of Defendant's trial on May 5,
> 2008.   The Court notes that the CAD report is short; it consists
> of approximately two and a half pages of printed material.
> Defense counsel had nearly seven months to examine the CAD
> report.   Consequently, Defendant's allegation that a Brady
> violation exists is not well-taken in light of the length of time
> before trial that defense counsel had access to the CAD report.
>
> Moreover, the Court finds the testimony given by Deputy
> Nichols and Ms. Sledge credible.   Consequently, when
> examined in the context of the entire record, the CAD report
> has little value, if any, to Defendant.   It is not a transcription of
> Defendant's words; it reflects the words Ms. Sledge *thought* she
> heard Deputy Nichols say.   Deputy Nichols testified that the
> male voice he heard had threatened the victims, which is also
> reflected on the addendum of probable cause filed with the
> arrest report.   The Court finds that the CAD report is not
> exculpatory evidence, and any potential impeachment value of
> the CAD report diminishes when examined in the context of Ms.
> Sledge's testimony concerning the poor radio transmission
> quality, Deputy Nichols's testimony at the evidentiary hearing,

and the trial testimony given by Deputy Genrich, Deputy Nichols, and the victims.

Further, although it is not necessary for Defendant to prove that the State willfully delayed providing the report, there has been no showing that the State willfully suppressed it; any delay was inadvertent.

Finally, the State introduced evidence at trial showing that Defendant wore a mask, possessed a crowbar, stun gun, and switchblade knife during the incident.   The jury did not need to find that Defendant threatened the victims with words in order to find guilt; Defendant's actions were sufficient to support the jury's verdict.   Even if Defendant had threatened to bash or blow his *own* brains out, the jury verdict is supported by the evidence that Defendant wore a mask, possessed weapons, entered or remained in the residence unlawfully, ordered the victims to the floor, pushed Ms. Powell-Posey to the floor, and confined the victims while wielding a crowbar over them.

Therefore, after considering the testimony given by Deputy Nichols and Ms. Sledge at the evidentiary hearings, as well as the overwhelming evidence of guilt presented at trial, the Court finds that the CAD report could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.   There is no reasonable probability that, had the CAD report been disclosed earlier, the outcome of the trial would have been different.   Therefore, this claim is denied.

*Id.* at 1411-13 (footnotes omitted).   On appeal, Posey's counsel did not

raise a point specifically challenging the denial of this claim; accordingly, as

Respondent indicates, this ground is procedurally barred.   *See* ECF No.

22 at 41.

Further, the state court record supports the post-conviction court's findings that the State provided the CAD report to defense counsel on October 10, 2007, almost seven months before the trial.   *See* Ex. AA at 1462.   *Cf., e.g.*, Rodriguez v. Fla. Dep't of Corr., 756 F.3d 1277, 1303 (11th Cir. 2014) (explaining that "[a] Brady violation occurs when the prosecution withholds evidence favorable to an accused upon request, 'irrespective of the good or bad faith of the prosecution'" (quoting Brady, 373 U.S. at 87)).   The record also supports the post-conviction court's findings regarding the testimony given at trial and at the evidentiary hearings regarding the CAD report and the recordings.   *See* Ex. F at 208-09, 272-78, 304-08, 344-48; Ex. Z at 1266-67, 1285-86; Ex. BB at 1543-53, 1560-67, 1579-82, 1598.   As explained in the analysis of Ground 10, *supra*, the state post-conviction trial court sits as the fact-finder and determines witness credibility in Rule 3.850 proceedings, and "[f]ederal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).   The post-conviction court properly accepted the testimony of Deputy Nichols and Ms.

Sledge, and did not unreasonably evaluate that testimony in light of the trial testimony and evidence.

Petitioner Posey has not shown the state court's rejection of this ground was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.    *See* 28 U.S.C. § 2254(d)(1)-(2).    This ground should be denied.

### <u>Ground 18</u>:    Trial Court Error – Summary Denial of Post-Conviction Claims

In his eighteenth ground, Petitioner Posey asserts the state post-conviction trial court erred in summarily denying "certain post conviction claims without an evidentiary hearing or attaching portions of the record conclusively demonstrating that he was entitled to relief."    ECF No. 13 at 41.    As Respondent explains, Posey did not raise this ground in his original § 2254 petition and, unless it relates back, the ground as raised in his amended petition is untimely.

Moreover, even considering the ground, it raises only an issue of state law, particularly the state post-conviction court's decision not to hold an evidentiary hearing on some of Posey's claims.    The Eleventh Circuit

"has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief."   Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009).   Further, "it is 'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief."   *Id.*; *see, e.g.*, Anderson v. Sec'y, Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987).   This ground should be denied.

### Ground 19:   IAC – Misadvice Regarding Plea

In his nineteenth ground, Petitioner Posey asserts defense counsel performed deficiently by misadvising him "to plea not guilty to all charges while incompetent."   ECF No. 13 at 46.   As Respondent indicates, Petitioner did not raise this ground in state court; thus, it is unexhausted and procedurally barred.

Moreover, considering the substance of the ground, Posey argues that the advice he received from his appointed counsel on November 7, 2006, shortly after his arrest, to plead not guilty to the charges "was a grave mistake for Petitioner," as he "was incompetent when the Public Defense advised him of the plea, the plea was obviously involuntary."   ECF No. 13

at 46.    Posey explains, "It was a grave mistake to advise an incompetent

defendant to plead not guilty to all of the charges, because if counsel would

have advised Petitioner to plead guilty, as a best interest plea, to count five

the violation of injunction, counsel could have then filed a motion to dismiss

the subsequent felony charged under the double jeopardy doctrine,

supported by the Fifth Amendment of the Constitution of the United States."

*Id.* at 46-47.    Posey asserts he raises this claim for the first time under

Martinez v. Ryan, 132 S.Ct. 1309, and Trevino v. Thaler, 133 S.Ct. 1911

(2013).    *Id.* at 47.    Posey asserts his mental illness interfered with his

"ability to appreciate his position and make rational decisions regarding his

case at the time of the plea."    *Id.*

Even if the court reaches this claim, it plainly lacks foundation.    As

set forth in the background and analysis of other grounds, *supra*, the trial

court initially found Posey incompetent to proceed, committed him to the

Florida State Hospital, and later determined he was competent to proceed.

Further, defense counsel initially pursued an insanity defense based on

evaluations of two doctors, both of whom changed their opinion on the eve

of trial.    Nothing indicates deficient performance of counsel with regard to

the entry of Posey's not guilty pleas before proceeding to trial.    This

ground should be denied.

## Conclusion

Based on the foregoing, Petitioner David Russell Posey is not entitled to federal habeas relief.   The amended § 2254 petition (ECF No. 13) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No. 13).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 31, 2017.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific**

written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.